**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SANDOZ INC.                                     )
                                                )
        Plaintiff,                             )
                                                )
   v.                                           )
                                                )
MICHAEL O. LEAVITT, Secretary of                )     Case No. 1:05CV01810 (CKK)
Health and Human Services, and                  )
ANDREW C. VON ESCHENBACH, M.D.,                 )
Acting Commissioner, Food and Drug              )
Administration,                                 )
                                                )
        Defendants.                            )
_____)

**MOTION TO COMPEL PRODUCTION
OF THE WHOLE ADMINISTRATIVE RECORD
AND MEMORANDUM IN SUPPORT THEREOF**

      Sandoz Inc. ("Sandoz") respectfully moves this Court for production of the whole Administrative Record relevant to its Complaint as mandated by the Administrative Procedure Act ("APA"). 5 U.S.C. § 706. As set forth in the parties' Joint Meet And Confer Agreement (Doc. No. 9, Dec 5, 2005) ("Joint Agreement"), Sandoz and the Federal Defendants have significant and irreconcilable differences over the proper scope of the Administrative Record in this case. Originally, the Federal Defendants had agreed to produce what the Food and Drug Administration ("FDA") considers the "existing Administrative Record" on December 19, 2005. Sandoz has been informed that FDA's proposed "existing Administrative Record" will not actually produce anything pertinent to the prosecution of Sandoz' claims. Accordingly, Sandoz believes the Court's intervention has become necessary and appropriate at this critical juncture in

these proceedings, and that Sandoz therefore has no option but to file this Motion seeking resolution of this dispute.

In accordance with LCvR 7(m), counsel for Sandoz has conferred at length with counsel for the Federal Defendants, who will be filing an Opposition to this Motion.[1]  A proposed Order accompanies this Motion.

## THE WHOLE ADMINISTRATIVE RECORD IS MUCH BROADER THAN THE EXISTING PUBLIC RECORD OR THE SANDOZ-GENERATED MATERIALS

After the parties filed their joint Meet And Confer Agreement, counsel conferred at length in an attempt to resolve disputes about the scope of the Administrative Record that should be produced to Sandoz' counsel under the parties' proposed Protective Order.  Those efforts have only been partially successful.  The most significant remaining dispute revolves around Sandoz' belief that the critical elements of the Administrative Record consist of salient non-public records generated within the Defendant agencies that will elucidate for the Court the merit of Sandoz' claims regarding the Federal Defendants' failure to act, unreasonable delay, and constructive adverse action.  Consequently, Sandoz has been unable to agree that the probative and relevant evidence that is pivotal to Sandoz' case and prosecution of Sandoz' claims against the Federal Defendants rests in Sandoz-generated NDA submissions or in publicly-available docket submissions.  The Federal Defendants, however, intend to limit FDA's proposed Administrative Record to the same two categories of documents that were available to Sandoz at the time Sandoz filed this lawsuit.

---

[1]     In response to a request from counsel for the Federal Defendants, counsel for Sandoz has notified counsel for the Federal Defendants that Sandoz agrees to a consented motion providing for an extension allowing for the Federal Defendants' Opposition to be filed on December 29, 2005, in recognition of the federal holiday and religious holidays at the end of this month.

The first category encompasses some 90-plus as yet-unitemized volumes of Sandoz' own NDA submissions to FDA (as supplemented by FDA's August 31, 2004 letter discussed in Sandoz' Complaint), containing thousands of pages of Sandoz-generated data, which have no bearing on the Federal Defendants' failure to comply with governing statutory mandates.[2]

The second category consists entirely of publicly-available material from FDA dockets, most of which are clearly extraneous, have no bearing on the Sandoz application for Sandoz' human growth hormone product (Omnitrope) at issue in this case, and can only prove to be distracting, burdensome, and potentially prejudicial:[3]

