**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SANDOZ INC. )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL O. LEAVITT, Secretary of )<br>Health and Human Services, and )<br>ANDREW C. VON ESCHENBACH, M.D., )<br>Acting Commissioner, Food and Drug )<br>Administration, )<br>)<br>    Defendants. )<br>_____) | Case No. 1:05CV01810 |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

### INTRODUCTION

In this action Sandoz Inc. ("Sandoz"), a subsidiary of Novartis AG, seeks a declaratory judgment and an injunction related to its pending New Drug Application ("NDA") for the approval of Omnitrope, a recombinant human growth hormone. The Food and Drug Administration ("FDA") has not taken action to approve or reject the application, and Sandoz has alleged that the agency's failure to act has violated its legal obligations under the Food, Drug and Cosmetic Act ("FDCA") and the Administrative Procedures Act ("APA"). The parties have agreed on a briefing schedule for dispositive motions.

Sandoz has objected that the administrative record being produced in the case by Defendants would not contain certain materials. Sandoz filed a motion to compel the production of what it contended should be included in the administrative record – every internal FDA document related to its application, as well as every document in FDA's possession related to

allegedly similar drug applications. Sandoz's conclusion that the production of the administrative record requires this type of discovery is meritless.

Sandoz has failed to provide any support for its motion and ignores applicable law. The "[a]dministrative record means the documents in the administrative file of a particular administrative action on which the Commissioner relies to support the action." 21 C.F.R. § 10.3(a).[1] The administrative record in this case contains the materials parties submitted for the agency's consideration, such as the petitions submitted in this case by Sandoz and Pfizer that argue for and against Omnitrope's approval. Sandoz's conclusion that every agency document that relates to an agency's deliberation of an action, even pending action, constitutes part of the administrative record has no legal basis and is unprecedented. Further, Sandoz completely ignores the fact that statutes specifically prohibit the production of application material submitted by other companies and the fact that the FDA has a deliberative process privilege. Discovery of any type beyond the administrative record requires a showing that is absent here. Even assuming some portion of Sandoz's requests could be legitimately sought, this issue is premature until the Court considers other dispositive issues, and the relief Sandoz seeks is unwarranted even if supplementation of the record were necessary. Accordingly, Sandoz's motion should at this time be denied.

---

[1] The "[a]dministrative file means the file or files containing all documents pertaining to a particular administrative action, including internal working memoranda, and recommendations." 21 C.F.R. § 10.3(a). Sandoz's motion seeks the administrative file relating to its application, as well as others. There is no precedent for construing "the administrative file" to be "the administrative record." The terms are, by definition, substantively different. *See id.*

**PROCEDURAL BACKGROUND**

On September 13, 2005, Sandoz filed a Complaint for Declaratory and Injunctive Relief ("Complaint"), alleging that Defendants' failure to issue a final decision on the Omnitrope NDA or on Pfizer's Citizen Petition requesting that FDA reject the Omnitrope NDA (Docket No. 2004P-CP1) ("Pfizer Petition") violates the FDCA and APA. (*See* Complaint, Docket Item ("D.I.") 1, ¶¶ 165-214.) As part of each of the four causes of action set forth in its complaint, Sandoz alleges that FDA had a statutory duty to act no later than August 31, 2004. (*See id.*, ¶¶ 3, 90, 165, 184, 190, & 199.) The failure to act on the NDA by that date, Sandoz alleges, constituted a constructive granting of Pfizer's Citizen Petition, which argued that the Omnitrope NDA should be denied. (*See id.*, ¶¶ 9, 165, 184, 190, & 199.) Sandoz asserts that, because there are no valid statutory grounds for denial, the alleged constructive denial of the Omnitrope NDA warrants injunctive and declaratory relief. (*See id.*, ¶¶ 165-225.)

