UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDOZ INC. )<br>)<br>      Plaintiff, )<br>)<br>   v. )<br>)<br>MICHAEL O. LEAVITT, Secretary of )<br>Health and Human Services, and )<br>ANDREW C. VON ESCHENBACH, M.D., )<br>Acting Commissioner, Food and Drug )<br>Administration, )<br>)<br>      Defendants. )<br>_____ ) | Case No. 1:05CV01810 (RMC) |

**REPLY MEMORANDUM IN SUPPORT OF SANDOZ'
MOTION TO COMPEL PRODUCTION OF THE FULL ADMINISTRATIVE RECORD
AND IN RESPONSE TO THE FEDERAL DEFENDANTS' OPPOSITION THERETO**

The Federal Defendants, in their response to Sandoz' Motion to Compel, have reargued effectively the very same legal contentions that were rejected summarily on December 22, 2005, by the Chief Judge of the Eastern District of New York ("E.D.N.Y.") in a comparable failure-to-act case presenting overlapping claims. See Tummino v. FDA, No. 05-CV-366 (E.D.N.Y. 2005) (Korman, CJ). (Sandoz discussed the Tummino Court's Order in its pending Unopposed Motion For An Expedited Status Conference ("Status Conf. Mot." at 4 & n. 4)). Furthermore, the Federal Defendants have attempted to distinguish the extensive Administrative Record produced by the Food and Drug Administration ("FDA") in Tummino – where FDA voluntarily has turned over to a third-party the very same class of purportedly "predecisional" and allegedly privileged internal agency e-mails, memoranda, reviews, and briefing documents that are equally salient and probative here, but which the Federal Defendants would have this

-1-

Court exclude from the complete Administrative Record in this case. The distinction is premised on three erroneous assertions: (i) that the complete record in each case is unique, (ii) that production of such materials in this case requires supplementation of the record, and (iii) the tenuous claim that Sandoz' Motion does not justify supplementation of what FDA considers the complete record in this case (or the discovery that Sandoz also anticipated in its opening brief).

Because the Federal Defendants effectively have conceded the thrust of Sandoz' Motion relative to the statutorily-mandated production of the complete Administrative Record, and because the Federal Defendants' attempt to recast Sandoz' Motion To Compel as primarily a Motion To Supplement, as to which all the salient case law cited in Sandoz' opening brief and in the Federal Defendants' opposition mandate a ruling in Sandoz' favor, this Court should promptly grant Sandoz' Motion and direct the Federal Defendants to produce the supplemented complete Administrative Record under the Protective Order in this case and to file an appropriate spoilage/document retention assurance with this Court.

## I. BACKGROUND

The Federal Defendants have mischaracterized Sandoz' 43-page Complaint and the five (5) Counts therein to fit the Federal Defendants' view of this case. Sandoz will not summarize its claims again here but refers this Court to its Complaint. Nonetheless, Sandoz underscores for this Court the graviman of its Complaint, which arose because the Federal Defendants went outside the standard drug approval process and overruled the expert scientific and medical review staff of the Food and Drug Administration ("FDA"). Consequently, the Federal Defendants have improperly precluded FDA from taking the statutorily-compelled action to either approve or disapprove Sandoz' New Drug Application ("NDA") for Omnitrope, a recombinant human growth hormone product – an action which has been unreasonably delayed

as a result of the Federal Defendants' *ultra vires* protracted failure to act for almost two years despite a 180-day plain-language statutory mandate compelling the very action Sandoz seeks in this proceeding.

This is decidedly *not* a run-of-the-mill Administrative Procedures Act ("APA") case, which typically would involve review of an agency action not, as here, an agency's unreasonable delay and failure to act. Sandoz' Complaint, which alleges everything that Sandoz knows or reasonably could have known in the absence of the complete Administrative Record, reflects just how unusual and extra-ordinary the NDA review process has been as managed by the Federal Defendants in contravening the Agency's own medical experts in the case of Omnitrope. It cannot be reasonably disputed that the Federal Defendants have caused FDA to depart from its normal NDA review process – which, Sandoz believes, is precisely the reason the Federal Defendants are steadfastly resisting production of the complete Administrative Record.

