# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDOZ INC. | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | ) |
| | ) |
| MICHAEL O. LEAVITT, Secretary of | )    Case No. 1:05CV01810 (RMU) |
| Health and Human Services, and | ) |
| ANDREW C. VON ESCHENBACH, M.D., | ) |
| Acting Commissioner, Food and Drug | ) |
| Administration, | ) |
| | ) |
|        Defendants. | ) |
| _____ | ) |

**CONSOLIDATED OPPOSITION/REPLY PURSUANT TO JANUARY 31ST ORDER
SANDOZ INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF SANDOZ' MOTION FOR SUMMARY JUDGMENT
ON ALL COUNTS IN ITS COMPLAINT**

JOHN M. ENGEL (DCBN 443628)
Engel & Novitt, LLP
Market Square
Suite 620
801 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 207-3303
Fax: (202) 207-3318
E-Mail: jengel@engelnovitt.com
Attorneys for Plaintiff Sandoz Inc.

Date:   February 21, 2006

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... iii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.     The User Fee Act Promotes FDA Compliance With The
Statutory NDA Review Deadline Codified In 21 U.S.C. § 355(c)(1),
And Does Not Give FDA Unfettered Discretion To Defer Action ....................................... 3

II.    Defendants' Admitted Failure To Timely Act Warrants
Judicial Relief Directing FDA To Promptly Comply With
21 U.S.C. § 355(c)(1) By Either Approving The NDA Or
Providing Notice Of A Hearing On The Grounds For
Refusing Approval ................................................................................................ 11

CONCLUSION ............................................................................................................. 16

Plaintiff's Exhibits 1-11

# TABLE OF AUTHORITIES

Page

*Federal Cases*

Abbott Labs. v. Gardner, 387 U.S. 136 (1967)..............................................................13

Airline Pilots Ass'n v. Civil Aeronautics Bd., 750 F.2d 81 (D.C. Cir. 1984) ...............11

Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150 (1970) ...................13

Bennett v. Spear, 520 U.S. 154, 163 (1997) ...................................................................13

Brock v. Pierce County, 476 U.S. 253 (1986) ................................................................14

Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001)....................................................14, 15

Cutler v. Hayes, 818 F.2d 879 (D.C. Cir. 1987)............................................................10

Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961) .................................13

Envtl. Defense Fund, Inc. v. Hardin, 428 F.2d 1093 (D.C. Cir. 1970).........................14

Envtl. Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584 (D.C. Cir. 1971)...................14

Forest Guardians v. Bruce Babbit, 174 F.3d 1178 (10th Cir. 1998).........................13, 14

FTC v. Standard Oil Co., 449 U.S. 232 (1980) ..............................................................12

Heckler v. Chaney, 470 U.S. 821 (1985)........................................................................11

IMS Limited v. Schweiker, Food Drug Cosm. L. Rep.
(CCH) ¶38, 104 (C.D. Cal. 1981) ...............................................................6, 8, 12, 14, 17

In Re: American Rivers and Idaho Rivers United, 372 F.3d 413 (D.C. Cir. 2004)....10, 11

In re Barr Labs, 930 F.2d 72 (D.C. Cir.1991)................................................................15

In re Ctr. for Auto Safety, 793 F.2d 1346 (D.C. Cir. 1986) ..........................................14

The Mashpee Wampanoang Tribal Council v Norton, 336 F.3d 1094 (D.C. Cir. 2003) ..............15

MCI Telecomms. Corp. v. FCC, 627 F.2d 322 (D.C. Cir. 1980) ..................................................11

Public Citizen Health Research Group v. Auchter, 702 F.2d 1150 (D.C. Cir. 1983)..............10, 11

Public Citizen Health Research Group v. Chao, 314 F.3d 143 (3d Cir. 2002).............................10

Public Citizen Health Research Group v. FDA, 740 F.2d 21 (D.C. Cir. 1984)......................10, 14

Shaughnessy v. Pedreiro, 349 U.S. 48 (1955) .............................................................................13

Sierra Club v. Thomas, 828 F.2d 783 (D.C. Cir. 1987)................................................................14

Silverthorne v. Laird, 460 F. 2d 1175 (5th Cir. 1972)..................................................................12

Telecommunication Research and Action Center(TRAC) v. FCC,
750 F.2d 70 (D.C. Cir. 1984)..................................................................................................10, 15

Tummino v. FDA (CV-05-366 (ERK) (VVP)) (E.D. N.Y. 2005)...............................1, 3, 9, 10, 12

Valona v. United States Parole Comm'n, 165 F.3d 508 (7th Cir. 1998)......................................12

Transcript Of Civil Cause For Mot. Hrg. (Dec. 22, 2005), Tummino v. FDA
(CV-05-366 (ERK) (VVP)) (E.D. N.Y. 2005),............................................1, 3, 9, 10, 12

### Federal Statutes And Regulations

5 U.S.C. § 551(13) .......................................................................................................................12

5 U.S.C. 706(1) ...............................................................................4, 6, 11, 12, 13, 15

5 U.S.C. 706(2) ................................................................................................4, 11, 13

21 U.S.C. § 355(b)(2) ...................................................................................................................16

21 U.S.C. § 355(c)(1)........................................................................3, 4, 5, 6, 7, 8, 16, 17

21 U.S.C. § 355(d) .......................................................................................8, 9, 10, 16, 17

### Legislative Materials

Cong. Rec., p. 10108 (June 11, 1962)..............................................................................................5

Cong. Rec., p. 16304 (Aug. 23, 1962) .............................................................................................5

iv

Cong. Rec. 17239 (Oct. 7, 1992) (Joint Statement by Senators
Edward Kennedy and Orrin Hatch during final consideration of
H.R. 6181, Prescription Drug User Fee Act, Public Law No. 102-571) ...................................6, 7

H.R. Rep. No. 79-1980, at 278 (1946) .........................................................................................13

Pub. Law 87-781, 87th Cong., S. 1552, Oct. 10, 1962, Sec. 104(a),
"New Drug Clearance Procedure" ..................................................................................................5

S. Rep. No. 79-752 at 214 (1945) ................................................................................................13

