UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SANDOZ INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | Case No. 1:05CV01810 (RMU) |
| Health and Human Services, and | ) | |
| ANDREW C. VON ESCHENBACH, M.D., | ) | |
| Acting Commissioner, Food and Drug | ) | |
| Administration, | ) | |
| | ) | |
| Defendants. | ) | |

# *Plaintiff's Exhibit #6*

# *Accompanying*

### CONSOLIDATED OPPOSITION/REPLY PURSUANT TO JANUARY 31ST ORDER SANDOZ' CONSOLIDATED MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF SANDOZ' MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS IN ITS COMPLAINT

facilities, methods, or controls that are inadequate to assure that the drug meets the specifications of a quality product. Adulteration could also be found if such facilities, methods, or controls were not operated or administered in conformity with good manufacturing practice.

Since the competitive position of responsible manufacturers depends in large part on the confidence of the medical profession and the public, it will be in their own interest to maintain high standards of current good manufacturing practice which will provide a readily determinable basis for enforcement proceedings against any substandard operator. The Secretary could use his general rulemaking authority under section 701(a) of the act to announce what he, in the administration of the act, considers to be good manufacturing practice insofar as methods, facilities, controls, and their operation and administration are concerned. As in the case of other regulations, the courts in the final analysis will pass upon the scope and effect of such regulations.

NEW DRUG CLEARANCE PROCEDURES

Section 6, in the context of the August 20 amendments, changes the procedure on original clearance of new drug applications. Under the present law, such applications become effective, and the drug thus cleared for the market, unless the Food and Drug Administration acts to block the drug within a period of 60 days—extendable to 180 days—after the filing of the application. The bill would change this procedure so that no new drug application would be cleared until the Food and Drug Administration had issued an affirmative approval. Within the 180-day period after the filing of an application, it would have to be either approved or notice given for opportunity for a hearing. If the applicant within 30 days after such notice requests a hearing, the hearing must be commenced within 120 days after the notice and be conducted on an expedited basis.

These provisions give the Food and Drug Administration greater flexibility in the light of the volume of new drug applications, the more complex nature of new drugs, and the shortage of personnel for study and investigation. The 180-day maximum and the provision for expedited hearings will help to assure that no useful drug will be held off the market for an inordinate period because of bureaucratic inertia or inability to act. It is hoped that the Food and Drug Administration will, as it now does, advise the applicant as soon as practicable after the filing, of any deficiencies it observes in the completeness of the material presented. It is also hoped that in the administration of this new provision, there will continue to be close cooperation and liaison between the Food and Drug Administration and the new drug applicants so that the flow to the market of safe and effective new drugs will not be excessively retarded.

Section 6 would also designate the U.S. court of appeals, instead of the district courts, as the forum for appeal from the Secretary's orders under the new drug procedures.

RECORDS AND REPORTS AS TO EXPERIENCE ON NEW DRUGS AND ANTIBIOTICS

Section 7, which was not affected by the August 20 amendments, authorizes the Secretary to issue regulations requiring manufacturers to maintain records and to make reports as to investigational and clinical experience with new drugs and antibiotics, as requested by the administration. It should be pointed out in this connection that, under the act as it now reads, new drugs and antibiotics cannot be marketed or moved in interstate commerce unless they have passed the applicable tests and been cleared. The statute directs the Secretary to establish regulations exempting such products from these prohibitions to the extent necessary for investigational use. In issuing such regulations, the Food and Drug Administration could, under existing law, impose conditions relating to records and reports. In fact, the Food and Drug Administration has recently issued new regulations bearing on this subject. However, in view of the President's recommendations of April 10, the committee felt it desirable to add language specifically referring to records and reports.

EFFECTIVENESS AND SAFETY OF NEW DRUGS

Section 8 of the bill, as it would read under the August 20 amendment, makes major changes—in addition to the procedural changes in section 6—in the new drug provisions of the act.

DEFINITION OF "NEW DRUG"

The term "new drug" is presently defined as one not generally recognized to be safe for the claimed uses or one, which while so recognized, has not been used for a material time or to a material extent for such uses. The bill would expand this definition so that the term "new drug" would also include not generally recognized to be effective for the claimed uses or one, which while so recognized, has not been used for a material time or to a material extent for such uses. Thus, every brandnew product, and every new claim for an existing product, would be subject to the tests and procedures established in section 505 of the act.

NEW GROUNDS FOR REJECTION OF NEW DRUG APPLICATION

Section 505(d) of the act sets forth certain grounds for refusing to approve new drug applications. Since 1938 the grounds have been expressed in terms of failure to pass safety tests, without reference to the effectiveness of the drug for the uses claimed. Under the bill, there would be added the test of effectiveness. The committee recognized that legitimate differences of opinion may exist among responsible clinicians with respect to the effectiveness of a particular new drug. Experience has shown that a majority of so-called experts has often been wrong in initially condemning a new drug, just as new inventions in other fields are usually regarded with skepticism and often with hostility. The new ground for rejection of a new drug application is therefore expressed in terms of "a lack of substantial evidence," evaluated on the basis of all the information before him, that the drug will have the effect claimed for it. The term "substantial evidence" is defined in terms of the kind and quality of the investigations that must support the claims.

The bill would also provide for rejection of a new drug application upon a finding that the proposed labeling is false or misleading.

NEW GROUNDS FOR WITHDRAWAL OF APPROVAL

Section 505(e) of the act sets forth the grounds for withdrawal of approval of a new drug application. Since 1938 the grounds have been expressed in terms of lack of safety of the drug, without reference to the effectiveness of the drug for the uses claimed. The bill would accomplish the following:

First. Clarify and expand the authority to withdraw approval on safety grounds so that the manufacturer would continue to have the burden of showing that the drug is safe, as he has on the original submission.

Second. Provide for withdrawal of approval if on the basis of new evidence, evaluated with the evidence at the time of approval, the Secretary finds that there is a lack of substantial evidence that the drug will have the effects claimed. This is a corollary of, and subject to the definition of "substantial evidence" in, the provisions for rejection of a new drug application on the original submission.

Third. Permit withdrawal of approval upon a finding that the manufacturer has failed to establish a system for maintaining required records, or repeatedly or deliberately failed to maintain such records or make required reports, or refused access to such records.

Fourth. Permit withdrawal of approval upon a finding that the methods, facilities, and controls are not adequate and were not made adequate within a reasonable time after notice of inadequacy.

Fifth. Permit withdrawal of approval upon a finding that the labeling is false or misleading and was not corrected within a reasonable time after notice.

Withdrawal of approval of any new drug application on the basis of the foregoing grounds would be preceded by a hearing and an order with findings on the basis of the record. In addition, however, the bill includes a provision for immediate suspension of approval upon a finding of "an imminent hazard to the public health"; in this case, the applicant would have to be given prompt notice and an opportunity for an expedited hearing. The committee believes that this authority, which could have grave effects upon a manufacturer and upon the confidence of the public in a drug which might later be found appropriate for continued availability to physicians, should only be exercised under the most extreme conditions and with the utmost care. For that reason, it is provided that it may be exercised only by the Secretary or the Acting Secretary. I feel that it would be desirable, wherever possible, for the Secretary, before taking action, not only to confer with the manufacturer, but also to consult a committee of experts appointed by the National Research Council. It should not be for-