UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SANDOZ INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | Case No. 1:05CV01810 (RMU) |
| Health and Human Services, and | ) | |
| ANDREW C. VON ESCHENBACH, M.D., | ) | |
| Acting Commissioner, Food and Drug | ) | |
| Administration, | ) | |
| | ) | |
| Defendants. | ) | |

# *Plaintiff's Exhibit #11*

# *Accompanying*

### CONSOLIDATED OPPOSITION/REPLY PURSUANT TO JANUARY 31ST ORDER SANDOZ' CONSOLIDATED MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF SANDOZ' MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS IN ITS COMPLAINT



Beth Brannan, Director
Regulatory Affairs

Sandoz Inc.
2555 W. Midway Blvd.
P.O. Box 446
Broomfield, CO 80038-0446

Tel: 303 438 4242
Fax: 303 466 6378
E-mail: beth.brannan@sandoz.com

ORIGINAL
NEW CORRESP

~~CONFIDENTIAL~~

RECEIVED
MAR 23 2005
FDR/CDER

**OVERNIGHT MAIL**

David Orloff, M.D., Division Director
Food and Drug Administration
Center for Drug Evaluation and Research
Division of Metabolism and Endocrine Drug Products, HFD-510
Document Control Room 14B-19
5600 Fishers Lane
Rockville, Maryland 20857

March 22, 2005

Re:  NDA 21-426          (IND No. 58,980)
     OMNITROPE™ (somatropin [rDNA origin] for injection) 1.5 mg and 5.8 mg
     Second Resubmission And Second Renewed Request For Approval Of
     505(b)(2) NDA

Dear Dr. Orloff:

On behalf of Sandoz Inc. in Princeton, NJ (successor to Biochemie U.S., Inc.), we are submitting new correspondence to NDA 21-426 for Omnitrope (somatropin [rDNA origin] for injection) 1.5 mg and 5.8 mg.

Reference is made to the Agency's letter dated August 31, 2004, regarding the new drug application ("NDA") submitted by Sandoz Inc. in Broomfield, CO, ("Sandoz"), Agent for Sandoz Inc. in Princeton, NJ, pursuant to Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FD&C Act") for Omnitrope™, recombinant human growth hormone. Reference also is made to the initial Resubmission and Renewed Request for Approval of 505(b)(2) NDA that Sandoz submitted to the Reviewing Division on December 1, 2004.

Over the past 3.5 months following Sandoz' submission of its initial Resubmission, there have been several developments that further demonstrate the approvability of this 505(b)(2) NDA and the absence of any cognizable justification for further deferring its approval. In light of those developments, Sandoz hereby submits this Second Resubmission and Renewed Request for Approval of 505(b)(2) NDA. Sandoz is taking this extraordinary step in a final effort to facilitate approval of this application so that the sponsor and the Agency can avoid any expenditure of resources addressing its approvability in a forum outside of the NDA review process.

Without repeating each of the historical points summarized in Sandoz December 1st Resubmission, a brief review of the relevant regulatory history combined with an update of developments over the past 3.5 months demonstrates the inappropriateness of any further delay in approval of this NDA.

031429

CONFIDENTIAL

NDA 21-426
Page 2

 **SANDOZ**

In the letter the Agency issued to Sandoz on August 31, 2004, the Reviewing Division did not cite any deficiencies that had been identified during review of this application. Instead, the Agency's August 31st letter stated that the Reviewing Division was "unable at this time to reach a decision on the approvability of the application because of unresolved scientific and legal issues that relate to [the] NDA." Significantly, none of the "issues" cited by the Agency involves any technical, scientific, or regulatory deficiency in the NDA itself, and none of the "issues" involve a statutorily recognized basis pursuant to which the Agency is authorized to withhold approval of an NDA. See 21 U.S.C. § 355(d).

