## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SANDOZ INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:05CV01810 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | |
| Health and Human Services, and | ) | |
| ANDREW C. VON ESCHENBACH, M.D., | ) | |
| Acting Commissioner, Food and Drug | ) | |
| Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

Of Counsel:

EUGENE M. THIROLF
Director
Office of Consumer Litigation

PAULA M. STANNARD
Acting General Counsel

SHELDON T. BRADSHAW
Associate General Counsel
Food and Drug Division

DOUGLAS W. STEARN (DCBN 440735)
Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Telephone: (202) 307-0061
E-mail: douglas.stearn@usdoj.gov

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

SHOSHANA HUTCHINSON
Assistant Chief Counsel for Enforcement
U.S. Dept. of Health & Human Services
Office of General Counsel
5600 Fishers Lane, GCF-1
Rockville, Maryland 20857

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    This Case is Controlled by *TRAC* and *Barr Laboratories*, and These
        Precedents Require the Entry of Summary Judgment for Defendants . . . . . . . . 2

        A.    Sandoz's Unreasonable Delay Claim Must be Judged by the Factors
             Set Forth in *TRAC* and by their Application in *Barr Laboratories* . . . . 2

        B.    FDA's "Performance Goals" are not Deadlines Creating Causes of
             Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.    Sandoz Mischaracterizes Defendants' Arguments and the Law in this
             Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    The Existing Administrative Record Governs this Case and Requires the Entry
        of Summary Judgment for Defendants Under the Law of this Circuit . . . . . . . 10

        A.    The Record Shows that FDA's Decision-Making Properly Involves the
             Evaluation of Information Challenging the Safety and Efficacy of
             Omnitrope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    The Record Demonstrates that FDA's Review of the Omnitrope NDA
             is Ongoing and Involves Complex Scientific Issues . . . . . . . . . . . . . . 11

    III.    Sandoz's Claims Regarding the Pfizer Petition Lack Merit . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Bioscience, Inc. v. Thompson*, 141 F. Supp. 2d 88 (D.D.C. 2001),
    *vacated on other grounds*, 269 F.3d 1077 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 8

*In re American Rivers and Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) . . . . . . . . . . 3

*Am. Tobacco Co. v. Patterson*, 456 U.S. 63 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Barr Labs.*, 930 F.2d 72 (D.C. Cir. 1991)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Cutler v. Hayes*, 818 F.2d 879 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Envtl. Def. Fund v. Reilly*, 909 F.2d 1497 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Griffin v. Oceanic Contractors*, 458 U.S. 564 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*IMS Ltd. v. Schweiker*, Food Drug Cosm. L. Rep. (CCH) ¶ 38, 104 (C.D. Cal. 1981) . . . . . . . 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mobil Oil Exploration & Producing Southeast Inc. v. United Distribution Cos.*,
    498 U.S. 211 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nat'l Ass'n of Home Builders v. U.S. Army Corp. of Engineers*, 417 F.3d 1272
    (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Telecommunications Research & Action Center v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984) * . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*Tummino v. FDA*, No. 05-CV-366 (E.D.N.Y. filed Jan. 21, 2005) . . . . . . . . . . . . . . . . . . . 6, 7

*Vermont Yankee Nuclear Power v. NRDC*, 435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . 11

*Warth v. Seldin,* 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43 (D.C. Cir. 1999) . . . . . . . . . . . 13

## FEDERAL STATUTES

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 13

5 U.S.C. § 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9, 13

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

21 U.S.C. § 355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 10

21 U.S.C. § 355(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

21 U.S.C. § 355(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4

21 U.S.C. § 355(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

21 U.S.C. § 355(c)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

21 U.S.C. § 355(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

21 U.S.C. § 355(d)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

21 U.S.C. § 355(d)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

## FEDERAL REGULATIONS

21 C.F.R. § 314.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

## LEGISLATIVE MATERIALS

138 Cong. Rec. S17236 (Oct. 7, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

148 Cong. Rec. H2847 (May 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Food and Drug Administration Modernization Act of 1997, Pub. L. No. 105-115, Title I,
        1997 U.S.C.C.A.N. (111 Stat.) 2296 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

