**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SANDOZ INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | Case No. 1:05CV01810 (RMU) |
| Health and Human Services, and | ) | |
| ANDREW C. VON ESCHENBACH, M.D., | ) | |
| Acting Commissioner, Food and Drug | ) | |
| Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD AND FOR PRESERVATION OF ALL GOVERNMENT RECORDS ON OMNITROPE AND MEMORANDUM IN SUPPORT THEREOF

Pursuant to LCvR 7, this Court's Standing Order (D.I. No. 18, Jan. 13, 2006), and the

Court's leave following the parties' March 1, 2006, teleconference with Chambers, Sandoz Inc.

("Sandoz") respectfully moves this Court for supplementation of the Administrative Record that

has been produced in this case, and, if appropriate based upon the supplemented record,

discovery in accordance with Federal Rules of Civil Procedure ("FRCP") Rule 26.  Sandoz also

seeks concurrent entry of an appropriate spoliation and documentation preservation Order

directing the Federal Defendants to immediately secure and preserve *all* government records

within their agencies relating to Omnitrope, given the inadequate assurance in this regard.

As set forth in the parties' Joint Meet And Confer Agreement (D.I. No. 9, Dec. 6, 2005)

("Joint Agreement"), and as the parties addressed in their March 1 teleconference with

Chambers, Sandoz and the Federal Defendants have significant, irreconcilable differences over

the proper scope of the Administrative Record in this case.  Although the Federal Defendants

have produced what the Food and Drug Administration ("FDA") has deemed the "existing

Administrative Record," the record FDA has proffered omits all probative facts relevant to

prosecution of Sandoz' unreasonable-delay and failure-to-act claims and this Court's resolution

of them.  To date, FDA has not produced anything Sandoz did not already have.  FDA has only

produced documents formally submitted to the Omnitrope application by Sandoz itself and to

various public FDA dockets.  These documents are not pertinent to Sandoz' claims.

Accordingly, judicial intervention has become necessary and appropriate in these proceedings,

and Sandoz has no option but to file this Motion.

In accordance with LCvR 7(m), counsel for Sandoz has conferred at length with counsel

for the Federal Defendants, who oppose this Motion.  A proposed Order accompanies this

Motion.

## I.  BACKGROUND

At the core of Sandoz' Complaint is its claim that the Federal Defendants went outside

the statutory drug approval process and have improperly precluded FDA's expert scientific and

medical reviewers from taking the statutorily-compelled action to either approve or disapprove

Sandoz' New Drug Application ("NDA") for Omnitrope.  The requisite final action on the NDA

has been unreasonably delayed as a result of the Federal Defendants' failure to act for almost two

years despite a plain-language statutory mandate (21 U.S.C. §355(c)(1)).

This is decidedly *not* a run-of-the-mill Administrative Procedure Act ("APA") case.

Typically, APA cases in this and other Circuits involve review of a concrete agency action and

not, as here, a perpetual state of limbo resulting from an agency's unreasonable delay and failure

to act in the face of a statutory deadline.  Sandoz' Complaint, which alleges everything that

Sandoz knows or reasonably could have known in the absence of the complete Administrative Record, reflects just how unusual and extra-ordinary the NDA review process has been in going outside the normal scientific review channels in the case of Omnitrope.

The Federal Defendants insist on restricting the Administrative Record to what Sandoz knew from its own corporate files or could have known from the public record when it filed its Complaint on September 13, 2005. The Federal Defendants have refused production to date of the most relevant and probative information,[1] which would shed light upon the reasons for their failure and/or refusal to act timely on the Omnitrope NDA, and whether that refusal is as a result of bad faith on the part of Defendants. Yet, the refusal to produce these relevant Administrative Record materials in this case – the prior existence of which the Federal Defendants have not disputed – stands in stark contrast to FDA's production of these very categories of internal FDA documents in <u>Tummino v. FDA</u>, 05-cv-366 (EDNY 2005),[2] a similarly pled failure to act and unreasonable delay case. Notably, however, the <u>Tummino</u> plaintiffs are individuals and a third-party citizen's organization. The sponsor of the NDA at issue in <u>Tummino</u> is a non-party to those proceedings. It seems puzzling that the Federal Defendants have agreed to produce to

---

[1]  Recognizing that, at its core, this case involves departures from the standard NDA review process, the following categories of agency records encompassed within the scope of the instant motion are the types of materials that can be generated within FDA during an NDA review: all inter-agency communications, such as internal FDA reviews and memoranda, internal FDA meeting minutes, internal FDA teleconference minutes, internal FDA e-mail, internal FDA briefing documents, and external communications with the NDA sponsor (here, Sandoz) and with third parties (including competitors and other parts of the government). The types of internal FDA documents produced during a standard NDA review generally can be viewed online for FDA-approved products. <u>See</u> generally http://www.accessdata.fda.gov/scripts/cder/drugsatfda/.