(1) Pfizer's May 13, 2004 Omnitrope Citizen's Petition, Sandoz' June 25, 2004 comments to that Petition, and Pfizer's August 4, 2004 response (Docket No. 2004P-0231/CPI), a petition which Sandoz alleges FDA has improperly and erroneously constructively granted;

(2) comments submitted to FDA Public Docket Number 2004N-0355, opened following FDA Public Workshops held in September 2004 and February 2005, which Sandoz maintains is irrelevant because it contains absolutely no data or other information on Sandoz' Omnitrope product and only includes data and information supporting approval of Omnitrope;

(3) the April, 2004 Citizen Petition by an unrelated non-party to these proceedings, Genentech, (Docket Number 2004P-0171), which has nothing to do with Omnitrope or the allegedly constructively-granted Pfizer petition, and which Sandoz maintains is entirely outside of the

---

[2]   Counsel for the Federal Defendants has notified counsel for Sandoz that FDA's production of even this limited set of Sandoz NDA documents is proposed to be delayed beyond the previously agreed-upon December 19th production date, and that no definitive production timeline can be provided at this point. FDA has indicated that even these NDA documents (almost all of which were submitted to FDA over two years ago) are in various offices scattered throughout the Agency, including some volumes apparently being in offices said to be currently involved in the review process, which Sandoz believes further evidences the true scope of the material that the APA and controlling caselaw require to be produced as part of the whole Administrative Record.

[3]   It appears that the Federal Defendants are attempting to produce volumes of materials already in Sandoz' possession as an example of their "good faith." However, such a production ignores the required pertinent documents that FDA is omitting from the Administrative Record, such as the internal memoranda, correspondence, and other documents from FDA's files concerning the Omnitrope NDA – a critically-important omission here that FDA has included in the Administrative Record in other cases, as discussed infra in the main text.

scope of the Administrative Record, where its erroneous presence may needlessly trigger unwarranted Motions For Leave To Intervene in this case by third parties;

(4) the April 23, 2003 Citizen Petition by an unrelated non-party to these proceedings, BIO, (Docket No. 2003P-0176), which was rejected in a voluminous denial letter (number 5, below) that only supports approval of Omnitrope and not the Federal Defendants' unlawful inaction at issue in this case; and

(5) FDA's October 14, 2003 Consolidated Petition Response to Pfizer et al. (Docket Nos. 2001P-0323/CPI & CP5, 2002P-0447/CPI, and 2003P-0408/CPI), which Sandoz believes only supports its case and not the defendants'.

The entirety of the production, then, consists exclusively of material which Sandoz already had in its possession at the time it filed its Complaint. However, none of that material actually illuminates or allows this Court to conduct meaningful judicial review of the Federal Defendants' rationale for unreasonably delaying its action, failing to act, or its adverse constructive action as alleged by Sandoz. Moreover, none of the materials that FDA is sweeping into the Administrative Record addresses FDA's inexplicable approval of a wide range of similarly-situated 505(b)(2) NDAs for recombinant biologic drugs. Many of those similarly-situated biologic drugs were approved during the pendency of the Omnitrope NDA as pled in Sandoz' Complaint. Notably, one such biologic drug 505(b)(2) NDA for a product that is more than double the size of Omnitrope and significantly more complex (because it is glycosylated) was approved in early-December during the pendency of this lawsuit.[4] This and all other similarly-situated biologic drugs cited in Sandoz' Complaint have been approved pursuant Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FD&C Act") in the face of the very same evidence the Federal Defendants now consider to comprise the proposed Administrative Record for this case.

---

[4]  See FDA-Approved Label For Hylenex Recombinant (hyaluronidase human injection) available at http://www.fda.gov/cder/foi/label/2005/021859lbl.pdf ("glycoprotein contains 447 amino acids with an approximate molecular weight of 61,000 Daltons").