Defendants filed their Answer to Plaintiff's Complaint on November 14, 2005. (*See* Answer, D.I. 8.) Defendants have asserted the review of the Omnitrope NDA and related materials provided by Sandoz, Pfizer and other parties is currently ongoing, and that the continuation of the review process does not warrant any form of relief. (*See id.*) Defendants have also asserted two affirmative defenses: Sandoz's complaint fails to state a claim upon which relief can be granted and must be dismissed for the failure to exhaust its administrative remedies as required by law.[2] (*See id.* at 29.) The D.C. Circuit has previously held that a

---

[2]  The law requires that, prior to initiating suit complaining of an action or failure to act, there must first be a final administrative decision or a hearing. 21 C.F.R. § 10.45. The Commissioner is directed to seek the dismissal of actions failing to exhaust administrative remedies, or, in the alternative, a remand to the agency for administrative action. *See id.* Defendants submit that in this case, where no approval decision has been made, a party must

violation of the statutory deadlines within the FDCA does not ordinarily result in equitable relief, for judicial intervention to assist one company in reordering the priorities of an administrative agency falls outside of the parameters of judicial power.  *See In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991).

The parties agreed to a briefing schedule for cross motions for summary judgment, which was set forth in a Meet and Confer Agreement.  (*See* D.I. 9.)  The parties agreed that the case is exempted from the initial disclosure and pretrial conference requirements.  (*See id.*, ¶ A(g).)  The reason for this exemption is that Federal Rule of Civil Procedure 26(a)(1)(E) provides that there are no such requirements in "an action for review on an administrative record."  *See* Fed.R.Civ.P. 26(a)(1)(E)(i) & 26(f).  Under the Local Rules, there is also no requirement to file a Meet and Confer Agreement in "an action for review on an administrative record."  L.Cv.R. 16.3(b)(1).  Sandoz, however, believed that filing such an agreement was warranted and that discovery was potentially available.  (*See* D.I. 9 at B(b).)

The major disagreement between the parties has been the content of the administrative record.  (*See id.*)  Defendants have identified the content of the administrative record to include all of the submissions and materials FDA is considering to determine whether the approval of the Omnitrope NDA is warranted, and the correspondence between the parties concerning the review of the submissions.  These materials include:

---

exhaust administrative remedies.  Sandoz claims that pursuing administrative remedies in this case is futile.  (*See* Complaint, D.I. 1, ¶¶ 8-9.)

(1) FDA's August 31, 2004, letter to Sandoz;
(2) Pfizer's May 13, 2004 Omnitrope Citizen's Petition; Sandoz's June 25, 2004 comments to that Petition; and Pfizer's August 4, 2004 response (Docket No. 2004P-0231/CPI);
(3) comments submitted to Public Docket Number 2004N-0355, opened following the Follow-On Protein Public Workshops held in September 2004 and February 2005;
(4) Genentech's April, 2004 Citizen Petition (Docket Number 2004P-0171);
(5) BIO's April 23, 2003 Citizen Petition (Docket No. 2003P-0176);
(6) FDA's October 14, 2003 Consolidated Petition Response to Pfizer et al. (Docket Nos. 2001P-0323/CPI & CP5, 2002P-0447/CPI, and 2003P-0408/CPI); and
(7) the materials submitted by Sandoz in support of the Omnitrope NDA (NDA 21-426).

(*See* Index, Exhibit ("Ex.") 1.)  Defendants provided Sandoz with the complete administrative record in this case, as it exists to date,[3] with the exception of voluminous material Sandoz itself submitted in support of its Omnitrope NDA.[4]  Copies of Sandoz's NDA documents have been made available for inspection to Sandoz's counsel, upon request, and, at Sandoz's request, Defendants have made copies of these documents and are in the process of providing an additional set of bate-stamped copies to Sandoz.

---

[3] Because there has been no final agency decisions on the matters at issue in this case, Defendants will continue to add documents to the existing administrative record as appropriate when final decisions are made.

[4] The Sandoz-generated materials submitted in support of the Omnitrope NDA consist of approximately 90 volumes, which must be gathered, copied, and numbered sequentially before being produced to Sandoz.  In the process of gathering the administrative record documents, defendants realized that they would not be able to provide to Sandoz copies of its own documents that were submitted in support of the Omnitrope NDA by December 19th, due to the extremely large number of documents.  A Supplement to the Joint Meet and Confer Agreement was thereafter filed on December 19, 2005, explaining Defendants' inability, at the time, to provide all of the Sandoz-generated NDA documents and noting Sandoz's objection to the delay in the production of its NDA documents.  These documents are the only documents designated as part of the administrative record that are not listed in the index.  (*See* Ex. 1.)