The Federal Defendants insist on artificially constricting the Administrative Record for review in this case to the metes and bounds of what Sandoz knew from its own corporate files or could have known from the public record when it filed its Complaint on September 13, 2005. Not surprisingly, the Federal Defendants' artificial constraints have precluded production to date of the most relevant and probative information that sheds light upon the whys and wherefores of their failure and/or refusal to act timely on the Omnitrope NDA, i.e., FDA Reviews and Memoranda, internal FDA Meeting Minutes, internal FDA Teleconference minutes, internal FDA e-mail, and internal FDA Commissioner Briefing documents.[1] Yet, the refusal to produce these relevant Administrative Record materials in this case – the prior existence of which the

---

[1] Sandoz has provided this Court with a representative sample of these Administrative Record materials produced in <u>Tummino</u> which became available after Sandoz filed this Motion to Compel. Status Conf. Mot. at 4-5 & Ex. 2. In order to avoid burdening this Court given the availability of the complete set of materials from the E.D.N.Y. electronic docket, Sandoz is not resubmitting any of them with this Reply Memorandum.

Federal Defendants have not disputed – stands in pointedly stark contrast to FDA's production of these very types of documents in Tummino.

Sandoz seeks to understand whether or not FDA has in fact engaged in any legitimate effort to resolve any outstanding scientific or technical issues during the past almost-two years during which the Federal Defendants have cast Sandoz' NDA into perpetual limbo.  Production of the complete Administrative Record will provide Sandoz and the Court with the critical evidence needed to resolve this matter, and is in accord with the controlling case law addressed in Sandoz' opening brief, as well as that cited in the Defendants' opposition.

## II. ARGUMENT

### THE FEDERAL DEFENDANTS DO NOT DISPUTE THAT PRODUCTION OF THE "WHOLE" ADMINISTRATIVE RECORD IS COMPULSORY

As set forth in Sandoz' opening brief, the irregular circumstances underlying these proceedings encompass far more than what *FDA considers* the Administrative Record.  As alleged by Sandoz, FDA senior scientists and medical reviewers have repeatedly informed Sandoz that no further information is required for review of its NDA.  Yet, almost two years after the initial NDA submission, the Federal Defendants still have failed to act and there is still no decision in sight – *even though FDA is statutorily required to have acted within 180 days*.  Without any rationale beyond that cited in Sandoz' opening brief – namely that FDA's expert staff responsible for the NDA had "completed [their] review of this application as submitted," Mot. at 5 – the Federal Defendants have failed to act for unspecified reasons.  Yet, it is precisely this failure to act which mandates production of the complete Administrative Record – encompassing everything up until the point at which the Agency experts "completed [their]

review," as well as the post-review documentation.[2]  That Record alone can cast much-needed light on the reasons for the Federal Defendants' impermissible unreasonable delay and *ultra vires* failure-to-act.

The Federal Defendants' opposition falls significantly short on, and effectively concedes, this pivotal statutory requirement.  The Federal Defendants point – 16 months post-review – to a 90-volume NDA that FDA's expert staff scientists *completed their review of one year ago* and implicitly suggest there is something remaining in those 90-volumes to review.  That contention, and the accompanying claims about some 2,000 pages of year-old, publicly-available documents (other than the docket of the Pfizer Petition Sandoz is challenging) having *absolutely nothing* to do with Omnitrope, are at best specious.  These materials cannot credibly be defended as providing the requisite complete Administrative Record for this Court's review of the failure-to-act allegations in this case.