S. Rep. No. 1744, Part 2, accompanying additional amendments to the
Drug Industry Act of 1962, S. 1552 (Aug. 21, 1962) ...................................................................5

Title V of the Public Health Security and Bioterrorism Preparedness and
Response Act of 2002, P.L. 107-188 ..........................................................................................8, 9

### Administrative Materials

"Human Drug Performance Goals, Measure 1A" In FOOD AND DRUG
ADMINISTRATION FY 2007 BUDGET - CONGRESSIONAL JUSTIFICATION available at
http://www.fda.gov/oc/oms/ofm/budget/2007/PDF/4PerfInformation.pdf (Feb. 16, 2006).........2,7

Opposition of Sandoz to Pfizer's Citizen Petition (June 25, 2004),
AR at 001101-001475 ...................................................................................................................10

Sandoz Resubmission and Renewed Request for Approval
of 505(b)(2) NDA (Dec. 1, 2004), NDA Submission Volume T46689,
AR at 031416-031418 ...................................................................................................................16

Sandoz Second Resubmission and Renewed Request for Approval
of 505(b)(2) NDA (Mar. 22, 2005), NDA Submission Volume T43778,
AR at 031429-031432 ...................................................................................................................16

### Treatise

Peter B. Hutt & Richard A. Merrill, FOOD AND DRUG LAW 534 (2nd ed. 1991) ........................5, 6

## INTRODUCTION

Federal Defendants Michael Leavitt and Andrew von Eschenbach ("the Defendants") are seeking to persuade this Court to adopt arguments comparable to those already rejected just last year by the Chief Judge of the Eastern District of New York in a case with not dissimilar claims. Tummino v. FDA, CV-05-366 (ERK) (VVP) (E.D.N.Y. 2005). In that case, the Defendants have likewise urged that statutory requirements and deadlines governing the Food and Drug Administration ("FDA") may be ignored by the Agency, and that relief under the Administrative Procedure Act ("APA") is unavailable. As Chief Judge Korman told the Defendants in Tummino last December, after promises of forthcoming Agency action failed to materialize over a shorter period than is at issue here, "this has all the earmarks of an administrative agency filibuster."[1] As in Tummino and other precedents discussed herein, the Defendants' ongoing failure to act warrants judicial intervention.

Plaintiff Sandoz Inc. ("Sandoz") is challenging the Federal Defendants' failure to act in either approving or disapproving its New Drug Application ("NDA") for Omnitrope, by the codified nondiscretionary deadline for action of August 31, 2004. Sandoz believes the failure to act in contravention of that clear statutory directive alone justifies the entry of summary judgment in its favor. At the heart of the Defendants' case is their pivotal but unsupported (and not relevant) factual assertion, namely that the NDA submitted by Sandoz is under active review. That assertion does an injustice to the scientific expertise of FDA's professional reviewers, who

---

[1]    Tummino, Tr. Of Civil Cause For Mot. Hrg. (Dec. 22, 2005) (hereinafter "Tummino Tr.") at 11, lines 8-10 (Pl.'s Ex. 1). That Tummino hearing transcript was docketed in the E.D.N.Y. on January 29, 2006 (D.I. 89), following filing of Plaintiff's opening brief and during preparation of the Defendants' Cross-Motion And Opposition. The portions of that transcript cited in the instant Consolidated Opposition/Reply Memorandum are attached (Pl.'s Ex. 1). In light of this Court's February 21, 2006, Order directing Sandoz to brief Tummino, Sandoz will not burden the Court with the entire transcript, but is prepared to file it in its entirety if it would assist this Court with resolving the instant cross-motions in this case.

- 1 -

have evaluated and approved hundreds of biologic products and dozens of biologic drugs.[2]  The

Defendants' claim of ongoing review is based solely upon the representation of Defendants'

counsel without citation to any supporting evidence in the Administrative Record.  See Fed.

Defs.' Brief at 7, 11.  There is nothing in what FDA considers the Administrative Record

corroborating this fact.  Indeed, the Defendants' claim is contradicted by the public record and

the Defendants' own Administrative Record,[3] which reflect the expert career staff responsible

for reviewing the NDA had completed the Omnitrope NDA review by August 31, 2004.[4]

The ensuing unreasonable delay and failure to act do not involve scientific, technical, or

other statutorily-pertinent matters, and there is no evidence implicating any question as to

whether the Omnitrope NDA is approvable or not, as evidenced by the Defendants' own Record.

Sandoz continues to maintain that FDA's lack of a cognizable rationale for failing to act, and the

---

[2]      As documented in Sandoz' opening brief, those reviewers have over twenty (20) years of experience regulating recombinant products, including six previously-approved recombinant human growth hormone ("rhGH") products, and they long ago determined that approval of an rhGH product like Omnitrope is a relatively straightforward matter.  See AR at 1103-1105 (accompanying Mem. Of Pts. & Auths. In Supp. Of Defs.' Cross Mot. For Summ. Judg. & In Opp. To Pl.'s Mot. For Summ. Judg. (hereinafter "Fed. Defs.' Brief") at Ex. C).

[3]      The Federal Defendants completed production of what FDA considers and what Sandoz disputes is the Administrative Record in this case almost two weeks after Sandoz' Summary Judgment Motion was filed. See Fed. Defs.' Supp. Not. Of Prod. Regarding The Admin. Rec. (D.I. 21) (Jan. 31, 2006).