Instead, the Agency cited five (5) "issues" involving general scientific and legal considerations relating to so-called follow-on protein products (FOPPs):

(i) the "legal and scientific challenges to the agency's ability to rely, even in part, on a prior finding of safety and effectiveness for one recombinant protein product in order to approve another such product" presented in various petitions filed by third parties;

(ii) the FDA public announcement on August 16th of its September 14-15, 2004, Public Workshop;

(iii) the "subjects expected to be addressed in that workshop and by comments submitted to the docket closing on November 12";

(iv) the Agency's intention "to co-sponsor a scientific workshop early in 2005 on these issues"; and

(v) the then-Paragraph III (now-Paragraph IV) Patent Certification on file in this NDA for a listed patent (U.S. Patent No. 5,633,352) for the RLD.

In Sandoz' December 1st initial Resubmission, Sandoz highlighted the developments with respect to each of these five "issues" that had occurred following the Agency's issuance of its August 31st letter. On those grounds, Sandoz expressed its belief at that time that each of these "issues" had been fully and adequately addressed in the manner anticipated in the Agency's August 31st letter.

Developments over the past 3.5 months following Sandoz' initial Resubmission have overwhelmingly reinforced this conclusion. Accordingly, there are no "issues" outstanding any longer that have any relationship to or impact on this NDA, and its approval should proceed forthwith. This unavoidable conclusion is supported by the following:

(i) Even though the Agency has continued to grant more than ample time and opportunity for the petitioners who have presented the challenges in the petitions cited in the Agency's August 31st letter to support their contentions in a meaningful way beyond the arguments and evidence available to the Agency at the time it issued its August 31st letter, the petitioners have failed to do so. Indeed, in the case of two of the petitions (by Genentech and Pfizer), no new issues relevant to NDA 21-426 have been presented that were not already addressed in this application prior to August 31st, and the Agency has issued "interim responses" to both petitioners effectively locking the Administrative Records in both proceedings. In the case of the BIO petition, the Agency had issued its Consolidated Response to that petition in October 2003, BIO's opportunity to file a Petition For Reconsideration lapsed, BIO did not sue the Agency, and no other person has presented any new information to that docket that is relevant to NDA 21-426. Although various third parties have attempted to supplement the

031430

**SANDOZ**

CONFIDENTIAL

NDA 21-426
Page 3

records for the cited petitions, the Administrative Records of those petitions were effectively closed long ago. In any case, no new information has been placed in those records that raises any new issue with respect to NDA 21-426 that has not already been resolved in this application. In sum, these petitions provide no basis for withholding approval of this NDA.

(ii) On September 14-15, 2004, the Agency held the cited Public Workshop, at which testimony was presented on behalf of the Novartis Group of companies (among other participants). None of the testimony presented by other parties at the Public Workshop included any new scientific data or related information that raises any new issue with respect to NDA 21-426 that has not already been resolved in this application. In sum, the Public Workshop provides no basis for withholding approval of this NDA.

(iii) The Agency opened a Scientific Considerations public docket (Docket No. 2004N-0355) following the September 14th-15th Public Workshop. Prior to the initial closure of that docket on November 12, 2004, a few submissions were made to the docket by a few interested parties, including a submission on behalf of the Novartis Group of companies. On February 16, 2005, FDA took the extraordinary step of re-opening that public docket (70 Fed. Reg. 7950).[1] None of the submissions to that public docket made prior to its initial closure on November 12, 2004, or prior to its closure again on March 16, 2005, include any new information that raises any new issue with respect to NDA 21-426 that has not already been resolved in this application. In sum, this public docket provides no basis for withholding approval of this NDA.