H.R. Rep. No. 102-895 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

Prescription Drug User Fee Act of 1992, Pub. L. No. 102-571, Title I, 1992 U.S.C.C.A.N.
        (106 Stat.) 4491 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-6

**SECONDARY MATERIALS**

Alden F. Abbott, *The Case Against Federal Statutory and Judicial Deadlines:*
    *A cost-benefit appraisal*, 39 Admin. L. Rev. 171 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 6

Alden F. Abbott, *Case Studies on the Costs of Federal Statutory and Judicial Deadlines*,
    39 Admin. L. Rev. 467 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**INTRODUCTION**

In this action, Sandoz Inc. ("Sandoz") seeks a declaratory judgment and an injunction related to its pending New Drug Application ("NDA") for the approval of Omnitrope, a recombinant human growth hormone.  Defendants file this reply to Sandoz's Consolidated Opposition/Reply supporting its Motion for Summary Judgment and opposing Defendants' Cross-Motion for Summary Judgment ("Sandoz Opp.").  In its papers, Sandoz seeks to have the Court rule in its favor by adopting a legal standard that is different from controlling law, and factual conclusions that contradict or lack support in the Administrative Record.  This Court should therefore reject the factual and legal bases on which Sandoz relies on for its motion for summary judgment.

Sandoz fails to address the controlling law in this Circuit for evaluating cases alleging unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  As explained in Defendants' Cross-Motion for Summary Judgment ("Cross-MSJ"), the six factors a court must weigh in reviewing unreasonable delay claims show that the facts of this case do not warrant equitable relief as a matter of law.  The circumstances necessary to justify judicial relief are absent here; the United States Food and Drug Administration ("FDA") has not unreasonably delayed acting on either the Omnitrope NDA or Pfizer Inc.'s Citizen Petition requesting that FDA reject the Omnitrope NDA (Docket No. 2004P-CP1) ("Pfizer Petition").

In addition to asking the Court to adopt a test for equitable relief that is at odds with controlling law, Sandoz seeks to have this Court make factual findings without any basis.  As set forth in Defendants' previous filing and the Administrative Record, FDA informed Sandoz that the agency had not resolved the question of the safety and efficacy of Omnitrope, which involves complex factual and legal issues, and that resolution of these issues requires consideration of

scientific and regulatory issues that are the subject of an active and vigorous debate in separate, but related, proceedings before the agency. The letter setting forth this information and the materials demonstrating the nature and extent of the scientific and regulatory considerations are part of the Administrative Record. Sandoz essentially asks this Court to declare FDA's evaluation of the information and analysis submitted to the agency as part of the public process to be a sham, and to find the safety and efficacy of Omnitrope to be self-evident. There is no basis for such factual findings in the Administrative Record or otherwise before this Court. The facts Sandoz wants this Court to adopt in order to rule in its favor are pulled out of thin air, and it would be error to adopt them.

## ARGUMENT

**I.    This Case is Controlled by *TRAC* and *Barr Laboratories*, and These Precedents Require the Entry of Summary Judgment for Defendants**

**A.    Sandoz's Unreasonable Delay Claim Must be Judged by the Factors Set Forth in *TRAC* and by their Application in *Barr Laboratories***

In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), the D.C. Circuit identified six factors for a court to consider when evaluating a claim of unreasonable agency delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 80 (internal citations omitted).  A few years later, the D.C. Circuit applied the *TRAC* factors in a case involving allegations of unreasonable delay in FDA's drug review process.  *See In re Barr Labs.*, 930 F.2d 72 (D.C. Cir. 1991).  There, the court held that although FDA's action on plaintiff's applications had exceeded the 180-day time frame established in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 355(c), the agency's review period did not constitute unreasonable delay justifying equitable relief under the APA.  *In re Barr Labs.* at 74-76.  The D.C. Circuit found that an order compelling action on a particular application necessarily reorders agency priorities and disadvantages other applicants.  *Id.* at 74-75.  Because of the respect for the autonomy and comparative institutional advantage of the executive branch, judicial relief is not justified unless the delays are the result of bad faith or are otherwise egregious.  *Id.* at 75-76.  (*See also* Defs. Cross-MSJ at 9-25 (discussing *Barr Laboratories* and application of the *TRAC* factors to the instant case).)