[2]  Sandoz previously has provided this Court with a representative sample of just such NDA review Administrative Record materials produced in <u>Tummino</u>.. <u>See</u> Sandoz' Unopposed Status Conf. Mot. (D.I. 15, Jan. 3, 2006) at 4-5 & Ex. 2. Given the availability from the E.D.N.Y. electronic docket of the complete set of materials filed to date in <u>Tummino</u>, Sandoz is not resubmitting them with this Memorandum. To the extent this Court's consideration of the instant Motion would be facilitated by their availability in this Court's docket, Sandoz is prepared to file them as directed by the Court.

third-party plaintiffs in their lawsuit a more comprehensive Administrative Record of an NDA than FDA has turned over to Sandoz, the party-Plaintiff and holder of the NDA at issue in this matter.

The purpose for supplementation here is straightforward. Sandoz seeks to understand whether or not FDA has in fact engaged in legitimate efforts to resolve any of the allegedly outstanding, but as-yet unidentified, scientific or technical issues with respect to its NDA during the past almost-two years during which the Federal Defendants still have not taken the statutorily-required action under 21 U.S.C. §355(c)(1), or whether the delay is premised instead upon the bad faith of the Defendants.[3] Cf. Tummino, Dec. & Order (D.I. 104, Feb. 24, 2006) ("Certainly, a plausible interpretation of the e-mail correspondence by the author of the not-approvable letter just before and after he issued the letter in May 2004 is that senior management of the FDA had long since decided not to approve the application but needed to find acceptable rationales for the decision"). Supplementation of the Administrative Record, and, if appropriate, discovery, will provide Sandoz and the Court with much-needed evidence of the reasons for FDA's delay.[4] Supplementation also is in accord with controlling case law, as addressed below.

---

[3]    "Despite the general 'record rule,' an extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." Tummino, Decision & Order Denying Def.'s Mot. for a Prot. Order and Requiring Discovery (D.I. No. 104, Feb. 24, 2006) at 28 (quoting Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997)). (A copy of the afore-referenced Tummino Decision and Order accompanies Sandoz' concurrent brief on that case). "The agency must justify its delay to the court's satisfaction. If the court determines that the agency delays in bad faith, it should conclude that the delay is unreasonable." Cutler v. Hayes, 818 F.2d 879, 898 (D.C. Cir. 1987) quoted in Tummino, Dec. & Order at 30.

[4]    Supplementation encompasses at least the publicly-releasable FDA records (most of which are not yet public) on similarly-situated 505(b)(2) NDAs for biologic drugs, as reflected in attached FDA Review – of a 505(b)(2) NDA for a recombinant hyaluronidase product, approved in early-December 2005 – discussing Sandoz' Omnitrope NDA in the context of various other such applications. See http://www.fda.gov/cder/foi/nda/2005/021859_s000_Hylenex_AdminCorres.pdf (pages 27-29 of 134) (Pl.'s Ex. 1 hereto).

## II. ARGUMENT

A.     <u>Supplementation Of The Record Is Justified And Consistent With Controlling Case Law</u>

This litigation involves the rare circumstance in which FDA has failed to act upon an NDA after a sponsor has brought the review period to an end, in contravention of the statutorily-mandated deadline in 21 U.S.C. §355(c)(1).[5]  In this unusual circumstance where an agency is sued for a failure to take action, courts have consistently allowed for supplementation of the existing record.[6]  Thus, in 1989, the D.C. Circuit Court of Appeals enunciated eight separate circumstances where supplementation might be merited.  These eight circumstances, at least one of which pointedly applies in this case, are:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the