-5-

In summary, the government's production of the requisite full Administrative Record is clearly not forthcoming. The Federal Defendants' failure in this regard necessitates this Court's intervention to assure compliance with the statutory and jurisprudential scope of the requisite record. FDA's initial production of what Sandoz already has in its possession only covers a portion of the APA-mandated "whole" Administrative Record – namely, what FDA proposes as the "existing Administrative Record." "The whole administrative record, however, 'is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record.'" Thompson v. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted) (emphasis in the original).

As delineated in the parties' Joint Agreement, although the full scope of the Administrative Record remains as-yet indeterminate to Sandoz, Plaintiff believes the whole Administrative Record must contain at a minimum, *inter alia*, complete unredacted copies of all records in any electronic, documentary, or other form, which are in the possession, custody, or control of the Department of Health and Human Services, the Food and Drug Administration ("FDA") – including without limitation the Center for Drug Evaluation and Research ("CDER"), all CDER Reviewing Divisions and Offices, and the Office of the FDA Commissioner – that have been considered in connection with, that have potentially influenced, or that relate or refer in any way to: (1) the Sandoz NDA No. 21-426 for Omnitrope, as to which FDA's August 31, 2004 letter cited in Sandoz' Complaint states that the CDER Divisions and Offices had "completed [their] review of this application as submitted" and as to which the reviewing officials would have prepared reviews and other documents encompassed within the record; (2) the Citizen Petition regarding the Sandoz NDA filed on May 14, 2004, on behalf of Pfizer, Inc., FDA Docket No. 2004P-0231/CP1; and/or (3) the review and approval of the

biologic drugs alleged in the Complaint to be similarly-situated to Omnitrope, which previously have been approved under Section 505(b)(2) of the FD&C Act.

Accordingly, as initially summarized in the parties' Joint Agreement, this Motion seeks to have this Court require the Federal Defendants to comply with the basic requirement for production of the full Administrative Record, which is clearly settled law in this Circuit. The Court of Appeals has reaffirmed this statutory mandate. American Bioscience, Inc. v. Thompson, 243 F.3d 579, 582 (D.C. Cir. 2001) (hereinafter "ABI").

The scope of the Administrative Record Sandoz seeks is in absolute accord with legal precedents. Even the full measure of this type of Administrative Record may not produce the complete record required for judicial review in this particularly case, thus potentially necessitating additional discovery. Any such additional discovery, while entirely appropriate in a case such as this one, see infra note 6, may not be necessary depending on what the Defendants produce in response to this motion. Moreover,

Moreover, delineating the *de minimis* scope of the Administrative Record as suggested by Sandoz is not only compelled by the controlling caselaw discussed below, but it also is compatible with the similarly-situated Administrative Record FDA is producing in a distinct but not dissimilar ongoing proceeding involving comparable and overlapping claims challenging FDA's "failure to act" on yet another NDA. Tummino v. FDA, No. 05-CV-366 (E.D.N.Y. 2005) (Korman, Chief Judge). In that case involving an NDA for over-the-counter availability of the contraceptive drug commonly known as Plan B, FDA has agreed to produce for *third-party Plaintiffs* under a stipulated Protective Order the Administrative Record to date of FDA's consideration of the non-party applicant's pending NDA.

The record in <u>Tummino</u> embodies many of the same types of materials Sandoz believes are properly encompassed within the Administrative Record here – including, most significantly, all internal Agency documents from FDA's files concerning the pending NDA, which in this case contain the most salient evidence probative of Sandoz' claims.[5]  Specifically, in <u>Tummino</u>, FDA already has itemized and apparently is in the process of producing the "internal memoranda, correspondence, and other documents from FDA's files concerning" the application at issue in that case.  See <u>Tummino</u>, Stipulated Protective Order With Respect To Administrative Record at ¶¶ E(d), I, K.  Indeed, FDA has gone so far as joining the other parties who "wish to facilitate FDA's service on plaintiffs of the remaining portions of the administrative record to date of FDA's proceedings concerning" the pending NDA in that case.  <u>Id.</u>

The instant case, however, appears to further illustrate the disparate treatment accorded to Sandoz when compared to the ongoing production in <u>Tummino</u>.  Such disparate treatment is inappropriate, and the Court should direct the Federal Defendants to produce documents in this case to at least be commensurate with this minimal floor, and explain why production above and beyond that floor should not be required in this case involving the rights of the *real* party in interest relative to the NDA at issue.