Sandoz now seeks to compel Defendants to produce, "at a minimum,":

> complete unredacted copies of all records in any electronic, documentary, or other form, which are in the possession, custody, or control of the Department of Health and Human Services, the FDA - including without limitation the Center for Drug Evaluation and Research ("CDER"), all CDER Reviewing Divisions and Offices, and the Office of the FDA Commissioner - that have been considered in connection with, that have potentially influenced, or that related or refer in any way to: (1) the Sandoz NDA No. 21-426 for Omnitrope, as to which FDA's August 31, 2004 letter cited in Sandoz' Complaint states that the CDER Divisions and Offices had "completed [their] review of this application as submitted" and as to which the reviewing officials would have prepared reviews and other documents encompassed within the record; (2) the Citizen Petition regarding the Sandoz NDA filed on May 14, 2004, on behalf of Pfizer, Inc. FDA Docket No. 2004P-0231/CP1; and/or (3) the review and approval of the biologic drugs alleged in the Complaint to be similarly-situated to Omnitrope, which previously have been approved under Section 505(b)(2) of the FD&C Act.

(Motion to Compel, D.I. 10, at 5-6.)  Defendants file this response.[5]

## ARGUMENT

**I.    SANDOZ HAS FAILED TO SHOW THAT THE DOCUMENTS IT SEEKS CONSTITUTE PART OF THE ADMINISTRATIVE RECORD**

    **A.    The Administrative Record Compiled by FDA Is Entitled by Law to a Strong Presumption of Regularity**

It is well established that review under the APA is ordinarily based on the administrative record that the agency compiles and presents to the reviewing court. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to*

---

[5] The Local Rules provide that the response to a motion is due eleven days after filing. *See* L.Cv.R. 7(b).  Defendants asked Sandoz to file its motion on Monday, December 19th, rather than Friday, December 16th, so that the response would be not be due on the first working day after Christmas.  Sandoz's counsel declined, but did not object to Defendants seeking an additional two days from the Court.  (*See* Unopposed Motion to Extend Time, D.I. 13.)  In the process of preparing the response, Defendants' counsel discovered that the mailing rule, under which the Federal Rules provide an additional three days for mailing, applies in cases involving electronic filing.  *See* Fed.R.Civ.P. 6(e) & 5(b)(2)(D).  Accordingly, this brief is due on December 30, 2005.

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971).  The record consists of "the documents in the administrative file of a particular administrative action on which the Commissioner [of Food and Drugs] relies to support the action."  21 C.F.R. § 10.3(a); *see also, e.g., IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997).  Review is held on the administrative record in actions to compel agency action wrongfully withheld or unreasonably delayed, as well as actions challenging agency final decisions.  *See San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002); *Biodiversity Legal Found. v. Norton*, 180 F. Supp. 2d 7, 10 (D.D.C. 2001); *Raymond Profitt Found. v. U.S. Army Corps of Eng'rs*, 128 F. Supp. 2d 762, 768 n.8 (E.D. Pa. 2000); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 570 (N.D. Tex. 1997).

An agency's designation of the record is entitled to a strong presumption of regularity. *See Deukmejian v. NRC*, 751 F.2d 1287, 1329 (D.C. Cir. 1984), *aff'd in part, vacated in part on other grounds sub. nom San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26 (D.C. Cir. 1986) (en banc); *Holy Land Found. v. Ashcroft,* 219 F. Supp. 2d 57, 65 (D.D.C. 2002).  "[T]he agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary."  *Fund for Animals v. Williams*, 245 F. Supp.2d 49, 55 (D.D.C. 2003) *aff'd in part, vacated in part on other grounds*, 428 F.3d 1059 (D.C. Cir. 2005).  *See also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).  This presumption exists because, as this Court explained, "[i]t is the agency that did the 'considering,' and that therefore is in a position to indicate initially which of the materials were 'before' it."  *Fund for Animals*, 245 F. Supp. 2d at 57.  Further, "if it were otherwise, non-agency parties would be free to define the administrative record based on the materials they believe the agency

must (or should) have considered, leaving the court the unenviable task of sorting through a tangle of competing 'records' in an attempt to divine which materials were considered." *Id.*