The Federal Defendants are attempting to have it both ways.  On the one hand, the Defendants argue that what is being produced is the "complete" Administrative Record – thereby affirming that FDA *has* all the information that is required to take the statutorily-compelled action.  Even skimming the documentation which constitutes the Federal Defendants' view of the Administrative Record, it is evident that FDA has had all this information for several years, and indeed the FDA staff experts who review NDAs had reviewed all 90 volumes of Sandoz' NDA.  On the other hand, the Federal Defendants claim that the record is still in flux because they still are unable to make a determination.  The Federal Defendants' circular reasoning – that FDA has before it the complete Administrative Record and that no further information is required from

---

[2]  As delineated in Sandoz' opening brief, the APA directs a court evaluating agency action or failure to act to "review the whole record or those parts of it cited by a party."  5 U.S.C. § 706; Ctr. for Auto Safety v. FHA, 956 F.2d 309, 314 (D.C. Cir. 1992); Natural Res. Def. Council, Inc. v. Train, 519 F.2d 287, 291 (D.C. Cir. 1975).

Sandoz for that Record, but that inexplicably FDA has not come to a determination because it is still considering something (that apparently is outside their definition of the complete Administrative Record) – cannot be allowed to stand. These contentions are logically and legally untenable. Either (i) the Administrative Record is not complete, and the Federal Defendants must act on the NDA by asserting that FDA requires further information to then analyze before FDA acts, or (ii) as the Federal Defendants would have this Court believe, the Administrative Record is complete, and ripe for a statutorily-mandated decision that should have been made almost two years ago. Moreover, Sandoz is confident that the complete Administrative Record (including those portions that Defendants have refused to produce) will establish that these contentions are indeed not even plausibly supported by the record itself.

It is for this very reason that none of the answers that this Court must secure in order to render summary judgment – for Sandoz much less for the Federal Defendants – can be gleaned from what FDA considers the "existing Administrative Record". That is why it is imperative for this Court to order the government to produce the complete Administrative Record. Moreover, although the Federal Defendants have tried to convert this into primarily a supplementation motion, the cases the Defendants cite, which Sandoz addressed in its opening brief (Mot. at 6), compel supplementation of the record in an exceptional failure-to-act case such as this. As Sandoz highlighted in its opening brief, it is settled law that a case such as this one falls squarely in this Circuit's previously-described circumstances for which supplementation is the appropriate remedy.

**SUPPLEMENTATION OF THE RECORD IS JUSTIFIED AND CONSISTENT WITH CONTROLLING CASELAW**

In virtually every instance, the supplementation cases quoted by the Federal Defendants refer to the Administrative Record that is the subject of judicial review that is "generally" or

"ordinarily" or "routinely" undertaken in a typical APA case. See Opp. at 6, 10, 11. As indicated above and in Sandoz' opening brief, *this* is no normal or ordinary APA case. In these types of circumstances, the APA allows supplementation in many instances, one of which is directly on point here: "cases where agencies are sued for a failure to take action."[3] In 1989, the D.C. Circuit Court of Appeals enunciated eight separate circumstances where non-record review might be merited. These eight circumstances, at least one of which pointedly applies in this case, are:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) *in cases where agencies are sued for a failure to take action*; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch, 876 F.2d at 991-92 *(D.C. Cir. 1989)* (emphasis added) (citing numerous cases and Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L. Rev. 333, 345 (1984)).

Contrary to the Federal Defendants' suggestion, these eight circumstances justifying supplementation are not merely *dicta*, but have been recognized by this Court. The Federal Defendants seek by omission to downplay the critical importance of the D.C. Circuit's ruling in *Esch* by pointing to a footnote in a subsequent District Court decision suggesting that these

---

[3] See Sandoz Mot. at 10 n.6 (citing Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989); cf. Cobell v. Babbitt, 91 F.Supp.2d 1, 38 (D.D.C. 1999) ("Extrinsic evidence is appropriate for consideration when the processes utilized and factors considered by the decisionmaker require further explanation for effective review"), aff'd, 240 F.3d 1081 (D.C. Cir. 2001); Cmty. for Creative Non-Violence v. Lujan, 908 F.2d 992, 997 (D.C. Cir. 1990) (allowing supplementation because challenged agency decision was result of "relatively informal, less structured process" and therefore "precise boundaries or the applicable administrative record may be less clear"). Such supplementation includes any information that "shed[s] light on the factors and considerations relied upon by the agency." Esch, 876 F.2d at 992.