[4]      AR at 000001-00004 (Reviewing Division "has completed its review"); "Human Drug Performance Goals, Measure 1A" In FOOD AND DRUG ADMINISTRATION FY 2007 BUDGET – CONG. JUSTIF. (hereinafter "FY 2007 BUDGET"), available at http://www.fda.gov/oc/oms/ofm/budget/2007/PDF/4PerfInformation.pdf (Feb. 16, 2006) (reporting to Congress that, for NDA submissions during Fiscal Year ("FY") 2003, which the Record reflects would include Omnitrope, FDA reviewed and acted on "100% of 82" FY 2003 NDA submissions by the end of Fiscal Year 2004, i.e., by September 30, 2004) (attached as Pl.'s Ex. 2); Complaint at ¶ 131 ("FDA's Director of the Center for Drug Evaluation and Research informally confirmed again that Sandoz had provided all necessary and appropriate information and that no further information was required for final action to be taken on the Omnitrope NDA").  All of these statements, unlike those in the Defendants' summary judgment pleadings, clearly indicate that the review process had ended; the Defendants simply have failed to execute the resulting statutory mandate to act.  Everything the government has said about the application, to not only Sandoz but Congress as well, reinforces the proposition that the review has been completed.  If that is not the case, then there has been a breakdown in the process itself.  If FDA is saying one thing externally but the converse is occurring internally, then there are serious questions about the process and how it is being conducted that require answering.

unreasonableness of that failure – which Sandoz alleged is occurring for no legally-permissible reasons, Complaint ¶¶ 101, 182 – is pertinent and further buttresses Sandoz' claims.[5]

For the reasons set forth in Sandoz' opening brief and summarized in this Consolidated Opposition And Reply Memorandum, this Court should reject the Defendants' view that the statutory mandates and deadlines imposed upon them by Congress do not apply.  The Defendants must be ordered to take a statutorily-compliant final action on the Omnitrope NDA.  Otherwise, adoption of the Defendants' position will effectively remove the mandate for FDA to act on pending NDAs, favorably or unfavorably, within some time certain.  That result would have the effect of negating the express intent of Congress, which has been unchanged since 1962, and also transform the user fee act from a resource aimed at speeding science-based approvals into a tool that disconnects the Agency from its scientific roots.

In light of the novelty of the legal issues presented by the parties' cross-motions, Sandoz renews the request presented in its moving papers respectfully seeking to have oral argument convened on the motions at this Court's earliest convenience.

## ARGUMENT

I.    **THE USER FEE ACT PROMOTES FDA COMPLIANCE WITH THE STATUTORY NDA REVIEW DEADLINE CODIFIED IN 21 U.S.C. § 355(c)(1), AND DOES NOT GIVE FDA UNFETTERED DISCRETION TO DEFER ACTION**

The Defendants seek to evade judicial review of FDA's failure to act on the Omnitrope NDA by ignoring the dictates of the unambiguous statutory deadline of 21 U.S.C. § 355(c)(1), and asserting that in any case there is no remedy for any failure to act because they claim review

---

[5]    Confronting similar circumstances, Chief Judge Korman responded:  "The political appointees within the agency as opposed to the professionals within the agency [may be having a 'very serious debate']. . . . what's happening here is they're doing a dance that's designed to prevent judicial review of their own actions. . . . What we have in the administrative records is the professionals in the agency who have the expertise to determine safety saying there's no problem."  Tummino Tr. at 27 lines 22-24; Tr. at 29 lines 9-11 (Pl.'s Ex. 1).

and relief under 5 U.S.C. § 706(1) is somehow unavailable.  This legal construct does not

withstand scrutiny under the language of either statute, or from the perspective of the intent of

Congress reflected in each statute's legislative history.  Defendants also misstate the claims in

Sandoz' underlying Complaint by asserting erroneously, "three of the five counts in Sandoz's

complaint seek to 'set aside' action on the Omnitrope application pursuant to 5 U.S.C. § 706(2)."

Fed. Defs.' Brief at 33 (<u>citing</u> Comp., D.I. 1, Counts One, Two, and Four).  This is simply

wrong.  In these three Counts, as in Count Three, Sandoz pled 706(1) claims and then simply

cited within each of those counts the 706(2) standards ("arbitrary and capricious," "excess of

statutory authority", etc.) for reversing the unlawful 706(1) failure to act and unreasonable delay.

As detailed in Sandoz' opening brief, Cons. Mem. Of Pts. & Auths. In Supp. Of Mot. Of

Sandoz Inc. For Summ. Judg. On All Counts In Its Compl. at 4-7, 25-29 (hereinafter "Sandoz

Brief"), the deadline Congress codified in 21 U.S.C. § 355(c)(1) is not, as Defendants

dismissively refer to it, a meaningless "180-day time frame."  This provision of the Federal

Food, Drug, and Cosmetics Act ("FD&C Act") imposes a nondiscretionary, mandatory, statutory

duty on FDA to act within 180 days of the NDA submission date "or such additional period *as*

*may be agreed* upon . . . ."  (emphasis added).  The latter (italicized) element is critical.  When

section 355(c)(1) was added to the FD&C Act by Congress in 1962, it was in the context of

preserving a mechanism to assure FDA could not indefinitely delay action, while nevertheless

also assuring that the marketing of a drug would not occur until FDA was satisfied the drug was

both safe and effective.  This purpose was made clear by the Chairman of the Senate Judiciary

Committee on the Senate Floor on the day Senator Kefauver's bill was passed by a vote of 78-0:

> The bill would change this [new drug clearance] procedure so that no new drug
> application would be cleared until the Food and Drug Administration had issued
> an affirmative approval. . . . [The deadline for action and the provision for
> expedited hearings] will help to *assure that no useful drug will be held off the*

> *market for an inordinate period because of bureaucratic inertia or inability to act.*  It is hoped that the Food and Drug Administration will, as it now does, *advise the applicant as soon as practicable after the filing, of any deficiencies it observes in the completeness of the material presented.*  It is also hoped that in the administration of this new provision, there will continue to be close cooperation and liaison between [FDA and the sponsor] so that the flow to the market of safe and effective new drugs will not be excessively retarded.

Cong. Rec., p. 16304, col. 1 (Aug. 23, 1962) (Remarks of Sen. Eastland on behalf of the Sen. Judiciary Comm.) (emphases added) (Pl.'s Ex. 6).[6]  Notably, the mandatory timetable provision has remained unchanged since 1962, and it was never questioned by Congress or FDA during the initial passage of the user fee amendments in 1992 or when PDUFA was reauthorized in 1997 and 2002.  In short, and as detailed below, section 355(c)(1) and PDUFA are not in "irreconcilable conflict."  Cf. Fed. Defs.' Brief at 14.

Despite the Defendants' urgings to the contrary, an NDA sponsor continues to have a determinative role in deciding the time frame within which FDA is permitted to continue its review of an NDA.[7]  To be sure, the Agency has the final say about approval (or disapproval).