(iv) On February 14-16, 2005, the Agency held the cited Public Workshop, at which a presentation was made on behalf of the Novartis Group of companies (among other participants). Indeed, the Agency itself highlighted at this Public Workshop the Agency's past prior use of the 505(b)(2) pathway to approve follow-on protein products. In particular, in a detailed presentation reviewing the history of such approvals, the Agency correctly identified glucagon and hyaluronidase as having been submitted and approved pursuant to Section 505(b)(2) NDAs that are indistinguishable from this NDA 21-426. Glucagen® (glucagon, recombinant) was submitted by Novo Nordisk under NDA 20-918, and was approved by the Agency on June 22, 1998. Similarly, two hyaluronidase protein drugs were recently approved pursuant to Section 505(b)(2) NDAs: Vitrase® was submitted by Ista Pharms under NDA 21-640, and was approved on May 5, 2004; and Amphadase® was submitted by Amphastar Pharm under NDA 21-665, and was approved on October 26, 2004. It is noteworthy that FDA approved Amphadase under Section 505(b)(2) *one month after* the Reviewing Division issued its August 31st letter to Sandoz in connection with NDA 21-426. These very recent Agency actions themselves have reconfirmed the validity and viability of the Section 505(b)(2) pathway for follow-on protein products (FOPPs), as highlighted in a podium presentation in a public session by a senior Agency official. See http://www.fda.gov/cder/meeting/followOn/kozlowski.ppt (presentation by Steven Kozlowski, M.D., Acting Director, Division of Monoclonal Antibodies, Office of Biotechnology Products, CDER). As demonstrated by this and other presentations by Agency officials, the Agency publicly moved considerably closer to full public support of the science underlying FOPPs during this Workshop.

---

[1] In referencing FDA's extraordinary decision to reopen this docket ninety (90) days after it was properly closed by the Agency, Sandoz is not waiving its objections to the Agency's action, which provided third parties an additional unwarranted opportunity to seek to further delay in the approval of this NDA.

031431



Other than the information from the Agency further supporting approval of the Omnitrope NDA, none of the testimony presented by third parties at the Public Workshop included any new scientific data or other information that raises any new issue with respect to NDA 21-426 that has not already been resolved in this application. In sum, this Public Workshop also provides no basis for withholding approval of this NDA.

(v) On November 29, 2004, Sandoz submitted a Paragraph IV Patent Certification to this NDA asserting that U.S. Patent No. 5,633,352 ("the '352 patent") is invalid and unenforceable, and will not be infringed by the Sandoz product.[2] Sandoz also notified the patent owner and RLD NDA holder of its Paragraph IV Patent Certification on November 29, 2004. The statutory 45-day period following the patent owner's and NDA holder's receipt of those notifications ran and expired on January 16, 2005, without the filing of any lawsuit by the patent owner or RLD NDA holder against Sandoz, thus statutorily making this NDA eligible for immediate approval. Sandoz submitted to the Reviewing Division on February 10, 2005, a certification that no legal action had been filed in response to its Paragraph IV Patent Certification. Accordingly, the potential expiration of the '352 patent in 2015 is no longer the date on which approval is sought. Instead, immediate final approval is sought pursuant to the Paragraph IV Patent Certification provisions of 21 U.S.C. § 355(b)(2) et seq. (as amended).

Based upon the foregoing, the Agency's August 31st letter, and Sandoz' initial Resubmission, it is apparent that this application must be approved (and may be approved without submission of any additional substantive data) in order to ensure that the Agency complies with the relevant statutory requirements. 21 U.S.C. § 355(d).

We look forward to working with the Division to facilitate a prompt positive final action in this regard on this application and approval of NDA 21-426 on an expedited basis. In the meantime, please contact the undersigned if there are any questions regarding this submission.

Sincerely,

*Beth Brannan*

Beth Brannan
Director
Drug Regulatory Affairs

---

[2] Immediately prior to the Agency's issuance of its August 31st letter, the listed '352 patent for the RLD cited in the Agency's August 31st letter was declared invalid and unenforceable in two decisions dated August 3, 2004, by the U.S. District for the District of Delaware. See Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp., Civ. No. 02-332-SLR, 2004 U.S. Dist. LEXIS 14960, and Bio-Technology General Corp. v. Novo-Nordisk A/S, Civ. No. 02-235-SLR, 2004 U.S. Dist. LEXIS 14959. Those decisions currently are being appealed to the U.S. Court of Appeals for the Federal Circuit.

031432