Instead of addressing the *TRAC* factors and *Barr Laboratories*, Sandoz adopts a tunnel-vision position and maintains that Defendants' "failure to act in contravention of that clear statutory directive [21 U.S.C. § 355(c)] alone justifies the entry of summary judgment in [Sandoz's] favor."  (Sandoz Opp. at 1.)  Without any authority to support this contention, Sandoz merely repeats this mantra throughout its brief, *see id.* at 3-4, 11, 15-16, completely ignoring controlling precedent in the D.C. Circuit.  *See, e.g., Nat'l Ass'n of Home Builders v. U.S. Army Corp. of Engineers*, 417 F.3d 1272, 1280 (D.C. Cir. 2005) (courts apply the six-factor *TRAC* standard to determine whether an agency has unreasonably delayed taking action in violation of the APA); *In re American Rivers and Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (no *per se* rule on the length of time that constitutes unreasonable delay).  The law in this Circuit

- 3 -

is clear: any time frame for acting that Congress may provide in an agency's enabling statute is only *one* of the factors to be considered in an unreasonable delay case. *See TRAC*, 750 F.2d at 80. Sandoz's assertion that FDA's inability to comply with a purported "statutory deadline" is – by itself – determinative is groundless.

### B.    FDA's "Performance Goals" are not Deadlines Creating Causes of Action

Sandoz devotes much of its opposition brief to arguing that the 180-day time frame in 21 U.S.C. § 355(c) was created to "assure FDA could not indefinitely delay action" on drug applications, and that the Prescription Drug User Fee Act of 1992 ("PDUFA"), Pub. L. No. 102-571, Title I, 1992 U.S.C.C.A.N. (106 Stat.) 4491 (1992), was enacted "as a means of speeding up the drug review process." (Sandoz Opp. at 4, 6; *see also id.* at 3-9.)[1] It is incorrect, however, for Sandoz to state that nothing in PDUFA's legislative history "suggest[s] any intent to undermine, lengthen or otherwise eclipse the 355(c)(1) deadline for [FDA's drug] review process." (*See id.* at 6, n.8.) In fact, the legislative history cited by Sandoz explains that a Congressionally-sanctioned "goal" sought by PDUFA was "to cut review times *down to 6 months* for applications for most breakthrough drugs, and *12 months* for most standard applications." 138 Cong. Rec. S17236 (Oct. 7, 1992) (emphasis added).

---

[1]    Virtually all of the authority Sandoz relies on to support its notion that section 355(c) operates as a mechanism to allow sponsors "to call the Agency to account when no action [on their drug application] is forthcoming," (Sandoz Opp. at 7), including legislative history, legal text, and caselaw (*IMS Ltd. v. Schweiker*, Food Drug Cosm. L. Rep. (CCH) ¶ 38, 104 (C.D. Cal. 1981)), pre-dates PDUFA (*see* Sandoz Opp. at 4-6 and 8). Sandoz's reliance is therefore misplaced. Furthermore, Sandoz's interpretation of the district court decision in *Schweiker* cannot be relied upon to the extent it differs from controlling authority in this Circuit.