---

[5]     The Government has previously suggested to this Court and Plaintiff that producing all the requested documents would create a precedent that would place an undue burden upon FDA.  However, it is exceedingly rare for an NDA sponsor to bring the review period to a close before FDA has acted on its own volition, regardless of how protracted the review period may have become.  That is because in the vast majority of cases, both the sponsor and FDA are working in good faith to develop a record that will ultimately support a finding that the drug is safe and effective, if that should prove appropriate.  There is no incentive for a sponsor to prematurely end the review period when it is clear the record will not support approval, since, in such cases, FDA can be expected to readily justify its nonapproval in the event of judicial review.  Not surprisingly, therefore, Sandoz has only identified four (4) cases, including this one, since the modern drug review provisions were put in place by Congress in 1962, in which sponsors have declined to agree to a continuation of the statutory review period and sued the Agency after seeking an up-or-down FDA decision.  <u>See</u> <u>IMS Limited v. Schweiker</u>, Food Drug Cosm. L. Rep. (CCH) ¶38, 104 (C.D. Cal. 1981); <u>In re Barr Labs.</u>, 930 F.2d 72 (D.C. Cir. 1991); <u>Tummino v. von Eschenbach</u>, 05-CV-366 (ERK) (VVP) (E.D.N.Y. 2005).  Accordingly, the Government's fear of creating an undue burden in future such cases is unsupported because cases such as this one are decidedly the exception, *not* the norm.

[6]     <u>Cobell v. Babbitt</u>, 91 F.Supp.2d 1, 38 (D.D.C. 1999) ("Extrinsic evidence is appropriate for consideration when the processes utilized and factors considered by the decisionmaker require further explanation for effective review"), <u>aff'd</u>, 240 F.3d 1081 (D.C. Cir. 2001); <u>Cmty. for Creative Non-Violence v. Lujan</u>, 908 F.2d 992, 997 (D.C. Cir. 1990) (allowing supplementation because the challenged agency decision was the result of "relatively informal, less structured process" and therefore "precise boundaries or the applicable administrative record may be less clear").  Such supplementation includes any information that "shed[s] light on the factors and considerations relied upon by the agency."  <u>Esch v. Yeutter</u>, 876 F.2d 976, 991, 992 (D.C. Cir. 1989).

agency action shows whether the decision was correct or not; (6) *in cases where agencies are sued for a failure to take action*; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch, 876 F.2d at 991 (emphasis added) (citing Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L. Rev. 333, 345 (1984)). The Court went on to note: "The caselaw supports these applications. See, e.g., National Nutritional Foods Ass'n v. Weinberger, 512 F.2d 688, 701 (2d Cir. 1975), cert. denied, 423 U.S. 827 (1975); Independent Meat Packers Ass'n v. Butz, 526 F.2d 228, 239 (8th Cir. 1975), cert. denied, 424 U.S. 966 (1976); Friends of the Earth v. Hintz, 800 F.2d 822, 828-829 (9th Cir. 1986); American Mining Congress v. Thomas, 772 F.2d 617, 626-627 (10th Cir. 1985), cert. denied, 476 U.S. 1158 (1986)." Esch, 876 F.2d at 991 n.166. Similarly, the Ninth Circuit has held that supplementation is appropriate in an action to "compel agency action unlawfully withheld or unreasonably delayed." Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000).

The Federal Defendants must not be allowed to downplay the critical importance of the D.C. Circuit's ruling in Esch. Sandoz recognizes the following footnote in a post-Esch ruling of this Court: "In *dicta*, our court of appeals has suggested that there may be as many as eight exceptions to the general rule limiting judicial review to the administrative record." Fund for Animals v. Williams, 245 F. Supp. 2d 49, 58 n.8 (D.D.C. 2003) (RMU) (citing Esch). Subsequently, however, this Court has applied Esch and ordered supplementation. See Fund for Animals v. Williams, 391 F. Supp. 2d 191, 197-199 (D.D.C. 2005) (RMU). Additionally, another member of this District Court, in Amfac Resorts L.L.C. v. Dep't of Interior, 143 F. Supp. 2d 7, 11-12 (D.D.C. 2001), discouraged the proposition that "[f]our narrow exceptions to the rule prohibiting review of extra-record material [that] are recognized in this Circuit," and

immediately thereafter cautioned that "this is not to suggest, however, that only four exceptions exist. Indeed, in 1989, the Circuit Court noted [in Esch] with approval [of] eight separate circumstances where non-record review might be merited." 143 F. Supp. 2d at 12 n.5.[7]