---

[5]    Notably, the <u>Tummino</u> plaintiffs are individual patients and a third-party citizen's organization.  The sponsor of the NDA at issue in that case, Barr Laboratories, a non-party to those proceedings, has consented to production of the currently agreed-upon complete record of its full NDA, which contains a great deal of proprietary information.  The NDA and related FDA records will be produced pursuant to the proposed stipulated protective order entered into between the parties in <u>Tummino</u> and non-party Barr Laboratories.  In this case, Sandoz and the Federal Defendants similarly have agreed upon the terms of a proposed Protective Order for production of the Administrative Record, which accompanied their Joint Agreement.  It seems puzzling that the Federal Defendants have agreed to produce to third-party plaintiffs in their similarly-situated lawsuit a more complete Administrative Record than FDA will afford to Sandoz, the party-Plaintiff and the holder of the NDA at issue in this matter.

## SECTION 706 REQUIRES PRODUCTION OF THE
## "WHOLE" ADMINISTRATIVE RECORD

As a general rule, the APA requires that a court reviewing agency action or failure to act "shall review the whole record." 5 U.S.C. § 706. Thus, the APA directs a court evaluating agency action or inaction to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; Ctr. for Auto Safety v. Fed. Highway Admin., 956 F.2d 309, 314 (D.C. Cir. 1992); Natural Res. Def. Council, Inc. v. Train, 519 F.2d 287, 291 (D.C. Cir. 1975). For a court "to review *less* than the full administrative record might allow a party to withhold evidence unfavorable to its case," while "to review *more* than the information before the [agency] at the time [of its] decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) (emphasis added). Accordingly, "[t]he requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case." Id. (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971)). "'The "whole" administrative record, therefore, consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position.'" Thompson v. Dep't of Labor, 885 F.2d at 555 (citations omitted) (emphasis in the original).

It has been established that the whole Administrative Record includes "any document that might have influenced the agency's decision." See Bethlehem Steel Corp. v. EPA, 638 F.2d 994, 1000 (7th Cir. 1980) (quoting Nat'l Courier Ass'n v. Bd. of Governors of the Federal Reserve System, 516 F.2d 1229, 1241 (D.C. Cir. 1975)); see also Portland Audubon Soc'y v. Endangered Species Committee, 984 F.2d 1534 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision."). An agency may not skew the

-8-

record in its favor by excluding pertinent but unfavorable information. Envtl. Def. Fund v. Blum, 458 F. Supp. 650, 661 (D.D.C. 1978). An agency also may not exclude information on the grounds that it did not "rely" on the excluded information in its final decision. Ad Hoc Metals Coalition v. Whitman, 227 F. Supp. 2d 134, 139 (D.D.C. 2002); Amfac Resorts, L.L.C. v. Dep't of Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). Instead, to ensure fair review of an agency action, the reviewing court "should have before it neither more nor less information than did the agency when it made its decision." IMS, P.C. v. Alvarez, 129 F.3d 618, 623 (D.C. Cir. 1997) (citing Boswell, 749 F.2d at 792).

To ensure that the complete Administrative Record contains "neither more nor less" information than was before the agency, courts in this Circuit have directed agencies to collect those materials "that were compiled by the agency that were before the agency at the time the decision was made." James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996); Common Sense Salmon Recovery v. Evans, 217 F. Supp. 2d 17, 20 (D.D.C. 2002). More specifically, this must include all documents and materials that the agency "directly or indirectly considered." Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993); Amfac Resorts, 143 F. Supp. 2d at 12; Alaska Excursion Cruises v. United States, 603 F. Supp. 541, 550 (D.D.C. 1984); see also Pers. Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 546 n.4 (D.C. Cir. 1995) (noting with approval that the "whole record" contained all materials "pertaining to the [challenged] regulation"). FDA's proposed "existing Administrative Record" fails to satisfy this standard.