### B.    Sandoz Has Failed to Articulate Any Basis for Compelling Production

#### 1.    Sandoz Has Failed to Make the Necessary Showing

It is extremely unusual for the record to be supplemented or for a court to permit parties to "look behind" the record produced. *See Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). A court may permit supplementation of the record only if the party challenging the record makes a "strong showing" that one of the "narrowly defined" exceptions to the general rule prohibiting review of extra-record material applies, such as "bad faith or improper behavior" by the agency or "when the record is so bare that it prevents effective judicial review." *Fund for Animals*, 245 F. Supp. 2d at 57-58 (*quoting Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)); *see also Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990).[6]

Here, Sandoz offers only a cursory reference to any of the exceptions and fails to provide the "cogent support" required for the application of any exception. *See Sociedad Anonima Vina Santa Rita v. Dep't of Treasury*, 193 F. Supp. 2d 6, 17 n.11 (D.D.C. 2001). A few of the cases

---

[6] Four narrow exceptions to the rule prohibiting review of extra-record material are recognized in this Circuit: 1) when the record is so bare that it prevents effective judicial review; 2) when a strong showing of bad faith or improper agency behavior has been made; 3) when the agency has deliberately or negligently excluded documents from the record; and 4) when necessary to determine whether an agency considered all the relevant factors. *See Amfac Resorts L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 11-12 (D.D.C. 2001). Additional factors have been proposed, but their use has been questioned. *Compare Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (setting forth eight exceptions) *with Fund for Animals*, 245 F. Supp. 2d at 58 n.8 (noting that the eight exceptions are *dicta*).

cited by Sandoz involved such a showing.[7] Nonetheless, Sandoz's motion contains no evidence and does not even attempt to make a showing in this case (*see* D.I. 10, *passim*), and consideration of such a showing is premature until this Court examines the arguments each party has asserted that would dispose of this case (*see* Section II(A), *infra*). The arguments in the Motion to Compel thus "fall far short of the 'strong showing'" necessary for supplementation of the record. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (finding that conclusory statements unsupported by other evidence did not justify supplementing the record).

### 2. Sandoz's Conclusory and Sweeping Assertions Regarding the Scope of the Administrative Record Are Unwarranted

Sandoz's argument consists of a short series of conclusory assertions. Sandoz states that the review must be had on the "whole record," citing the APA, 5 U.S.C. § 706, and case law that

---

[7] Twenty-five years ago, Bethlehem Steel made a showing that there were documents in existence that supported their allegations that the agency comingled prosecutorial and adjudicatory functions and relied on improper *ex parte* contacts. *Bethlehem Steel Corp. v. E.P.A.*, 638 F.2d 994 (7th Cir. 1980). These documents were necessary, the court found, to exercise effective judicial review. *Id.* at 1000. Even in that case, however, the court found that the agency could claim a privilege over documents subject to the deliberative process privilege. *Id. (citing Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975), which discusses the deliberative process privilege, for the proposition that production is subject to a claim of privilege). Similarly, the Ninth Circuit found that there was a sufficient showing to allow supplementation of the record with predecisional transcripts and related documents from a meeting of the Nuclear Regulatory Commission where the documents sought "concern neither the internal deliberative processes of the agency nor the mental processes of individual agency members[, but] allegedly improper *ex parte* contacts between decisionmakers and outside parties." *Portland Audobon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993) (distinguishing *Deukmejian*, 751 F.2d 1287 (D.C. Cir. 1984) (referred to as *San Luis Obispo Mothers for Peace v. NRC*)). *See also Natural Res. Def. Council, Inc. v. Train*, 519 F.2d 287 (D.C. Cir. 1975) (finding plaintiff made substantial showing to supplement record with specific documents containing factual data considered by the agency).