exceptions were merely *dicta*.  Fund for Animals, 245 F. Supp. 2d at 58 n.8.  Setting aside the gravity of such a stark contrast between a District Court's implementation of binding Circuit Court precedent, the Court's initial decision not to follow Esch and allow supplementation was later reheard and overturned.  Fund for Animals, 391 F. Supp. 2d 191.  Additionally, Amfac Resorts L.L.C. v. Dep't of Interior, 143 F. Supp. 2d 7, 11-12 (D.D.C. 2001), cited in Sandoz' opening brief, Mot. at 9, and the Federal Defendants' Opposition, Opp. at 8 n.6 (citing Amfac for the proposition that there are only "[f]our narrow exceptions to the rule prohibiting review of extra-record material [that] are recognized in this Circuit") actually supports Sandoz' case, as the Court in Amfac immediately thereafter cautioned readers that "this is not to suggest, however, that only four exceptions exist.  Indeed, in 1989, the Circuit Court noted [in Esch] with approval [of] eight separate circumstances where non-record review might be merited."  143 F. Supp. 2d at 7, 9 n.5.  In sum, not even the Amfac Court limited its understanding of supplementation to the purported "four narrow exceptions" which the Federal Defendants would have this Court apply.

     In this respect, the D.C. Circuit has been unambiguous, reaffirming that there are at least these eight circumstances where supplementation of the record is appropriate in this Circuit.  According to the plain terms of the Circuit's opinions, one of those circumstances unambiguously encompasses this precise case – one involving a government agency that has failed to act.  It is for this reason that review may not be limited to an overly-confined Administrative Record if "there is no final agency action to demarcate the limits of the record."  San Francisco BayKeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002).  The court in Baykeeper was very clear in a ruling directly on point, stating that the reason for this exception is that "when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or

inactions." Id.  Accordingly, in such cases, the APA allows discovery beyond "the whole record."

The sole Administrative Record on review of such a failure to act claim is not permitted to, and cannot, consist of an agency-constructed shell that does not even touch upon the substance of an as-yet incomplete action.  Yet, that is precisely the proposed Administrative Record compiled by FDA in this case.  However, that artificially constrained record is plainly insufficient for explaining the reason behind FDA's "failure to act" on, and "unreasonable delay" of, the Omnitrope NDA.  Similarly, it sheds no light on the reality or substance of the unspecified "issues" supposedly outstanding.  Accordingly, it must be supplemented.

In resoundingly circular arguments, the Federal Defendants' repeatedly attempt to overcome this conclusion by citing cases in which the agency action in question already had occurred, particularly in connection with the Federal Defendants' asserted claim to deference on the FDA-compiled record.  Opp. at 6.  The Federal Defendants assert, "[I]t is the agency that did the 'considering,' and that therefore is in a position to indicate initially which of the materials were 'before' it."  Fund for Animals, 245 F. Supp. 2d at 57 (quoted in Opp. at 7).  That is not this case.  Here, the government has failed to act and by the time that it does, if at all, the "evolving" record itself will have been further "supplemented" internally within the Agency.

Moreover, Sandoz continues to be concerned that, notwithstanding Sandoz' request of the Federal Defendants to protect those documents that Sandoz considers part of the complete Administrative Record, the Federal Defendants have failed to address spoilage and retention of *all* evidence in their possession, custody, or control relevant to this case.  Sandoz is particularly puzzled that the Federal Defendants have not even authorized provision of some assurance, as requested by Sandoz' counsel almost one month ago, nor filed the assurance Sandoz sought as

-9-

part of this Court's Order on Sandoz' Motion To Compel. The failure to demonstrate good faith through the provision of this assurance warrants supplementation.