---

[6]    Prior to 1962, an NDA would become effective automatically within 60 days (extendable by FDA to no later than 180 days) after submission to FDA, unless FDA affirmatively acted to block it.  As initially introduced in the Senate, the 1962 amendments sought to preclude marketing in the absence of affirmative approval by FDA, but the change also included provision for a hearing "promptly after the 180-day period" in order to "eliminate the potential delay inherent in a requirement of affirmative approval . . . ." Cong. Rec., p. 10108, col. 2 (June 11, 1962) (Pl.'s Ex. 3).  The provision was later amended in the Senate to give FDA a period of "180 days *(unless further extended by agreement)* within which to decide whether to approve the application . . . or to give notice of an opportunity for hearing . . . ." S. Rep. No. 1744, Part 2, accompanying additional amendments to the Drug Industry Act of 1962, S. 1552, at 4 (Aug. 21, 1962) (Pl.'s Ex. 4) (emphasis added).  The pertinent text of FD&C § 355(c) has remained unchanged since the date of its adoption in 1962. See Pub. Law 87-781, 87th Cong., Oct. 10, 1962, Sec. 104(a), "New Drug Clearance Procedure" (Pl.'s Ex. 5).

[7]    Contrary to the Defendants' claim, cf. Fed. Defs. Brief at 13-14, the seminal legal text in this field, Hutt & Merrill's FOOD AND DRUG LAW, underscores that, while indeed the courts almost invariably uphold FDA's denial of NDA approval and sponsors usually acquiesce to extending review, the Agency nevertheless *must* reckon with the 355(c)(1) deadline in the manner Sandoz seeks to compel in this action:

> "Accordingly, judicial review of the new drug approval process has been not only casual, but infrequent.  No sponsor has successfully sought reversal of an FDA refusal to approve its drug.  The lesson has not been lost on the vast majority of applicants who understand that the only way to secure approval of an NDA is to satisfy the Agency.

Consequently, in the overwhelming percentage of cases, most NDA sponsors follow a different course than that Sandoz took here because most sponsors for most NDAs are willing to go along with additional time beyond the basic 180-days in hopes of ultimately securing approval. Thus, it is rare for a sponsor to bring the review period to a close by no longer agreeing to extending the review, thereby risking an FDA nonapproval action. However, such sponsor extensions are consistent with the rule of law, which is all Sandoz seeks here.

Moreover, PDUFA was not intended by Congress to replace/repeal or undermine the 355(c)(1) statutory deadline. <u>Cf.</u> Fed. Defs.' Brief at 14. Indeed, there is absolutely nothing in the legislative history of PDUFA that even hints this might be the case, nor have Defendants cited anything in the PDUFA legislative history much less its statutory provisions in support of such a conclusion. As previously detailed, Sandoz Brief at 5-7, and as not refuted by the Defendants, the user fee program was intended by Congress as a means of speeding up the drug review process, while maintaining FDA's high scientific standards.

It is for this reason that the 355(c)(1) deadline and the PDUFA performance goals are not at all inconsistent, because the latter are aimed at cutting actual review times.[8] Even where, as

---

Challenges to FDA's final decisions under sections 505(d) and (e) must be filed in the court of appeals for the appropriate circuit. *A district court thus lacks jurisdiction to order FDA to approve an NDA, but may entertain a case seeking to force FDA to rule on an NDA within a specified period of time.* <u>IMS Limited v. Schweiker</u>, Food Drug Cosm. L. Rep. (CCH) ¶38, 104 (C.D. Cal. 1981)."

Peter B. Hutt & Richard A. Merrill, FOOD AND DRUG LAW 534 (2nd ed. 1991) (emphasis added) (Pl.'s Ex. 7). The facts in <u>Schweiker</u> (Pl.'s Ex. 8) closely parallel those in this case, and the Court there granted the precise relief Sandoz seeks from this Court: a 706(1) mandate directing FDA to take the requisite statutory action on an NDA pending longer than the 355(c)(1) timetable.

[8]    As noted by Senators Edward Kennedy and Orrin Hatch in a Joint Statement on PDUFA during the final consideration of the legislation (H.R. 6181) that shortly thereafter was signed into law as Pub. Law 102-571, "Without additional funds, we risk a serious bottleneck in the FDA approval process. The legislation that Senator Hatch and I are putting forward today will raise over $300 million over 5 years and provide resources to hire up to 600 new medical reviewers. In return, FDA Commissioner Kessler has articulated a set of specific performance goals that will enable the agency to cut approval times dramatically – almost in half."

with the vast majority of situations involving routine NDAs, a sponsor acquiesces to review times stretching beyond the minimum 180-day period, Congress provided resources and incentives to accelerate the review process, and minimize any agreed-to extension. To the extent the user fee performance goals are "aspirational" as Defendants' contend, Fed. Defs.' Brief at 11, they are intended to apply management rigor (and additional resources) to FDA's ongoing efforts to "cut approval times," even in those cases where sponsors agree to extend the review period beyond the minimum 355(c)(1) deadline and the PDUFA action date.[9] It is not credible for the Defendants to suggest that PDUFA could be interpreted somehow to undermine the Congressional directive to speed up the review process, and to wholly deprive sponsors of any mechanism whatsoever to call the Agency to account when no action is forthcoming.

---

Cong. Rec. 17239 (Oct. 7, 1992). As this and the remainder of the legislative history demonstrates, Congressional consideration was focused exclusively on cutting the approval times for drugs, with not one word suggesting any intent to undermine, lengthen or otherwise eclipse the 355(c)(1) deadline for the review process.