As explained previously (*see* Defs. Cross-MSJ at 11-13), the legislative history of PDUFA shows that part of the impetus for the legislation was FDA's historic inability to comply with the time frames contained in 21 U.S.C. § 355.  *See* H.R. Rep. No. 102-895 at 8 (1992) ("For almost two decades, there has been an intense debate in this country about whether [FDA] takes too long to approve new drugs. . . . The FDA has made some progress in reducing drug approval times, but today the FDA still takes an average of 20 months . . . .").  Congress recognized that a six-month review period for all applications was unrealistic, given the limitations on the agency's resources and the breadth of the agency's mandate, and intended through PDUFA to provide FDA with additional resources which it could allocate to speeding up the review process for drug applications.  *See* Pub. L. No. 102-571, Title I,  1992 U.S.C.C.A.N. (106 Stat.) 4491 § 102(2) ("the public health will be served by making additional funds available for the purpose of augmenting the resources of the [FDA] that are devoted to the process for review of human drug applications"); H.R. Rep. No. 102-895 at 8-9 (1992) ("The public interest is served by more rapid approval of safe and effective drugs.  Therefore, the FDA should have more resources to apply to the new drug approval process.  In recent years, that has not been a viable option due to pressures that make it impossible as a practical matter to give significant budgetary increases to regulatory agencies and most other governmental programs.").

Congress explicitly provided, in PDUFA and in each of its reauthorizing statutes, that FDA's drug review process would be governed by performance goals set by FDA in consultation with its stakeholders, which anticipated more liberal time frames for the agency to complete its

review of drug applications.[2]  Although Congress did not expressly repeal section 355(c) when it

enacted PDUFA, in both the text and the legislative history of PDUFA and its reauthorization

acts, Congress has repeatedly demonstrated its intention that the performance goals incorporated

into the statute govern the timing of FDA's review of drug applications.  *See, e.g.,* PDUFA

Amendments of 2002, Pub. L. No. 107-188, Title V, § 502(4), 116 Stat. 594, 688 (2002); 148

Cong. Rec. H2847 (May 22, 2002); Food and Drug Administration Modernization Act of 1997,

Pub. L. No. 105-115, § 101(4), Title I, 1997 U.S.C.C.A.N. (111 Stat.) 2296 (1997); H.R. REP.

NO. 102-895 at 8-9 (1992); PDUFA, Pub. L. No. 102-571, § 102(3).  Indeed, Sandoz's reliance

on FDA's purported violations of those performance goals undermines its argument that the 180-

day deadline in section 355(c)(1) should control.  (*See* Sandoz Opp. at 8-9.)  Importantly, Sandoz

does not dispute that Congress explicitly recognized that the PDUFA performance goals would

not and could not be met in every case – especially for NDAs raising novel, complex issues, as

in the Omnitrope NDA.  (*See* Defs. Cross-MSJ at 13.)

Sandoz's citation to *Tummino v. FDA*, No. 05-CV-366 (E.D.N.Y. filed Jan. 21, 2005), as

establishing "precedent" for this case, and for the idea that "Defendants' ongoing failure to act

---

[2]        PDUFA uses a number of reforms to improve agency performance, rather than
reliance on a set deadline.  These reforms include involving the agency's participation in setting
priorities, obtaining additional resources, requiring reports for use in active oversight by
Congress, and recognizing that some tasks require additional time due to complexity or other
complicating factors.  The changes made by PDUFA stem from analyses showing that reliance
on deadlines are an ineffective and sometimes counterproductive way to improve the quality and
speed of agency decisions.  *Compare* Alden F. Abbott, *The Case Against Federal Statutory and
Judicial Deadlines: A cost-benefit appraisal*, 39 Admin. L. Rev. 171 (1987) (advocating such
reforms based on Senate findings and other materials), *with* PDUFA, Pub. L. No. 102-571, Title
I, 106 Stat. 4491 (1992) (incorporating such reforms into law).  *Cf.* Alden F. Abbott, *Case
Studies on the Costs of Federal Statutory and Judicial Deadlines*, 39 Admin. L. Rev. 467 (1987)
(noting criticism of the use of deadlines on agency action in complex matters by the
Administrative Conference of the United States).