In this respect, as reflected by Amfac and this Court's subsequent decision in Fund for Animals, the D.C. Circuit has spoken with clarity in affirming that there are at least these eight circumstances where supplementation of the record is appropriate. According to the plain terms of the Circuit Court's opinion, one of those circumstances unambiguously encompasses this precise case – one involving an agency that has failed to act. It is for this reason that review may not be limited to an overly-confined Administrative Record if "there is no final agency action to demarcate the limits of the record." San Francisco Baykeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002). The court in Baykeeper was very clear in a ruling directly on point, holding that the reason for this exception is that "when a court is asked to review agency inaction before the

---

[7]     This Court in Fund for Animals reasoned that a plaintiff who raises any of these exceptions needs to make a showing that either "the record is so bare that it prevents effective judicial review" or "bad faith" on the part of the Agency. See Fund for Animals, 391 F. Supp. 2d at 191 (citing Williams, 245 F. Supp. 2d at 57-58). "Bad faith," unlike bareness of the record, is a difficult showing to make in any circumstance. As was recognized in the parties' March 1st teleconference with Chambers, those challenges are even greater in a case such as this one in which defendants refuse to turn over relevant evidence that may be adverse to their position. In order to gain access to probative evidence relevant to a plaintiff's claims and adverse to the Defendants' position in a case such as this one, a plaintiff generally would seek to show "bad faith" but would not be able to without first having those adverse documents produced. That is why, to avoid the inherent unfairness of such a scenario, courts faced with failure to act and unreasonable delay claims have consistently compelled supplementation. See Baykeeper, 297 F.3d at 877.

        In the instant case, the Federal Defendants have asserted to this Court that FDA's review is currently ongoing, but nevertheless have failed to point to any evidence in the existing Administrative Record supporting that assertion. In fact, the existing "Record" is devoid of anything indicating that FDA has even considered the NDA after the statutory deadline tolled on August 31, 2004. If the record is simply too bare to judge whether the review is merely ongoing, as it is here, then how can any court adjudicate the reasonableness of FDA's failure to act or unreasonable delay? Because the record here does not even support the core factual underpinning of the defense, i.e. the alleged ongoing nature of the review, supplementation is required to provide Sandoz and this Court with a clear picture of the current status of this NDA and the reasons for Defendants' continued failure to act. Supplementation of the existing record also is required to avoid precisely the type of situation described above.

agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions." Id.  Accordingly, in such cases, supplementation of the Record is appropriate.

The Administrative Record on review of such a failure to act claim logically should not, and cannot, consist solely of agency-picked documents that do not touch upon the substance of an allegedly as-yet incomplete action, and the reasons for inaction.  Yet, that is precisely the Administrative Record compiled to date by FDA in this case.  That limited record is insufficient for explaining the reason behind FDA's "failure to act" on, and "unreasonable delay" of, the Omnitrope NDA.  Similarly, the Record sheds no light on the reality or substance of the unspecified "issues" supposedly outstanding.  Accordingly, the Record must be supplemented.[8]

B.    The Document Retention And Spoilage Assurances From FDA's Assistant Chief Counsel for Enforcement Are Inadequate And Warrant An Appropriate Order From This Court

Of particular concern in this case is that the issues of document retention and spoilage have not been fully addressed, despite an extensive discussion of the issue during the parties' March 1 teleconference with Chambers.  That discussion had been preceded by five separate written requests of Sandoz – including two in letters to counsel for the Defendants,[9] and three

---

[8]      This well-established legal principle is not affected by the recently-decided case of Novartis Pharms. Corp. v. Leavitt (App. No. 04-5414) (D.C. Cir., Jan. 27, 2006).  That case is inapposite, because it involved 706(2) claims in connection with review of a concrete, final agency action.  That case did not involve any unreasonable delay or failure to act claims.  Moreover, in Novartis, FDA provided the Plaintiff with the very categories of internal FDA documents Sandoz seeks here, and the Magistrate Judge also ordered limited supplementation of FDA's original record.  Among the issues on appeal was a request for further supplementation beyond that already ordered by the Magistrate.  The Court in Novartis found the second supplementation request unpersuasive given the volume of internal FDA records already produced.  That is not this case, where the government has failed to act, there has been no production of internal FDA records, and there has been no decision yet upon supplementation.  There simply are no legal parallels between these two cases.