**SANDOZ' CLAIMS FOR "FAILURE TO ACT" AND "UNREASONSABLE DELAY" REQUIRE PRODUCTION OF THE WHOLE RECORD**

Contrary to the Federal Defendants' assertion, claims of failure to act or unreasonable delay – both of which are at issue here – do not abrogate an agency's obligation to produce the

full Administrative Record.  The APA, 5 U.S.C. § 706, makes clear that judicial review of claims under 5 U.S.C. § 706(1) involving challenges to agency inaction are to be based "on the whole record" – just like a section 706(2) challenge to agency action.  See City of Santa Clarita v. Dep't of Interior, 2005 U.S. Dist. LEXIS 27350, *6 (C.D. Cal. 2005).

Furthermore, when a court considers a claim that an agency has failed to act in violation of its statutory obligations, as Sandoz has exhaustively pled in its 43-page Complaint in this case, review may not be limited to an overly-confined Administrative Record when "there is no final agency action to demarcate the limits of the record." San Francisco BayKeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002).  "[W]hen a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions."  Id.   Accordingly, in such cases, the APA allows discovery beyond "the whole record."[6]

Thus, even if, as FDA asserts, the Administrative Record's "precise boundaries" cannot be clearly demarcated, such a circumstance has not prevented production and review of the whole Administrative Record in other cases and neither should it here.  In this case, the Federal Defendants have failed to act upon the Omnitrope NDA in contravention of statutory mandates

---

[6] Cobell v. Babbitt, 91 F.Supp.2d 1, 38 (D.D.C. 1999) ("Extrinsic evidence is appropriate for consideration when the processes utilized and factors considered by the decision-maker require further explanation for effective review."), aff'd, 240 F.3d 1081 (D.C. Cir. 2001); Allick v. Lujan, Case No. 89-2269, 1990 WL 108999 (D.D.C. July 17, 1990) (allowing discovery beyond record because challenged agency decision was result of "relatively informal, less structured process" and therefore "precise boundaries or the applicable administrative record may be less clear").  Such discovery beyond the record includes any information that "shed[s] light on the factors and considerations relied upon by the agency."  Esch, 876 F.2d at 992.  Should such discovery become necessary, and Plaintiff is filing the instant Motion in an attempt to avoid it, Rule 26 permits broad discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed.R.Civ.P. 26(b).  The rule is given a liberal construction.  Schlagenhauf v. Holder, 379 U.S. 104, 114-115 (1964).  It allows the Court to limit discovery on certain specified grounds, Fed.R.Civ.P. 26(b)(2), (c)(1), but none of the permissible reasons to limit discovery delineated by the Federal Rules is applicable to this case.

and have hidden behind the proposition that no Administrative Record (other than FDA's proposed "existing Administrative Record") can exist in a circumstance where the agency allegedly has failed to reach a final decision.

If the Court were to take this argument *ad absurdum*, then the Administrative Record could never be produced in the context of a "failure to act" or "unreasonable delay" claim, since both such claims definitionally precede a final agency determination in most cases. This type of agency legal reasoning, if adopted, would eviscerate any functionality for either APA claim because an aggrieved party cannot litigate a case directed at agency inaction without referencing internal agency documents that prove the specifics alleged in those claims. Additionally, any court would be hard-pressed to deliver an opinion regarding agency inaction or procrastination without having the facts of the agency's review process before it. In essence, the Defendants' logic would read these causes of action out of the APA – at least with respect to FDA – which is an impermissible result when applying established canons of statutory construction.