requires the agency to produce the materials that were "compiled by the agency that were before the agency at the time the decision was made." *James Madison Ltd.*, 82 F.3d at 1095 (cited in Motion to Compel, D.I. 10 at 9). The purpose of an examination of the whole record – the information and opinions "before the agency" – is that the court must ordinarily "examine the relevant data" in considering whether the agency provided a satisfactory explanation for its action and considered the relevant statutory factors in its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Sandoz's brief moves from this general principle to the sweeping conclusion that every internal document and e-mail at FDA that refers in any way to the Omnitrope NDA, as well as a number of allegedly similar NDAs, must be produced as part of the administrative record. (*See* D.I. 10 at 9-10.) Sandoz' effort to construe the "the whole record" or the materials "before the agency" to include such exhaustive discovery is unwarranted.

The D.C. Circuit and this Court have explicitly rejected such expansive readings of these terms so as to sweep in internal agency documents and third party documents. In *Fund for Animals*, this Court stated that "adopting the . . . extreme [position] by interpreting the word 'before' [in construing what is before the agency] so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless." 245 F. Supp. 2d at 57 n.7. *See also Kent County v. Envtl. Prot. Agency*, 963 F.2d 391, 396 (D.C. Cir. 1992) (concluding that the Environmental Protection Agency need not "find *all* documents discussing filtration located in *any* office" of the agency) (emphasis in original). Furthermore, this Court has found that an agency "generally may exclude material that reflects internal deliberations" in constructing the administrative record. *Fund for*

10

*Animals*, 245 F. Supp. 2d at 55; *Amfac Resorts*, 143 F. Supp. 2d at 13 (noting that deliberative intra-agency records ordinarily are privileged); *Seabulk Transmarine I, Inc. v. Dole*, 645 F. Supp. 196, 201 (D.D.C.1986) (same). As this Court has noted, such information is "routinely excluded from the record." *Amfac Resorts*, 143 F. Supp. 2d at 13.

The D.C. Circuit has explained the reason for the exclusion of such internal documents. Regardless of the application of the deliberative process privilege, documents internal to the agency are immaterial for judicial review as a matter of law unless there is a showing of bad faith or improper behavior. *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998). *See also In re Barr Labs., Inc.*, 930 F.2d at 75 ("the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."'" (citations omitted)). Similarly, third party NDAs are also irrelevant. Unless and until there has been such a showing of bad faith or improper behavior, there is no reason for supplementing the record with such documents.[8]

          **a.**      **Sandoz Has Failed to Show That FDA's Internal Documents Are Part of the Administrative Record in this Case**

Sandoz has failed to provide support for its conclusion that FDA's internal documents form part of the "whole record" in this case. None of the cases relied upon by Sandoz requires that deliberative documents internal to an agency are to be presumed to be part of the administrative record, especially where the agency decision that has not yet been made. *See, e.g., American Bioscience, Inc. v. Thompson*, 243 F.3d 579 (D.C. Cir. 2001) (remanding case

---

[8] Where the record is insufficient for judicial review, the Court must provide the agency with an opportunity to supplement the record and, if necessary, remand the case to the agency to complete the record. (*See* Section II(B), *infra*.) At a minimum, the Court should not make this determination until dispositive motions are made. (*See* Section II(A), *infra*.)

because administrative record was never filed and record on appeal was insufficient for determining basis of agency action); *Center for Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309 (D.C. Cir. 1992) (finding that three draft deterioration studies could *not* be relied upon in the administrative record compiled by Federal Highway Administration because they were not included at the administrative stage); *Thompson v. United States Dept. of Labor*, 885 F.2d 551 (9th Cir. 1989) (deciding that correspondence between plaintiff and agency attorneys considered as part of an Administrative Law Judge's decision was part of the administrative record and making no determination regarding internal agency documents).  (*See also* Section I(B)(1), *supra* (discussing cases where a showing has been made concerning the relevance of specific documents).)   As this Court noted in dismissing a similar argument, Sandoz has "offered no authorities for the proposition that the term 'whole record' means anything other than the administrative record as compiled by the agency.*"* *Nat'l Petroleum Refiners Assoc. v. FTC*, 392 F. Supp. 1052, 1053 n.2 (D.D.C. 1974).