### ANY DELIBERATIVE PROCESS PRIVILEGE CLAIMS DO NOT PRECLUDE PRODUCTION OF THE COMPLETE ADMINISTRATIVE RECORD PURSUANT TO A PROTECTIVE ORDER SHIELDING THE RECORD FROM PUBLIC DISCLOSURE

The Federal Defendants' final objection to producing the complete Administrative Record consists of a sweeping, across-the-board claim of the deliberative process privilege. See, e.g., Opp. at 11. However, any such privilege does not apply to confidential production of the record in this case pursuant to the parties' proposed Protective Order. The deliberative process privilege merely "shields from *public disclosure* confidential inter-agency memoranda on matters of law or policy." National Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1116 (9th Cir. 1988) (emphasis added). This unique privilege is used to afford reasonable *confidentiality* to the decisionmaking process within a government agency. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). It is *not* intended to be used as the Federal Defendants try to leverage it here, i.e., as a sword to block judicial inquiry and *confidential* production of a statutorily-mandated Administrative Record pursuant to a rigid Protective Order.

Moreover, the Supreme Court has restricted the deliberative process privilege to materials that are both predecisional and deliberative. See EPA v. Mink, 410 U.S. 73, 88 (1973). In other words, to qualify for the privilege, a Federal Defendant must demonstrate that a particular document is (1) predecisional, that is, "antecedent to the adoption of agency policy," and (2) deliberative, that is, actually "related to the process by which policies are formulated." National Wildlife, 861 F.2d at 1117 (citation omitted). There has been no such showing in this case. Moreover, because the deliberative process privilege is restricted to the intra-governmental exchanges that actively contribute to an agency's decisionmaking process, factual statements or

post-decisional documents explaining or justifying a decision already effectively rendered are not shielded, even if those decisions are subject to internal review.  See Sears, Roebuck, 421 U.S. at 151-52; Mink, 410 U.S. at 88.

Furthermore, even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic.  The privilege "is a qualified one," FTC v. Warner Communications Inc., 742 F.2d 1156, 1161 (9th Cir. 1984), and it "is not absolute." First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994).  Thus, in determining whether to apply the privilege when asserted as to a particular document (as opposed to an entire, as-yet undelineated Administrative Record), a court must weigh competing interests.  See id. In doing so, courts routinely rely on a discretionary balancing test.  "In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government."  See Warner Communications, 742 F.2d at 1162.  Consequently, "where the documents sought may shed light on alleged government malfeasance," the privilege is routinely denied.  Franklin, 478 F. Supp. at 582; see also Bank of Dearborn v. Saxon, 244 F. Supp. 394, 401-03 (E.D. Mich. 1965) ("the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process"), *aff'd*, 377 F.2d 496 (6th Cir. 1967).  Because the deliberative process privilege is a qualified one, a plaintiff like Sandoz challenging agency inaction or action can obtain otherwise privileged documents "if his or her need for the materials and the need for accurate fact-finding override the Government's interest in non-disclosure."  Center for Biological Diversity, 2002 U.S. Dist. LEXIS 27617 (D. Ariz., July 23, 2002) at *3.[4]

---

[4]   See also In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 582 (E.D.N.Y. 1979) (The deliberative process privilege is "a discretionary one").  In deciding how to exercise its discretion, an

If the Court believes it necessary in this case to apply the foregoing factors, this Court should determine that Sandoz' and this Court's need for the withheld records outweighs the Defendants' need to keep the deliberative information contained in the documents internal to the agency (as opposed to produced confidentially under a Protective Order).  First, the withheld records that might be sought in discovery in this case, if necessary, could be relevant to providing the actual and complete explanation for why the Agency has failed to act upon the Omnitrope NDA.  Second, nothing in what FDA considers the Administrative Record explains in the slightest the government's reluctance to act upon Sandoz' NDA.  In sum, as detailed above, there has been no evidentiary showing to date that can adequately inform the Court as to what is unreasonably delaying the Federal Defendants' action in this circumstance.  Indeed, it may become apparent following production of the supplemented complete Administrative Record that there simply is no other evidence available except for documentation within the control of FDA allowing Sandoz' counsel to litigate their claims and for there to be meaningful review of that decision by this Court.