[9]     In such cases of sponsor-agreed extended review periods, the statutory timetables are *defined* by such sponsor agreement, not violated. In and of themselves, protracted NDA review periods, while potentially problematic from a public policy perspective, are not at issue here and are not violative of section 355(c)(1) unless the extended review time occurs without the agreement of the sponsor. Cf. Fed. Defs.' Brief at 11. Moreover, neither FDA's pre-PDUFA review times nor FDA's success in reducing those review times post-PDUFA (see FY 2007 BUDGET, supra note 4), are relevant to the instant action and FDA's noncompliance in this case with the 355(c)(1) deadline. Indeed, contrary to Defendants' assertions, FDA's failure to meet the 355(c)(1) deadline has been exceedingly *rare*, because sponsors typically go along with even protracted review periods. Thus, the Defendants' claims regarding FDA having missed the PDUFA timeframe for Hylenex – *by several weeks, not the 1.5 years of missing the 355(c)(1) statutory deadline at issue with Omnitrope* – or any of the similarly-situated biologic drugs cited in Sandoz' opening brief are not dispositive. FDA has proffered no evidence suggesting the Hylenex sponsor brought the review period to a close by not agreeing to continued review. Simply put, PDUFA action dates (established by Congress and missed apparently in the case of the Hylenex action that FDA took after the instant case was filed) do not displace the statutory review deadline, which, unlike PDUFA, has no statutory sunset provision and which, beyond 180-days, continues only to the extent agreed upon by the sponsor (which the public record indicates was not violated in the case of Hylenex). Notably, as detailed in Sandoz' opening brief, the public record FDA has released on the Hylenex 505(b)(2) approval reflects FDA has had absolutely no difficulty approving similarly-situated and even more complex biologic drugs under 505(b)(2) even during the pendency of this action, as well as around the time of the August 31, 2004, statutory deadline for Omnitrope. See Hylenex Office Of New Drugs Mem. *accompanying* Sandoz Brief at Ex. 11.

In discussing the statutory obligation of FDA to act, it is imperative not to lose sight of the specificity with which Congress has detailed the required action.  As evidenced by the 1962 legislative history of section 355(c)(1) outlined above, Congress intended to give sponsors a statutory mechanism to force an accounting in the event of a failure or inability to approve an NDA.  The very standard for NDA approvals underscores this intent, because the plain language of section 355(c)(1) requires the Secretary "either" to (A) approve the application "if he then finds that none of the grounds for denying approval specified in subsection (d) applies," or to (B) "give the applicant notice of an opportunity for a hearing before the Secretary under subsection (d) on the question whether such application is approvable."  21 U.S.C. § 355(c)(1).[10]

To be clear, the law does not require, as urged by Defendants, that FDA first <u>complete</u> its review before the 355(c)(1) deadline and the 355(d) hearing mechanism are effectuated.  <u>Cf.</u> Fed. Defs.' Brief at 11.  The Agency cannot be forced to approve an NDA; but, as <u>Schweiker</u> reflects, FDA most certainly can be forced, once a sponsor refuses to agree to any further extension of the 355(c)(1) deadline, to issue a notice of an opportunity for a hearing in the event of disapproval on the specific statutory grounds for approval that have or have not been satisfied.  <u>See</u> <u>IMS Limited v. Schweiker</u>, Food Drug Cosm. L. Rep. (CCH) ¶38, 104 (C.D. Cal. 1981).

In addition to failing to satisfy the 355(c)(1) deadline, Defendants also have failed to satisfy the latest PDUFA performance goals added by Title V of the Public Health Security and Bioterrorism Preparedness and Response Act of 2002, P.L. 107-188.  <u>See</u> Sandoz Brief

---

[10]     Even assuming *arguendo* there is any basis for the Defendants' assertions that there are legitimate outstanding issues that presently preclude approval of the Omnitrope NDA, there has been no reason put forth that Sandoz cannot be given a prompt opportunity for a 355(d) hearing on those issues.  The law is clear; if one or more of the listed grounds in 355(d) for refusing to approve an NDA are found by the Secretary after such a hearing, "he shall issue an order refusing to approve the application."  On the other hand, if the Secretary should find the applicable grounds for approval "do not apply, he shall issue an order approving the application."

at 6 & n7. Specifically, "Performance Goal XIV.A" requires FDA, in the event it cannot grant

approval, to issue a not-approvable letter "set[ting] forth in detail the specific deficiencies and,

where appropriate, the actions necessary to place the application in condition for approval."

This requirement was aimed at avoiding the very situation that is at the center of this case,

namely a sponsor having months and even years go by with no input from FDA about specific

alleged deficiencies and what can or should be done to rectify them.

Contrary to the Defendants' assertions, Fed. Defs.' Brief at 31, Citizen Petitions do not

trump the statutory deadline.[11] Similarly, Citizen Petitions – particularly those already

persuasively rejected by FDA such as the BIO petition the Defendants incorrectly assert is still

pending[12] – are not statutorily-cognizable grounds for failure to act on an NDA.[13] If any

legitimate scientific or technical issues pertinent to the NDA under review are identified in

Citizen Petitions or otherwise come to the attention of FDA, they can be listed by the Agency in

the 355(d) hearing notice provided to the sponsor in the event of disapproval; indeed, such issues

must be so itemized, assuming for sake of argument that they are statutorily-recognized grounds

---

[11]    Citing no statutory or regulatory provision supporting their position, the Defendants erroneously contend that FDA must "fully adjudicate the Pfizer Petition" in conjunction with "its consideration of the Omnitrope NDA". Id. (footnote omitted). Nothing in user fee statute or the FD&C Act allows FDA to inextricably link petition actions and NDA reviews in this manner, and, as demonstrated in the main text above, doing so at least in this case is contrary to the statute and has thwarted the intent of Congress relative to timely NDA approval or disapproval.

[12]    In their brief, one page after citing FDA's 35-page sweeping *rejection* of BIO's petition, Fed. Defs.' Brief at 4 n.2 & Ex. I, the Defendants incorrectly state that BIO's petition was pending at the time Pfizer filed its petition. Id. at 5 (citations omitted). In fact, on the very same grounds that Sandoz urged FDA to deny Pfizer's Omnitrope petition, FDA rejected BIO's petition seven months prior to Pfizer's filing of its Omnitrope petition (which replicates a Pfizer petition rejected along with the BIO petition).