warrants judicial intervention," is misplaced. (Sandoz Opp. at 1.) *Tummino* involves a request for switching a drug product's status from prescription-only to over-the-counter, and is currently being litigated in the District Court for the Eastern District of New York. Sandoz relies on scattered pages of a transcript from a hearing in *Tummino* (attached to Sandoz's Opposition as Plaintiff's Exhibit 1), none of which contain a ruling by the court, as well as a December 5, 2005 Order (attached to Sandoz's Opposition as Exhibit 9) that required FDA to file a supplemental brief on the issue of implied repeal, but did not decide whether the PDUFA performance goals effectively supercede the 180-day time frame. In fact, the government moved in September 2005 for judgment on the pleadings, and voluminous briefing on many issues followed. The district court held a hearing on that motion on December 22, 2005. At the conclusion of that hearing, the judge indicated that, with the possible exception of one part of the case, he was denying the government's motion and would allow the case to proceed to cross-motions for summary judgment. *Tummino*, No. 05-CV-366, Transcript of Dec. 22, 2005 (D.I. 89) at 99 (explaining that the purpose of the proceeding was to determine "whether I [Judge Korman] throw them [the plaintiffs] out of court," and that "I think there's a sufficient basis, so that they can avoid dismissal of the complaint."). The full text of the judge's ruling in the docket is as follows:

> The record should reflect the fact that I have reserved decision on the issue whether the District Court or the Court of Appeals is the appropriate forum for the cause of action based on the denial of the Citizen Petition (assuming it was denied). I will review the relevant caselaw and then decide this matter. Plaintiffs shall notify me whether they would oppose a transfer of this cause of action to the Court of Appeals. Defendant's motion for judgment on the pleadings is otherwise denied.

*Tummino*, No. 05-CV-366 (E.D.N.Y. Dec. 22, 2005).

Accordingly, Sandoz is attempting to rely on a preliminary ruling by a district court in another Circuit simply denying a motion for judgment on the pleadings, without issuing an opinion. There is nothing precedential about the rulings in *Tummino* to date. *See, e.g., Am. Bioscience, Inc. v. Thompson*, 141 F. Supp. 2d 88, 93 n.4 (D.D.C. 2001) (disregarding one party's citation of selective quotations from oral argument as "unpersuasive and inappropriate" because "[t]he statements of individual judges . . . are not binding authority"), *vacated on other grounds*, 269 F.3d 1077 (D.C. Cir. 2001).

Sandoz claims that "the law does not require . . . that FDA first *complete* its review before the [21 U.S.C. §] 355(c)(1) deadline and the [21 U.S.C. §] 355(d) hearing mechanism are effectuated." Sandoz Opp. at 8 (emphasis in original). Here too, Sandoz is wrong. The FDCA requires FDA to provide a sponsor with an opportunity for a hearing on whether its application is approvable before FDA can refuse to approve an application. 21 U.S.C. §§ 355(c)(1)(B), (d). Under Sandoz's view of section 355, FDA would have to provide sponsors with an opportunity for a hearing, and presumably hold a hearing when requested, *before* the agency had even decided whether or not to approve the NDA. Congress certainly did not intend such a perverse reading of the FDCA, which would turn the current drug review system on its head. *See, e.g., Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided"); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid . . . unreasonable results whenever possible."); *Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1505-06 (D.C. Cir. 1990) ("Statutory construction leading to an absurd result is to be avoided.").

### C.    Sandoz Mischaracterizes Defendants' Arguments and the Law in this Circuit

Sandoz misrepresents Defendants' position on the availability of relief for unreasonable delay under the APA, which is based firmly on the law in this Circuit.  Sandoz's unsupported claims that Defendants' position means that review "under 5 U.S.C. § 706(1) is somehow unavailable" and that there is no requirement for FDA to act "ever" (Sandoz Opp. at 3-4, 11-12, 16) constitute a blatant mischaracterization.  To the contrary, most of Defendants' initial brief contained arguments explaining why Sandoz's unreasonable delay contentions do not satisfy the criteria to support a 706(1) claim.  (*See* Defs. Cross-MSJ at 8-25, 30-32).  At no point did Defendants argue that there is no opportunity for judicial review of alleged delay in the drug approval process under 5 U.S.C. § 706(1).[3]  This Court may review Sandoz's claim of unreasonable delay pursuant to 5 U.S.C. § 706(1); however, Sandoz must do more than merely point to a statute to prevail.