[9]      Letter From John Engel To Douglas Stearn (Dec. 14, 2005); Letter From John Engel To Douglas Stearn (Dec. 16, 2005).

expressly set forth within written pleadings submitted to this Court[10] – that the Defendants

protect all government documents that could be considered part of the supplemented

Administrative Record and/or potentially subject to discovery in this case.  By letter dated

March 6, 2006,[11] FDA's Assistant Chief Counsel for Enforcement, who participated in the

parties' March 1 teleconference with Chambers, has provided a portion of the spoilage and

retention assurance sought by Sandoz.  Sandoz appreciates the Assistant Chief Counsel's effort

in this regard, but notes that, overall, it is general in nature and not specific to this case or

controversy.  Because of the posture of this case and its unreasonable delay and failure to act

claims, Sandoz believes the March 6 letter does not capture – as was contemplated on the

parties' March 1 teleconference with Chambers – a significant and potentially-decisive array of

relevant evidence in the Defendants' possession, custody, or control.

Sandoz has been concerned about spoilage since the parties began discussing the

Administrative Record in November 2005, because a reasonable reading of Sandoz' claims

raises the specter of potential bad faith.  As discussed on the parties' March 1 teleconference

with Chambers, Sandoz viewed with growing unease the Federal Defendants' failure to provide

any assurance about the preservation of government records some six months after the

Complaint was filed.  Sandoz recognizes that the Assistant Chief Counsel's March 6 letter is a

positive step.  However, Sandoz considers the letter inadequate, and urges the Court to conclude

likewise, because the letter does not cover categories of probative evidence (and pertinent offices

and departments) relevant to resolution of this case.  In this case, bad faith is a factor this Court

---

[10]     Sandoz' Unopposed Mot. For A Status Conf. (D.I. 15, Jan 3, 2006) at 3 n. 2; Sandoz Mot. to Compel (D.I. 10, Dec. 16, 2005) at 13; Sandoz Reply In Supp. Of Mot. To Compel (D.I. 16, Jan. 6, 2006) at 2, 9.

[11]     A hard copy only of the letter was received on March 7, 2006, by Sandoz' counsel by FedEx (whereas all prior letters were also sent electronically), and Sandoz is filing a copy herewith (Pl.'s Ex. 2).

must consider, and if bad faith has been employed in this case, it would be evidenced in a broader array of government records than those cited by the Assistant Chief Counsel's March 6 letter.

Among the categories of such probative evidence that are not covered by the letter and which Sandoz has reason to believe exists and thus reason to conclude that an appropriate spoliation and document preservation are still warranted are the following:

(i)     all intra-agency FDA communications regarding Sandoz' Omnitrope application and/or the Pfizer petition that occurred outside of the standard NDA review or petition processes, and that are thus not encompassed within the March 6 letter's definition of the "administrative file" on Omnitrope or the Pfizer petition;

(ii)    any communications of HHS, (none of which are covered by the Assistant Chief Counsel's March 6 letter), regarding Sandoz' Omnitrope application and/or the Pfizer petition that occurred outside of the standard NDA review or petition processes, and that are thus not encompassed within the "administrative file" on Omnitrope or the Pfizer petition;

(iii)   all inter-governmental communications with other Executive Branch Departments, Agencies, offices, and officials regarding Sandoz' Omnitrope application and/or the Pfizer petition that occurred outside of the standard NDA review or petition processes, and that are thus not encompassed within the "administrative file" on Omnitrope or the Pfizer petition;

(iv)    all communications with Sandoz' competitors and other non-governmental third parties about the Sandoz Omnitrope application that occurred outside of

the standard NDA review or petition processes, and thus are not encompassed within the "administrative file"; and

(v)     all other records of the Federal Defendants' agencies (FDA and HHS) outside of the "administrative file" relating to Sandoz' Omnitrope application or the Pfizer petition.

Finally, Sandoz notes two additional perplexing omissions in the Assistant Chief Counsel's March 6 letter.  First, the letter does not give comfort regarding the spoliation and/or preservation of the documents it does cover (much less as to all the other documents excluded from the assurance) between the filing of this case on September 13, 2005, and March 6, 2006. Second, it does not provide any assurance that records relating or referring to Omnitrope have not been destroyed.