That is precisely the reason why Congress has mandated production of the "whole" Administrative Record in these types of cases, why federal courts have required such production, and why production of the "whole record" is the appropriate next step in this circumstance. Indeed, the proof contained in the remainder of the record is particularly probative in a case like this one, where the Defendants have denied virtually all of the relevant factual allegations regarding the Defendants' unreasonable delay and failure to act. Sandoz' own data and submissions to FDA, and data filed on the public record by third parties in unrelated proceedings, cannot and will not provide one scintilla of evidence as to why the Federal Defendants have violated their statutory mandates or what has caused the Defendants to unreasonably delay action and fail to act on Sandoz' NDA as mandated by law. That evidence

can only come from that part of the record to which Sandoz does not currently have access – i.e., the remainder of the record of FDA's "inaction" to date, which appears to be one of the key categories of records FDA is producing to the Plaintiffs in <u>Tummino</u>.

Regardless of the merits of the Federal Defendants' claim that FDA is still mired in the review process, this does not make the agency unable to determine the scope of the Administrative Record, nor should it preclude production of all the documents that have been created to date as part of this review process – which is precisely what appears to have been produced in <u>Tummino</u>.  Only that record will reveal why the Defendants have failed to act upon the reasoned analysis of the agency's senior review and clinical experts.  In addition, this information would help to explain why the Defendants have, without any statutorily-authorized justification, withheld approval or perhaps have determined that indefinite delay is the preferred (if extra-statutory) outcome.  In either case, the reasons are not yet on the public record or otherwise available to Sandoz, and, with the now long-expired passing of the mandatory statutory deadlines, will likely only come to light as a result of appropriate production of the full Administrative Record in this litigation.

In sum, it is only with that whole Administrative Record that this Court can determine whether the Defendants' alleged failure to act and statutorily-impermissible delay in acting upon Sandoz' NDA is unreasonable, arbitrary and capricious, and in excess of statutory authority based upon extra-statutory consideration of factors that the Defendants are not allowed to take into account in acting on a sponsor's NDA.

## INCLUSION OF A SPOILAGE PROVISION IN THE COURT'S ORDER

The proposed Protective Order the parties originally submitted with their Joint Agreement did not include any spoilage or comparable document retention provision to ensure that all records in all Federal Defendant offices relating or referring to all matters in Sandoz' Complaint have been and are being preserved in their original form pending disposition of this litigation.  Counsel for Sandoz has sought an assurance in this regard from counsel for the Federal Defendants.  At this time, no such assurance has been made, although counsel for the Federal Defendants is determining what can be said formally in this regard.  Sandoz believes the provision of such an assurance is necessary and appropriate, and thus the proposed Order accompanying this Motion addresses this aspect of the Administrative Record issues as well by requiring the filing of such an assurance.

## CONCLUSION

Just as this Court requires the full Administrative Record to render a decision in this case, Sandoz requires the full Administrative Record to prosecute its claims.  More importantly, the "whole record" is relevant per se, and Sandoz is entitled to it as a matter of law.  5 U.S.C. § 706; ABI, 243 F.3d at 582-583; Boswell, 749 F.2d at 792.  The mandate of ABI is clear and binding, the persuasive reasoning of San Francisco BayKeeper is compelling, and FDA's ongoing Administrative Record production in the Tummino EDNY litigation reveals what appears to be emerging as an inconsistent approach to fulfillment of the government's obligations in this case.

*No* APA case – whether challenging agency action or inaction, and whether that agency action is finalized or unreasonably delayed – can proceed without the full Administrative Record. Accordingly, Sandoz respectfully requests that the Court direct the Federal Defendants to

produce to Sandoz' counsel the APA-mandated "whole record" pursuant to the parties' proposed Protective Order in this case.

Date:   December 16, 2005                    Respectfully submitted,


                    /s/
JOHN M. ENGEL (DCBN 443628)
Engel & Novitt, LLP
Market Square
Suite 620
801 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 207-3303
Fax: (202) 207-3318
E-Mail: jengel@engelnovitt.com
Attorneys for Plaintiff Sandoz Inc.