The production of internal agency documents is also not applicable because of the deliberative process privilege.  The deliberative process privilege applies to agency materials that are deliberative and predecisional, *EPA v. Mink*, 410 U.S. 73, 86-89 (1973), protecting documents such as "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" from disclosure.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).   The purpose of this privilege is to protect the "quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).   The privilege is intended to encourage open, frank discussions of policy matters between subordinates and supervisors, to

protect against premature disclosure of proposed policies before they become final, and to protect against public confusion that could result from disclosing reasons and rationales that were not the ultimate grounds for the agency's action. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States*, 617 F.2d at 866. A document is predecisional if "it was generated before the adoption of an agency policy," and is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.

Sandoz's Motion to Compel seeks all documents that reviewing officials within FDA have prepared in reviewing the Omnitrope NDA and the Pfizer Petition. Because there has been no final decision made to date on the Omnitrope NDA or the Pfizer Petition, all such documents are predecisional. The documents are also deliberative, as they do not represent an agency decision-maker's final position. One of the purposes of the deliberative process privilege is to protect "subordinates' willingness to provide decision-makers with frank opinions and recommendations." *Wolfe v. HHS*, 839 F.2d 768, 775 (D.C. Cir. 1988). Documents that "discuss the wisdom or merits of a particular agency policy, or recommend new agency policy" are protected by the deliberative process privilege. *Coastal States Gas Corp.*, 617 F.2d at 869; *see also Fund for Animals*, 245 F. Supp. 2d at 55.

In sum, the deliberative process privilege is intended to encourage frank, open discussions of policy matters among agency employees. *NLRB v. Sears*, 421 U.S. at 150-52; *see also Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of

discovery and front page news."). The core documents sought in Sandoz's Motion to Compel fall within that privilege, and thus need not be produced.[9]

### b.  Sandoz Has Failed to Show Why Other Parties' NDAs Are Part of the Administrative Record in this Case

With regard to documents relating to the review of certain biologic drug products previously approved, Sandoz's motion is inappropriate in several respects. First and perhaps most importantly, much of the material that Sandoz seeks to add to the record contains confidential commercial and trade secret information belonging to entities that are not party to this case. FDA is required by law to withhold trade secret and confidential commercial information, *see* 18 U.S.C. § 1905; 21 U.S.C. § 331(j); 21 C.F.R. § 20.61, and to specifically protect information contained in NDAs, *see* 21 C.F.R. § 314.430. Therefore, these records could not legally be disclosed, if at all, until adequate measures are undertaken to meet the legal requirements for disclosure, thereby adding to the burden on the agency and the Court. It would be grossly inappropriate for Sandoz to obtain access to its competitors' trade secrets without providing a full opportunity to those parties to assert their views and to protect their interests.

---

[9]   Sandoz contends that because FDA produced some internal agency and third party documents in *Tummino v. FDA*, No. 05-CV-366 (E.D.N.Y. filed Jan. 21, 2005), Defendants are bound to do the same in the instant matter. (D.I. 10 at 6-7.) However, merely because an agency may choose to waive a privilege in one case does not mean that it must do so in every other case, and Sandoz has pointed to no authority to the contrary. Furthermore, in *Tummino*, the NDA materials were produced to the plaintiffs only because the NDA-holder, Duramed Research, Inc., a wholly owned subsidiary of Barr Pharmaceuticals, Inc., consented to such disclosure in the form of a stipulated protective order. In addition, the materials that constitute the administrative record must be determined on a case-by-case basis, because the documents "on which the Commissioner relies to support the [particular administrative] action," 21 C.F.R. § 10.3(a), will necessarily vary with each administrative action taken.