Finally, in considering the interests of the litigants, society's interest in the accuracy and integrity of judicial factfinding, and the public's interest in effective agency decisionmaking, this Court should find that these factors also unambiguously militate in favor of discovery.  The public and the pharmaceutical industry alike are benefited when FDA takes timely action on NDAs. Inaction benefits no legitimate stakeholders:  not patients, who need effective medications; not payers, who benefit from competition in the medical marketplace; and not the

---

inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government."  The factors to be considered in making this determination include:  "1) the relevance of the evidence; 2) the availability of other evidence; 3) the Governments role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplative policies and decisions."  Id.

sponsor company, which cannot market its drug or know what additional evidence is needed in the event of a non-approval action. Accordingly, this Court should reject the Federal Defendants' deliberative process privilege claims in toto or at least require the requisite heavy burden to be met for any particular specified document to be excluded as privileged.

**FRCP 26 AND THE APA COULD COMPEL FAR-REACHING DISCOVERY**

Additionally, as discussed in Sandoz' opening brief, see Mot. at 6 n.6, discovery beyond the complete Administrative Record as supplemented is legally appropriate and could also be warranted in these unusual circumstances. The Federal Rules of Civil Procedure specifically apply to all civil cases in United States district courts, excluding only certain cases identified in Rule 81. See Fed.R.Civ.P. 81(a). Accordingly, the Federal Rules of Civil Procedure – including Rule 26, which governs discovery in civil matters – applies to the case before this Court.

Within those Rules, broad discovery is permitted of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b). The rule is given a liberal construction. Schlagenhauf v. Holder, 379 U.S. 104, 114-115 (1964). It allows the Court to limit discovery, but only in narrowly-prescribed circumstances.[5] None of the reasons to limit discovery delineated in the Rules is applicable here. Therefore, following production of the complete supplemented Administrative Record, this Court should direct the Federal Defendant to turn over all materials in response to any discovery requests Sandoz ultimately propounds.

**CONCLUSION**

Sandoz requires the complete Administrative Record to properly litigate its claims. More importantly, as set forth in its opening brief, Sandoz is entitled to the "whole record" as a matter

---

[5] If the discovery is "unreasonably cumulative or duplicative" or "obtainable from some other source that is more convenient, less burdensome, or less expensive," if "the party seeking discovery has [already] had ample opportunity . . . to obtain the information sought," or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2).

-13-

of law.  5 U.S.C. § 706; American Bioscience, Inc. v. Thompson, 243 F.3d 579, 582-583 (D.C. Cir. 2001); Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984). Furthermore, in the unique circumstances of this case, Sandoz is entitled to supplementation of that complete Administrative Record.  Esch, 876 F.2d at 976.  Given the scope of predecisional material FDA already has produced in the Tummino case, it is clear the agency has no essential underlying reservation about providing putatively deliberative process materials in a litigation context pursuant to a Protective Order.  Yet, for unexplained reasons, FDA has chosen to treat these two similarly-situated cases disparately.  In this case, based upon Sandoz' compelling showing, the only appropriate decision should be to compel FDA to supplement the record so that this Court can proceed to a full and fair hearing on the merits.  Accordingly, Sandoz respectfully requests that the Court grant its Motion To Compel, direct the Federal Defendants to produce to Sandoz' counsel the complete APA-mandated "whole record," supplemented as directed by this Court, pursuant to the proposed Protective Order in this case.

Date:   January 6, 2006                                  Respectfully submitted,


                                                       /s/
                                    JOHN M. ENGEL (DCBN 443628)
                                    Engel & Novitt, LLP
                                    Market Square
                                    Suite 620
                                    801 Pennsylvania Avenue, N.W.
                                    Washington, DC  20004
                                    Telephone: (202) 207-3303
                                    Fax: (202) 207-3318
                                    E-Mail: jengel@engelnovitt.com
                                    Attorneys for Plaintiff Sandoz Inc.