[13]    Notably, other than Pfizer's Omnitrope-specific contentions, which Sandoz has disproved, see *infra* note 12 and accompanying text, the other Petitions and filings cited by the Defendants relate to 505(b)(2) generally *not* to Omnitrope. Moreover, despite those general objections to 505(b)(2), FDA has, as Sandoz demonstrated in its opening brief, approved multiple similarly-situated 505(b)(2) NDAs for even more complex biologic drugs. See Sandoz Brief at 35-37. Thus, Chief Judge Korman's concern in Tummino seems particularly apropos here: "Look, they could make up all sorts of discrete legal issues. There is a serious issue here as to whether they are acting in good faith." Tummino Tr. at 23, lines 2-3 (Pl.'s Ex. 1).

for not approving the NDA.[14]  Pending such compliance with the law, Sandoz plainly has

standing to challenge the constructive granting of an adversarial Citizen Petition such as Pfizer's

that causes Sandoz irreparable injury,[15] and, as Sandoz demonstrated in its opening brief, such a

challenge presents a valid claim against a final agency action and is ripe for review.  Cf. Fed.

Defs.' Brief at 27-30.

        The unjustified agency delay in this case is "an outright violation of 5 U.S.C. § 555(b)'s

mandate that agencies decide matters in a reasonable time . . . ."  Telecommunication Research

and Action Center ("TRAC") v. FCC, 750 F.2d 70, 79 (D.C. Cir. 1984).[16]  The D.C. Circuit has

recently held that although "[t]here is no per se rule as to how long is too long to wait for agency

action," "*a reasonable time for agency action is typically counted in weeks or months, not*

*years*."  In re American Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004)

(emphasis added) (internal quotation marks and citations omitted).  In American Rivers, the D.C.

Circuit highlighted delays comparable to that in the instant case that it previously had held to be

---

[14]      Moreover, in this instance, Sandoz has provided compelling grounds to the Agency for denying the
Pfizer CP at issue in this case.  AR at 001101-001475, Opposition of Sandoz to Pfizer's Citizen Petition (June
25, 2004) (*accompanying* Sandoz Brief at Ex. 1; Fed. Defs.' Ex. C).  Pending this Court's entry of the parties'
stipulated proposed Protective Order currently before the Court, see Joint Meet and Confer Agreement (Dec.
6, 2005), it is not appropriate for Sandoz' confidential and trade secret Omnitrope NDA submissions relevant
to this and other issues to be filed at this time.  Upon entry of the Protective Order, Sandoz would intend to file
relevant portions of the record as sealed exhibits in support of this Consolidated Opposition/Reply and its
underlying Summary Judgment Motion, and will seek leave as appropriate from this Court to do so.

[15]      The Defendants devote four (4) pages to the incredible suggestion that Sandoz is claiming "prudential
standing" and effectively asserting the rights of the entrenched incumbent Pfizer with whose product
(Genotropin) Sandoz is seeking to compete.  See Fed. Defs.' Brief at 25-28.  This argument, apparently lifted
virtually in toto from FDA's briefs in Tummino, has no place here and is simply wrong.  Sandoz is not
challenging the *delay* in the Defendants' response to Pfizer's petition, cf. id. at 27, Sandoz is challenging the
Defendants' *constructive granting* of that petition.  Cf. Compl. at ¶¶ 207-214.

[16]      American Rivers, 372 F.3d at 420; Cutler v. Hayes, 818 F.2d 879, 894-99 (D.C. Cir. 1987); TRAC,
750 F.2d at 76-77, 79; Public Citizen Health Research Group v. FDA, 740 F.2d 21, 32, 33 (D.C. Cir. 1984);
Public Citizen Health Research Group v. Auchter, 702 F.2d 1150, 1153-54 (D.C. Cir. 1983); see also Public
Citizen Health Research Group v. Chao, 314 F.3d 143 (3d Cir. 2002).

"unreasonable."[17]  Here, FDA has delayed acting on Sandoz' Omnitrope NDA for 1.5 years

*beyond a clearly-definable statutory deadline*.  In that respect, the delay here is far more

egregious than in <u>American Rivers</u>, where FERC was not statutorily-obligated to act but merely

subject to a general duty to respond to Citizen Petitions within a reasonable time.

      Each of the foregoing deficiencies would be rectified by the Court's entry of summary

judgment in Sandoz' favor and issuance of Sandoz' proposed Order.

## II.    DEFENDANTS' ADMITTED FAILURE TO TIMELY ACT WARRANTS JUDICIAL RELIEF DIRECTING FDA TO PROMPTLY COMPLY WITH 21 U.S.C. § 355(c)(1) BY EITHER APPROVING THE NDA OR PROVIDING NOTICE OF A HEARING ON THE GROUNDS FOR REFUSING APPROVAL

      In enacting the Administrative Procedure Act ("APA"), "Congress did not set agencies

free to disregard legislative direction in the statutory scheme that the agency administers."

<u>Heckler v. Chaney</u>, 470 U.S. 821, 833 (1985).  Nonetheless, the Defendants contend that FDA is

free to disregard its non-discretionary duty under the FD&C Act to act upon the Omnitrope NDA

in accordance with the mandatory statutory timetable.  Fed. Defs.' Brief at 11, 13.  FDA goes

further and asserts that its statutory duty is not judicially enforceable under section 706(1) and

therefore will *never* be reviewable so long as FDA does not take final agency action subject to

review under section 706(2).  <u>Id.</u> at 33.  As Judge Easterbrook has observed in this context, that

position is untenable:  "Only in the world of Kafka would a court dismiss a claim that an agency

has taken too long to reach a decision on the ground that the agency has yet to reach a decision –

and that the aggrieved party can't complain until it does (by which time, of course, the claim will

be moot)."  <u>Valona v. United States Parole Comm'n</u>, 165 F.3d 508, 510 (7th Cir. 1998).

---

[17]    <u>American Rivers</u>, 372 F.2d at 419 n.12 (<u>citing</u> <u>Airline Pilots Ass'n v. Civil Aeronautics Bd.</u>, 750 F.2d 81, 86 (D.C. Cir. 1984) (five-year delay unreasonable); <u>Auchter</u>, 702 F.2d 1157-1159 (three-year delay unreasonable); <u>MCI Telecomms. Corp. v. FCC</u>, 627 F.2d 322, 324-325, 338-342 (D.C. Cir. 1980) (four-year delay unreasonable)).