As detailed previously, this case must be evaluated in accordance with the established case law governing claims of unreasonable delay under the APA, which makes clear that an agency's failure to meet a statutory time frame is only one consideration of many.  (*See* Defs. Cross-MSJ at 8-25.)  All of the factors to be considered by this Court demonstrate that FDA has

---

[3]    Defendants did argue that Sandoz failed to state a cognizable claim under 5 U.S.C. § 706(2) because that provision applies only to final agency action, as defined in 5 U.S.C. § 704, and it is undisputed that FDA has not yet taken final action on either the Omnitrope NDA or the Pfizer Petition.  (*See* Defs. Cross-MSJ at 33-34.)  However, Sandoz is mistaken when it asserts that Defendants misstate the claims in Sandoz's complaint.  (*See* Sandoz Opp. at 4).  Despite stating that it "pled 706(1) [5 U.S.C. § 706(1)] claims" in its complaint, *id.*, Sandoz in fact refers to 5 U.S.C. § 706(2), and not section 706(1), in counts one, two, and four of its complaint and specifically asks the Court to "set aside" agency action in those counts.  (*See* Complaint, Docket Item ("D.I.") 1, ¶¶ 183, 189, 206.)  Sandoz now essentially concedes that all of its claims amount to claims of unreasonable delay.

not unreasonably delayed acting on the Omnitrope NDA, particularly in light of the complex legal and scientific issues raised in the NDA itself, as well in related citizen petitions and public comments.  (*See id.*)  Accordingly, Defendants are entitled to summary judgment.

## II.    The Existing Administrative Record Governs this Case and Requires the Entry of Summary Judgment for Defendants Under the Law of this Circuit

### A.    The Record Shows that FDA's Decision-Making Properly Involves the Evaluation of Information Challenging the Safety and Efficacy of Omnitrope

The FDCA, 21 U.S.C. § 355, requires FDA to determine whether a new drug product is safe and effective for each of its intended uses before approving an application to market the product to the public.  While the FDCA and FDA's regulations detail the voluminous scientific information that a sponsor must submit in support of a drug application, *see, e.g.*, 21 U.S.C. § 355(b), 21 C.F.R. § 314.50, FDA's review of a drug application is not necessarily limited to the sponsor's submissions.  The FDCA explicitly provides that FDA may consider "any other information before [it] with respect to such drug" in evaluating the safety and efficacy of the drug.  21 U.S.C. §§ 355(d)(4), (5).  Thus, if relevant questions or concerns are raised in some other arena, in comments to a public docket or in a citizen petition for example, addressing those issues is properly part of FDA's decision-making on that NDA.  This is precisely the situation in the instant case, where both citizen petitions and public comments were submitted to FDA relating to the complex legal and scientific issues raised by the Omnitrope NDA, as explained to Sandoz in FDA's August 31, 2004 letter.[4]  (Defs. Cross-MSJ, Ex. A, AR 00001-000004.)

---

[4]    Sandoz asserts that "Defendants incorrectly state that BIO's petition was pending at the time Pfizer filed its petition."  (Sandoz Opp. at 9, n.12.)  Sandoz is wrong again.  FDA's consolidated citizen petition response, issued on October 14, 2003, explicitly states that it is only a partial response to BIO's petition.  (*See* October 14, 2003 FDA Consolidated Response to Citizen Petitions submitted by Pfizer, Biotechnology Industry Organization, and TorPharm

When Sandoz asserts that citizen petitions are not valid grounds for "failure to act on an NDA" (Sandoz Opp. at 9), it mischaracterizes FDA's position. It is FDA's position that a thorough consideration of all the relevant data and information, submitted to the agency in conjunction with the Omnitrope NDA or otherwise, is important to ensure a decision on the Omnitrope NDA that comports with the public health. Moreover, FDA has limited resources, and may allocate those resources as it determines is appropriate to resolve related issues. *See Mobil Oil Exploration & Producing Southeast Inc. v. United Distribution Cos.*, 498 U.S. 211, 230 (1991) ("An agency enjoys broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures and priorities.") (internal citations omitted); *see also Vermont Yankee Nuclear Power v. NRDC*, 435 U.S. 519, 543 (1978); *Cutler v. Hayes*, 818 F.2d 879, 896 (D.C. Cir. 1987).