In light of these continuing gaps in assuring the preservation of relevant and probative evidence, Sandoz requests this Court to enter an appropriate spoliation and document preservation order and to direct each of the Federal Defendants themselves (not their internal or external counsel) to provide an appropriate written assurance in this regard to this Court and to Sandoz.

C.      <u>Any Deliberative Process Privilege Claims Do Not Preclude Production Of The Complete Administrative Record Pursuant To A Protective Order Shielding The Record From Public Disclosure</u>

The Federal Defendants have previously objected to producing the complete Administrative Record citing a deliberative process privilege claim.  However, any such privilege does not apply to confidential production of the record in this case pursuant to the parties' stipulated proposed Protective Order (filed concurrently herewith).  The deliberative process privilege merely "shields from *public disclosure* confidential inter-agency memoranda

on matters of law or policy." National Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1116

(9th Cir. 1988) (emphasis added). This unique privilege is used to afford reasonable

*confidentiality* to the decisionmaking process within a government agency. See NLRB v. Sears,

Roebuck & Co., 421 U.S. 132, 150 (1975). It is *not* intended to be used as the Federal

Defendants try to leverage it here, i.e., to block judicial inquiry and *confidential* production of a

statutorily-mandated Administrative Record pursuant to a rigid Protective Order.

Furthermore, even if a document satisfies the criteria for protection under the deliberative

process privilege, nondisclosure is not automatic. The privilege "is a qualified one," FTC v.

Warner Communications Inc., 742 F.2d 1156, 1161 (9th Cir. 1984), and it "is not absolute."

First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994). Thus, in determining

whether to apply the privilege when asserted as to a particular document (as opposed to an entire,

as-yet undelineated Administrative Record), a court must weigh competing interests. See id.

In doing so, courts routinely rely on a discretionary balancing test. "In deciding how to exercise

its discretion, an inquiring court should consider, among other things, the interests of the

litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in

honest, effective government." See Warner Communications, 742 F.2d at 1162. Consequently,

"where the documents sought may shed light on alleged government malfeasance," the privilege

is routinely denied. See In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 582

(E.D.N.Y. 1979); Bank of Dearborn v. Saxon, 244 F. Supp. 394, 401-03 (E.D. Mich. 1965)

("the real public interest under such circumstances is not the agency's interest in its

administration but the citizen's interest in due process"), aff'd, 377 F.2d 496 (6th Cir. 1967).

Because the deliberative process privilege is a qualified one, a plaintiff like Sandoz challenging

agency inaction or action can obtain otherwise privileged documents "if his or her need for the

materials and the need for accurate fact-finding override the Government's interest in non-disclosure."  <u>Center for Biological Diversity v. Norton</u>, 2002 U.S. Dist. LEXIS 27617 at *3 (D. Ariz., July 23, 2002).[12]

Any application of the foregoing factors by this Court supports the conclusion that the need of Sandoz and this Court for the withheld records outweighs the Defendants' need to keep the deliberative information contained in the documents internal to the agency (as opposed to produced confidentially under a Protective Order).  First, these records could be relevant to providing the actual and complete explanation for why the Defendants have failed to act upon the Omnitrope NDA.  Second, nothing in what FDA considers the Administrative Record explains the government's reluctance to act upon Sandoz' NDA.  In sum, as detailed above, there has been no evidentiary showing to date that can adequately inform the Court as to what is unreasonably delaying the Federal Defendants' action in this circumstance.  Indeed, it may become apparent following production of the supplemented Administrative Record that there simply is no other evidence available except for the very documentation within FDA's control.

Finally, in considering the interests of the litigants, society's interest in the accuracy and integrity of judicial factfinding, and the public's interest in effective agency decisionmaking, this Court should find that these factors also unambiguously militate in favor of supplementation. The public and the pharmaceutical industry alike are benefited when FDA takes timely action on NDAs.  Inaction benefits no legitimate stakeholders:  not patients, who need effective medications; not payers, who benefit from competition in the medical marketplace; and not the

---

[12]    <u>See also</u> <u>In re Franklin Nat'l Bank</u>, 478 F. Supp. at 582 (The deliberative process privilege is "a discretionary one").  In deciding how to exercise its discretion, an inquiring court should consider, among other things, "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government."  The factors to be considered in making this determination include:  "1) the relevance of the evidence; 2) the availability of other evidence; 3) the Government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplative policies and decisions."  <u>Id.</u>

sponsor company, which cannot market its drug or know what additional evidence is needed in the event of a non-approval action.