Furthermore, those documents are not relevant to the issues in this case, namely FDA's alleged inaction or delay on the Omnitrope NDA and Pfizer Petition. The requested NDA documents concern different drugs and different parties that are not before this Court, and FDA is not considering those documents in reaching its decision on either the Omnitrope NDA or the Pfizer Petition, which petition deals with only Omnitrope. Thus, FDA properly did not include such documents in the existing administrative record. *See Novartis Pharm. Corp. v. Shalala*, Civ. No. 99-323 (TFH), 2000 U.S. Dist. LEXIS 6152, at *10-*11 (D.D.C. Apr. 28, 2000) (attached as Exhibit 2) (affirming FDA's exclusion of third party documents in compiling the administrative record).

Not only are the requested records irrelevant to the issues before the Court, they are also voluminous. The Sandoz-generated materials submitted in support of the Omnitrope NDA consist of approximately 90 volumes, with each volume approximately 2 inches thick. No useful purpose would be served by clogging the court file and wasting scarce administrative and judicial resources to indulge an ill-disguised discovery demand for records relating to drug applications and products that are not at issue in the litigation at hand.

### 3.     Sandoz Has the Whole Administrative Record in this Case

Sandoz has the "whole record" as it exists to date. Because of the nature of the case (i.e., an agency inaction/delay case), the record necessarily will not be complete until a final agency decision has been reached on the Omnitrope NDA and Pfizer Petition. For purposes of the instant motion, however, the "whole record" consists up to this point of the materials that FDA is

currently considering in order to reach a decision on the Omnitrope NDA and Pfizer Petition,[10] all of which are being provided to Sandoz.  "In compiling the administrative record, the agency should not include materials that were not considered by agency decisionmakers."  *Novartis Pharm. Corp. v. Shalala*, No. 2000 U.S. Dist. LEXIS 6152, at *10-*11 (Ex. 2).  Accordingly, there is no basis for including such documents in the administrative record here.

## II.     EVEN IF SUPPLEMENTATION OF THE RECORD WERE NECESSARY, THE RELIEF SANDOZ SEEKS IS PREMATURE AND UNWARRANTED

### A.     Examination of the Parties' Dispositive Arguments Is Required Before Determining Whether the Record Is Sufficient for Judicial Review

To the extent Sandoz attempts to make any effort to bring this case within the exceptions limiting the record to the one compiled by the agency, it is that supplementation of the record is *necessary* to allow for judicial review.  But Sandoz's own statements are to the contrary.  As noted above, Sandoz has alleged in every cause of action before this Court that Defendants have a statutory duty to act on the Omnitrope NDA that requires injunctive and declaratory relief. (*See* Complaint, D.I. 1, ¶¶ 3, 90, 165, 184, 190 & 199.)  Similarly, in its motion Sandoz argues that the materials in the existing administrative record "will not provide one scintilla of evidence as to why the Federal Defendants *have violated their statutory mandates* or what has caused Defendants to unreasonably delay action and fail to act on Sandoz' [sic] NDA *as mandated by law*."  (*See* D.I. 10 at 11 (emphasis added).)  Sandoz has asserted that the action is required by

---

[10]     Contrary to Sandoz's assertions, such interpretation of "whole record" does not "eviscerate any functionality" of an action for agency delay under the APA.  (*See* Motion to Compel, D.I. 10 at 11.)  Rather, the record for review in cases alleging agency inaction differs from that in cases challenging final agency action in that the administrative record in agency delay cases is not closed, and action by the parties taken after filing of the complaint could form part of the administrative record.  *See*, *e.g.*, *San Francisco BayKeeper*, 297 F.3d at 886.  If necessary, the record can also be supplemented in an appropriate way.  (*See* Section II(B), *infra*.)

law and the failure to act warrants the relief it seeks. (*See* Complaint, D.I. 1.) Assuming *arguendo* that Sandoz's legal assertions are correct, an assessment of the reasons for Defendants' actions is irrelevant because either Defendants must act on the application, and the case should be determined on that basis for an injunction and declaratory relief, as Sandoz would argue (*see* Complaint, D.I. 1), or the case should be remanded to the agency for decision, as Defendants would argue (*cf.* Section II(B), *infra*). On the other hand, if Defendants' affirmative defenses are correct, Sandoz has an obligation to allow the agency to complete the administrative process and the relief Sandoz seeks cannot be compelled on this complaint. (*See* Answer, D.I. 8.)