Indeed, the very argument FDA has advanced before this Court, Fed. Defs.' Brief at 33-

34, was rejected 25 years ago in <u>Schweiker</u>:

> 5 U. S. C. § 706(1) empowers this Court to "compel agency action
> unlawfully withheld or unreasonably delayed." The defendants have conceded
> that plaintiff's application was filed more than 180 days ago. Plaintiff,
> therefore, has the right to a prompt determination by the Secretary as to
> whether or not its NDA will be approved. However, this Court does not have
> the authority to order the Secretary to approve the plaintiff's application. A
> court may compel an agency official to exercise his discretion, but may not tell
> him how to exercise that discretion. See, e.g., *Silverthorne v. Laird, 460 F.
> 2d 1175, 1186-87 (5th Cir. 1972)*. . . . In this case, requiring the Secretary to
> render a formal opinion that the plaintiff's application is inadequate would
> arguably serve all of the purposes outlined above.

<u>Schweiker</u>, Food Drug Cosm. L. Rep. (CCH) ¶38, 104 (*granting* Plaintiff's motion for summary

judgment and "ordering that the Secretary of Health and Human Services shall, within twenty

(20) days of the date of this decision, determine whether plaintiff's NDA is approvable"). The

same government view denying the existence of any statutory, NDA-review deadline was

recently rejected by Chief Judge Korman in <u>Tummino</u>. <u>See</u> <u>Tummino</u> Tr. at 11, 23, 27, 29; <u>see</u>

<u>also</u> <u>Tummino</u> Order of Dec. 5, 2005 (preliminary ruling against FDA's 706(1) claims in

advance of December 22, 2005 hearing at which FDA's motion was denied) (Pl.'s Ex. 9).

As the court held in <u>Schweiker</u>, the APA's expansive provisions provide on their face a

remedy when FDA unlawfully withholds action needed to satisfy the Agency's mandate.[18] This

straightforward reading of section 706(1) is confirmed when the provision is placed in context

---

[18]     As detailed in Sandoz' opening brief, Sandoz Brief at 30-31, Section 706(1) provides, in simple and
unambiguous terms, that "[t]he reviewing court shall . . . compel agency action unlawfully withheld or
unreasonably delayed." 5 U.S.C. § 706(1). "Agency action," in turn, is broadly defined in expansive and
open-ended terms to encompass the full sweep of agency activity, including failures to act. <u>See</u> 5 U.S.C.
§ 551(13) ("'agency action' includes the whole or a part of an agency rule, order, license . . . or failure to
act"); <u>FTC v. Standard Oil Co.</u>, 449 U.S. 232, 238 n.7 (1980) (the APA's broad definition of the "term 'agency
action' . . . assure[s] the complete coverage of every form of agency power, proceeding, action, or inaction,"
and "includes the supporting procedures, findings, conclusions, or statements or reasons or basis for the action
or inaction") (quotation marks omitted).

and the APA is read as a whole.[19]  The APA's liberal review provisions extend equally to agency

*inaction* because Congress expressly defined "agency action" to include not only affirmative

actions, but also an agency's "failure to act."  See *supra* note 18.  Section 706(1) is integral to

the APA's approach of treating failures to act as a type of agency action because it allows

"properly interested parties to compel agencies to act where they improvidently refuse to act."

S. Rep. No. 79-752 at 214 (1945); H.R. Rep. No. 79-1980, at 278 (1946) (same).  The key

prerequisite, as the Tenth Circuit has reaffirmed, is the presence in a statute (the APA itself or

another law) of a "mandatory, nondiscretionary duty."  Forest Guardians v. Babbitt, 174 F.3d

1178, 1190-93 (10th Cir. 1999).  Thus, consistent with Sandoz' pleading in its Complaint and as

discussed at the outset of this Memorandum, section 706(1) complements section 706(2).

Together, these two sections provide remedies for the universe of reviewable agency action *and*

inaction.  As the Fourth Circuit explained decades ago:

> When a party suffers a legal wrong from continuing agency delay and, as here,
> there is no other adequate administrative or judicial remedy, *the delay is final*
> *agency action* for which [the APA] does provide an effective remedy.

Deering Milliken, Inc. v. Johnston, 295 F.2d 856, 861-66 (4th Cir. 1961) (emphasis added).

Accordingly, the D.C. Circuit similarly reaffirmed five years ago:

> [W]here an agency is under an unequivocal statutory duty to act, *failure so to act*
> *constitutes*, in effect, an affirmative act that triggers *final agency action* review.
> Were it otherwise, agencies could effectively prevent judicial review of their
> policy determinations by simply refusing to take final action.

---

[19]      The APA's "review provisions" are "generous," and their "purpose was to remove obstacles to
judicial review of agency action under subsequently enacted statutes."  Shaughnessy v. Pedreiro, 349 U.S. 48,
51 (1955); accord Bennett v. Spear, 520 U.S. 154, 163 (1997).  Thus, the Court has "construed [the APA] not
grudgingly but as serving a broadly remedial purpose."  Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,
397 U.S. 150, 156 (1970).  Similarly, the Court has repeatedly recognized the APA's "basic presumption"
favoring judicial review, requiring that it "not be cut off unless there is persuasive reason to believe that such
was the purpose of Congress."  Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967).

Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (emphasis added) (quotation marks and citations omitted).  See also Public Citizen Health Research Group v. FDA, 740 F.2d at 32 ("At some point administrative delay amounts to a refusal to act, with sufficient finality and ripeness to permit judicial review") (quotation marks omitted).

As the Supreme Court has noted, a statute stating that an agency "shall" do something within a set period of time is not discretionary and may be enforced under section 706(1). Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986).  See also, e.g., In re Ctr. for Auto Safety, 793 F.2d 1346, 1353 (D.C. Cir. 1986) (if statute "designates a specific deadline for agency," then "failure to meet the statutory requirement is 'not in accordance with law'"); Forest Guardians, 174 F.3d at 1190-93.  While in the routine drug review, which the instant case is decidedly not, "relief delayed is not . . . equivalent to relief denied," Envtl. Defense Fund, Inc. v. Hardin, 428 F.2d 1093, 1099 & n.29 (D.C. Cir. 1970), where delay results in "irreparable harm" that cannot – by definition – be remedied by later judicial review, then the agency's "inaction results in a final disposition of such rights as the petitioners and the public may have."  Id.  Under such circumstances, "administrative inaction has precisely the same impact on the rights of the parties as denial of relief," rendering it final under the APA.  Id.[20]

Thus, as the court judiciously observed in Schweiker, jurisdiction to enforce statutory mandates extends to more general mandates to act, regardless of whether they leave room for agency discretion concerning how to comply.  For example, in Cobell, the D.C. Circuit acknowledged that, even where an agency has significant discretion in carrying out certain fiduciary duties imposed by statute and common law, the agency's contention (comparable to the

---

[20]    Accord Cobell, 240 F.3d at 1097; Sierra Club v. Thomas, 828 F.2d 783, 795 (D.C. Cir. 1987); Envtl. Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 589-90 & n.8 (D.C. Cir. 1971).