**B.    The Record Demonstrates that FDA's Review of the Omnitrope NDA is Ongoing and Involves Complex Scientific Issues**

As set forth in the Administrative Record, FDA's review of the Omnitrope NDA is ongoing, and there is no basis for Sandoz's contention that FDA has resolved all questions relating to the Omnitrope NDA. Ignoring FDA's explanation in its August 31, 2004 letter to Sandoz as to why the agency had not yet reached a decision on the Omnitrope NDA, Sandoz contends that Defendants' statement that the Omnitrope NDA is "under active review" is an "unsupported . . . factual assertion." (Sandoz Opp. at 1 and 16.) Sandoz argues that there is

---

(Docket Nos. 2001P-0323/CP1 & CP5, 2002P-0447/CP1, and 2003P-0408/CP1) (AR 002757-002794) ("This response addresses the legal and regulatory issues; the unique scientific issues associated with biologically derived products present a separate set of challenges that will be addressed in a response to be issued later.").) The remaining scientific issues in the BIO petition remain pending before the agency today and are relevant to the evaluation of the Omnitrope NDA.

- 11 -

nothing in the administrative record to show that FDA's review of the Omnitrope NDA is on-going.  (*Id.* at 2.)  In fact, FDA's August 31, 2004 letter is the very first entry in the administrative record (*see* Defs. Cross-MSJ, Ex. A, AR 00001-000004), and the letter clearly informs Sandoz that FDA would be evaluating data in the citizen petitions and public comments submitted to the agency following scientific workshops, and would notify Sandoz once a decision has been made on the Omnitrope NDA.  (*See id.* at 2 ("If, during the course of the intervening consideration of the scientific and regulatory issues, the agency concludes that the Omnitrope application may be approved without submission of additional substantive data, we will notify you of that conclusion.").).)[5]

Sandoz also states that Defendants' "delay and failure to act do not involve scientific, technical, or other statutorily-pertinent matters, and there is no evidence implicating any question as to whether the Omnitrope NDA is approvable or not, as evidenced by the Defendants' own Record."  (Sandoz Opp. at 2.)  The record, however, states the contrary:

> [O]ur regulatory decision on the application will clearly involve . . . scientific issues within the scope of the issues raised in the pending citizen petitions and under consideration in the public process.  Because of the nature and complexity of those issues, and the fact that resolution of the issues might affect the quantity and quality of data that might be required for approval of 505(b)(2) applications for human growth hormone, FDA is deferring a decision [on the Omnitrope NDA.]

(Defs. Cross-MSJ, Ex. A, AR 000002.)  The substantive and complex nature of that debate is

---

[5]     As described in FDA's August 2004 letter, the reviewing division had completed its review of the information in the NDA.  (Defs. Cross-MSJ, Ex. A, AR 00001) ("We have completed our review of this application as submitted with draft labeling.")  However, for the reasons set forth here and in Defendants' previous filing, Defendants do not agree that the application was thus ready for an approval action, which requires FDA to make an affirmative determination regarding safety and efficacy.

shown by even a cursory review of the citizen petitions and related materials in the

Administrative Record. (*See id.* at Exs. B-H, AR 000005-002542.) FDA's analysis of these

very issues is continuing today.