Accordingly, this Court should reject the Federal Defendants' deliberative process privilege claims in toto or at least require the requisite heavy burden to be met for any particular, *specified*, individual document to be excluded as privileged.

D.     FRCP Rule 26 And The APA Compel Discovery If Appropriate After Supplementation

Additionally, discovery beyond the complete Administrative Record as supplemented is legally appropriate and could also be warranted in these unusual circumstances. The Federal Rules of Civil Procedure specifically apply to all civil cases in United States district courts, excluding only certain cases identified in Rule 81. *See* Fed.R.Civ.P. 81(a). Accordingly, the Federal Rules of Civil Procedure – including Rule 26, which governs discovery in civil matters – applies to the instant APA case before this Court.

Within those Rules, broad discovery is permitted of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b). The rule is given a liberal construction. Schlagenhauf v. Holder, 379 U.S. 104, 114-115 (1964). It allows a court to limit discovery, but only in narrowly-prescribed circumstances.[13] None of the reasons to limit discovery delineated in the Rules is applicable here. As Magistrate Judge Pohorelsky's decision in Tummino noted, "discovery beyond the whole record is appropriate in this [unreasonable delay] case" because the record "must justify its delay to the court's satisfaction." Tummino, Decision & Order, D.I. No. 104 at 30. In Tummino, where the government has produced the same type of supplemental documentation that Sandoz is seeking here, the court still found that

---

[13]     If the discovery is "unreasonably cumulative or duplicative" or "obtainable from some other source that is more convenient, less burdensome, or less expensive," if "the party seeking discovery has [already] had ample opportunity . . . to obtain the information sought," or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2).

discovery beyond what was already produced was required for it to understand the reasons

behind the Defendants' unreasonable delay in taking final action on the NDA at issue there.

Thus, even more so in this case, where FDA has limited the production of the record, discovery

could be appropriate to assist the Court in understanding the reasons behind FDA's delay.  As

the record is currently constructed, no such understanding can be ascertained.  Therefore,

following production of the supplemented Administrative Record, this Court should entertain

any reasonable discovery requests Sandoz propounds that are appropriate under these unique

circumstances.

## CONCLUSION

Sandoz requires supplementation of the Administrative Record and potentially discovery

to properly litigate the full breadth of its claims.  As set forth in this memorandum, Sandoz is

entitled to both as a matter of law.  Esch, 876 F.2d at 976; Baykeeper v. Whitman, 297 F.3d

at 886; Tummino, 05-cv-366 (EDNY 2005).  In addition, given the scope of predecisional

materials FDA already has produced in the Tummino case and that are equally salient and

probative here, it is clear that FDA has no essential underlying reservation about providing

putatively deliberative process materials in a litigation context pursuant to a Protective Order.

Yet, for unexplained reasons, FDA has chosen to treat these two similarly-situated cases

disparately.  In this case, based upon Sandoz' persuasive showing, the only appropriate decision

should be to compel supplementation of the record so that this Court can proceed on an

expedited basis to a full and fair hearing on the merits.

Accordingly, Sandoz respectfully requests that the Court grant its Motion To Compel,

direct the Federal Defendants to produce to Sandoz' counsel the supplemented record as directed

by this Court, pursuant to the proposed Protective Order in this case, and compel the Defendants

to preserve all government records relating to Omnitrope and file a report with respect thereto

expeditiously.

Date:   March 7, 2006                          Respectfully submitted,


                                                  /s/
                                         _____
                                         JOHN M. ENGEL (DCBN 443628)
                                         Engel & Novitt, LLP
                                         Market Square
                                         Suite 620
                                         801 Pennsylvania Avenue, N.W.
                                         Washington, DC  20004
                                         Telephone: (202) 207-3303
                                         Fax: (202) 207-3318
                                         E-Mail: jengel@engelnovitt.com
                                         Attorneys for Plaintiff Sandoz Inc.

16