Furthermore, even if this Court were to reach the issue of unreasonable delay, Sandoz and Pfizer have each presented extensive arguments and data to the agency concerning why the Omnitrope NDA should be expeditiously approved (or rejected), and this Court must use the opportunity to determine whether the agency's continued deliberation concerning this material, as set forth in the answer, is reasonable given the nature of the problem presented, the agency's overall obligations, and the time involved thus far for the review of these materials. This Court can evaluate the relevant factors for considering allegations of unreasonable delay in the drug approval process by reviewing the administrative record and the pleadings; the relevant considerations do not rely on any form of "supervision over the FDA's progress." *See In re Barr Labs., Inc.*, 930 F.2d at 74-76. Only if the Court were to reach this issue and determine the record to be insufficient would supplementing the record be warranted. Accordingly, at a minimum, Sandoz's motion is premature.

### B. If the Record Were Determined Insufficient for Judicial Review, the Court Must Provide Defendants With the Opportunity to Supplement the Record

Even if this Court were to find the administrative record here inadequate to exercise meaningful review, the remedy is not to compel the production of a laundry-list drawn up by the party challenging the agency's conduct. On the contrary, it is controlling law that the Court must provide the agency the opportunity to supplement its explanation and then, if necessary, to remand the case to the agency for additional supplementation. As the D.C. Circuit has held:

> When the record is inadequate, a court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary.' The new materials should be merely explanatory of the original record . . . If the agency action, once explained by the proper agency official, is not sustainable on the record itself, the proper judicial approach has been to vacate the action and to remand the matter back to the agency for further consideration. . . . Consideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted, even when the court has also examined the administrative record. If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits.

*Envt. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981) (citations omitted). Accordingly, even if Sandoz were to make a showing that the record were inadequate, the law requires that the Court provide FDA with an opportunity to supplement that record and only thereafter, if necessary, remand the case to the agency for additional consideration.

Sandoz has presented no authority to support its contention that compulsion is the appropriate relief. Given the fact that controlling authority mandates that the agency supplement the record, this is hardly surprising. To permit a party challenging administrative action to "supplement" the record by compelling production of the kind of extraneous material Sandoz seeks to include would invite litigants to troll through agency records looking for evidence to

18

bolster their claims or that otherwise might be of interest. Such "fishing expeditions" are not to be countenanced in APA litigation.

## CONCLUSION

For the foregoing reasons, Sandoz's motion must be denied or, at a minimum, deferred until the parties' dispositive motions have been reviewed by the Court, at which time the Court can consider whether it is necessary for the agency to supplement the administrative record.

| Of Counsel: | Respectfully submitted, |
|---|---|
| PAULA M. STANNARD<br>Acting General Counsel | PETER D. KEISLER<br>Assistant Attorney General |
| SHELDON T. BRADSHAW<br>Associate General Counsel<br>Food and Drug Division | EUGENE M. THIROLF<br>Director |
| ERIC M. BLUMBERG<br>Deputy Chief Counsel, Litigation | /s/<br>DOUGLAS W. STEARN (DCBN 440735) |
| SHOSHANA HUTCHINSON<br>Assistant Chief Counsel<br>U.S. Dept. of Health & Human Services<br>Office of the General Counsel<br>5600 Fishers Lane<br>Rockville, MD  20857<br>(301) 827-8579 | Trial Attorney<br>Office of Consumer Litigation<br>U.S. Department of Justice<br>P.O. Box 386<br>Washington, D.C. 20044<br>Telephone: (202) 307-0061<br>Facsimile:  (202) 514-8742<br>E-mail: douglas.stearn@usdoj.gov |

December 29, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Defendants' Opposition to Plaintiff's Motion to Compel to be served by electronic mail and via the District Court's Electronic Filing System (ECF) upon:

John M. Engel
Engell & Novitt, LLP
Market Square
Suite 620
801 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 207-3303 (telephone)
(202) 207-3318 (facsimile)
E-mail: jengel@engelnovitt.com
*Counsel for Sandoz, Inc.*

this 29th day of December, 2005.

                                                            /s/
                                        Douglas W. Stearn