Defendants' here) that this discretion barred judicial enforcement of those broad fiduciary mandates with an appropriate injunction was found to be inconsistent with the APA. 240 F.3d at 1096-1098, 1101-1103. Accordingly, the court held that the agency's violation, through inaction, of its mandatory duty could be reviewed and corrected under section 706(1), even though the law does not specify any particular steps to be taken. Id. at 1108-1109.

The Defendants attempt to overcome that conclusion here by placing undue and improper reliance on the case distinguished in Sandoz' opening brief, In re Barr Labs, 930 F.2d 72, 74-76 (D.C. Cir. 1991). While, as Sandoz has shown in its opening brief, the Barr Court's statutory analysis of FDA's transgression of its statutory mandate does apply here,[21] the Barr Court's conclusion with respect to the relief in that case simply does not control under the differing circumstances of the instant case.[22] In this respect, Barr is distinguishable in that it was decided before the very resource constraint cited by the Court was resolved one year later by Congress with the generous funding provisions of PDUFA. Comp. at ¶¶ 38-51.[23] No reordering of Agency priorities is necessary here; Sandoz simply seeks the benefit of its place in line – an up or down final action. Cf. Fed. Defs.' Brief at 19-21. Unlike in Barr, FDA has the PDUFA resources to act, including Sandoz' user fee for Omnitrope; the Defendants simply have not acted.

Therefore, because 21U.S.C. § 355(c)(1) imposes a nondiscretionary duty on the Defendants to act on NDAs such as the Omnitrope NDA submitted by Sandoz at issue here, the

---

[21]    See The Mashpee Wampanoang Tribal Council v Norton, 336 F.3d 1094 (D.C. Cir. 2003) (noting that the Barr court held that "FDA's sluggish pace violated a statutory deadline").

[22]    See Mashpee, 336 F.3d at 1101 (noting that the Barr court found that "the problem stemmed from a lack of resources; that, the court held, was 'a problem for the political branches to work out'").

[23]    The issue of Agency resources was the only TRAC factor that caused the Court to refrain from granting Barr the relief Sandoz seeks here. Undoubtedly, that is precisely why – along with a reluctance to suggest that PDUFA user fees may not be working or being utilized as intended by Congress – FDA has never cited resources or resource allocation as a defensible extant rationale justifying its failure to act here.

Court must enter summary judgment in Sandoz' favor because the Defendants have admitted that they have failed to take that action within the review period agreed to by Sandoz under section 355(c)(1) (which culminated in the case of Omnitrope on August 31, 2004). Now that FDA is over 536 days overdue (as of February 21, 2006), the need to call the Defendants to account has become ever more apparent.[24]

The Defendants clearly believe that there is no statutory requirement to act, ever, regardless of the statutorily-authorized request by a non-acquiescing NDA applicant for an up *or down* decision, until the Defendants' choose in their sole discretion to act. Even in the event the Defendants now should choose to act, or perhaps effectively confess judgment by agreeing to act within the 10 business day-period set forth in Sandoz' Proposed Order, this Court should expressly grant the relief sought by Sandoz by ordering the Defendants to act and either approve the application, or identify one or more of the seven statutorily-permissible grounds for denying approval as enumerated in 21 U.S.C. § 355(d).

## CONCLUSION

At its core, this case simply presents a fundamental question about an Agency's failure to act in compliance with statutory deadlines and adherence to Congressional intent. What is at stake goes well beyond section 355(b)(2) or competing versions of biologic drugs. If this Court were to adopt the Defendants' unsupported factual assertions (about whether review of the Omnitrope NDA is truly still ongoing) and/or the Defendants' legal rationale (that seeks to

---

[24]     See AR at 031416-031418, Sandoz Resubmission and Renewed Request for Approval of 505(b)(2) NDA (Dec. 1, 2004), NDA Submission Volume T46689 (Pl.'s Ex. 10); AR at 031429-031432, Sandoz Second Resubmission and Renewed Request for Approval of 505(b)(2) NDA (Mar. 22, 2005), NDA Submission Volume T43778 (Pl.'s Ex. 11).

evade an unambiguous statutory deadline), it would result in considerable detriment to the research-based biopharmaceutical industry, which would find itself virtually powerless to ever call the Agency to account when NDAs languish for unspecified reasons for months and even years beyond their statutorily-mandated review periods. Such a precedent would be particularly detrimental by making all NDA reviews (both in terms of deadlines and actions) inherently unpredictable, and potentially subject to interference by any third-party, especially by those filing a Citizen's Petition, rather than subjected (as Congress has mandated) to the statutory requirements governing FDA's approval and disapproval of applications.

Sandoz does not believe such outcomes are statutorily-justifiable, consistent with Congressional intent, or otherwise reasonable or appropriate. To the contrary, Sandoz believes this straightforward deadline/action case can and should be simply resolved in the same manner as Schweiker by finding that the compulsory statutory command, "shall", in section 355(c)(1) has meaning, and directing FDA within 10 business days to either approve the Omnitrope NDA, or provide notice of the ground(s) for refusing approval and promptly schedule a 355(d) hearing.

February 21, 2006                          Respectfully submitted,


                                        _____/s/_____
                                        JOHN M. ENGEL (DCBN 443628)
                                        Engel & Novitt, LLP
                                        Market Square
                                        Suite 620
                                        801 Pennsylvania Avenue, N.W.
                                        Washington, DC  20004
                                        Telephone: (202) 207-3303
                                        Fax: (202) 207-3318
                                        E-Mail: jengel@engelnovitt.com
                                        Attorneys for Plaintiff Sandoz Inc.