### III.    Sandoz's Claims Regarding the Pfizer Petition Lack Merit

As explained previously, Sandoz's claims concerning the Pfizer Petition lack merit. (*See*

Defs. Cross-MSJ at 25-33.) Sandoz argues that it "is not challenging the *delay* in the

Defendants' response to Pfizer's petition, Sandoz is challenging the Defendants' *constructive*

*granting* of that petition." (Sandoz Opp. at 10, n.15 (emphasis in original).) Once again,

however, Sandoz fails to cite any authority for its proposition that a citizen petition may be

deemed to have been granted by the mere passage of time, without the agency in fact rendering a

decision. This proposition is both illogical and unpersuasive. There has been no final agency

action, as defined by the APA, 5 U.S.C. § 704, regarding the Pfizer Petition that is ripe for

judicial review, and the only potential avenue for review concerning the Pfizer Petition is

pursuant to the unreasonable delay provision of 5 U.S.C. § 706(1).

Moreover, Sandoz lacks standing to challenge FDA's response, or lack thereof, to the

Pfizer Petition under 5 U.S.C. § 706(1). (*See* Defs. Cross-MSJ at 26-27.) Sandoz fails to

address how it can establish standing concerning the Pfizer Petition and merely brushes the issue

aside, stating only, without any support, that "Sandoz plainly has standing." (Sandoz Opp. at

10.) Sandoz in fact lacks standing because it cannot rest its claims on the rights and interests of a

third-party, Pfizer. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *Warth v.*

*Seldin,* 422 U.S. 490, 499 (1975); *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43,

48 (D.C. Cir. 1999). Sandoz's claims concerning the Pfizer Petition should thus be rejected by

this Court.

Assuming *arguendo* that Sandoz could establish standing to litigate its Pfizer Petition claims, Sandoz has not shown that FDA has unreasonably delayed acting on the Pfizer Petition. (*See* Defs. Cross-MSJ at 30-33.)  No statute or regulation provides a specific deadline requiring FDA to issue a final response to a citizen petition within a specific time frame.  And as Defendants previously explained, "because the Pfizer Petition raises many of the same legal, factual, scientific, and regulatory issues as the Omnitrope NDA, FDA cannot fully adjudicate the Pfizer Petition independently from its consideration of the Omnitrope NDA."  (*Id.* at 31.)  Under these circumstances, the time FDA has taken to consider the Pfizer Petition cannot be shown to violate the rule of reason, and Sandoz has not offered any facts or persuasive arguments to the contrary.

## CONCLUSION

FDA has not unreasonably delayed making a final decision on either the Omnitrope NDA or the Pfizer Petition, and there are insufficient grounds for injunctive or declaratory relief as a

matter of law.  Therefore, Defendants respectfully request that the Court deny Sandoz's motion

for summary judgment and enter summary judgment in favor of Defendants.

Of Counsel:                                 Respectfully submitted,

PAULA M. STANNARD                           PETER D. KEISLER
Acting General Counsel                      Assistant Attorney General

SHELDON T. BRADSHAW                         EUGENE M. THIROLF
Associate General Counsel                   Director
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation            _____/s/_____
                                            DOUGLAS W. STEARN (DCBN 440735)
SHOSHANA HUTCHINSON                         Trial Attorney
Assistant Chief Counsel for Enforcement     Office of Consumer Litigation
U.S. Dept. of Health & Human Services       U.S. Department of Justice
Office of the General Counsel               P.O. Box 386
5600 Fishers Lane                           Washington, D.C. 20044
Rockville, MD  20857                        Telephone: (202) 307-0061
(301) 827-8579                              Facsimile:  (202) 514-8742
                                            E-mail: douglas.stearn@usdoj.gov
February 27, 2006

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Defendants' Reply Memorandum of Points

and Authorities in Support of Defendants' Cross Motion for Summary Judgment and in

Opposition to Plaintiff's Motion for Summary Judgment to be served by electronic mail and via

the District Court's Electronic Filing System (ECF) upon:

John M. Engel
Engell & Novitt, LLP
Market Square
Suite 620
801 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 207-3303 (telephone)
(202) 207-3318 (facsimile)
E-mail: jengel@engelnovitt.com
*Counsel for Sandoz, Inc.*

this 27th day of February, 2006.


_____/s/_____
Douglas W. Stearn