IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SANDOZ INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05CV01810 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | |
| Health and Human Services, and | ) | |
| ANDREW C. VON ESCHENBACH, M.D., | ) | |
| Acting Commissioner, Food and Drug | ) | |
| Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD

### INTRODUCTION

In this action Sandoz Inc. ("Sandoz"), a subsidiary of Novartis AG, seeks a declaratory judgment and an injunction related to its pending New Drug Application ("NDA") for the approval of Omnitrope, a recombinant human growth hormone. The Food and Drug Administration ("FDA") has not taken action to approve or reject the application, and Sandoz has alleged that the agency's failure to act has violated its legal obligations under the Food, Drug and Cosmetic Act ("FDCA") and the Administrative Procedure Act ("APA"). The parties briefed the merits in their respective cross-motions for summary judgment, which briefing was completed on February 27, 2006.

Sandoz complains that the voluminous administrative record produced by defendants in this case, as the record exists to date,[1] does not contain any information relevant to any of

---

[1] Because there have been no final agency decisions on the matters at issue in this case, defendants will continue to add documents to the existing administrative record as appropriate

Sandoz's claims. Sandoz has thus moved to compel the production of what it contends should be included in the administrative record – every internal FDA and Department of Health and Human Services ("HHS") document related to its application, as well as every "non-proprietary" document in FDA's and HHS's possession that is related to allegedly similar drug applications. (*See* Motion to Compel ("Mot."), Docket Item ("D.I.") 33, at 3, n.1; Proposed Order at 1-2.) Sandoz's claim that the administrative record should be "supplemented" to include such material is an ill-disguised and unwarranted discovery request that flies in the face of applicable law governing review in APA cases and must be rejected.

Under FDA regulations, the "[a]dministrative record means the documents in the administrative file of a particular administrative action on which the Commissioner relies to support the action." 21 C.F.R. § 10.3.[2] The administrative record in this case thus consists of the materials parties submitted for the agency's consideration with respect to Sandoz's NDA, such as the petitions and comments submitted by Sandoz and Pfizer that argue for and against Omnitrope's approval, all of which defendants provided to Sandoz. Sandoz's claim that the record should include every internal document relating to the agency's deliberations on its pending NDA has no legal basis whatsoever and is completely unprecedented. In seeking to compel supplementation of the record with such materials, Sandoz purports to invoke a limited exception to the rule against supplementation in administrative record cases in the hope of

_____

when final decisions are made.

[2] By contrast, the "[a]dministrative file means the file or files containing all documents pertaining to a particular administrative action, including internal working memoranda, and recommendations." 21 C.F.R. § 10.3(a). Sandoz is seeking not only documents beyond the administrative record, but also documents that it claims are outside the definition of the administrative file.

obtaining evidence to demonstrate the very applicability of the exception in the first place, thus ignoring established law that requires Sandoz to *first* make a showing that the exception applies before supplementation is even a possibility. *See, e.g., Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005) ("Before invoking an exception, however, the plaintiff must demonstrate bad faith or improper behavior on the part of the agency. . . .").

Lacking the requisite evidence of bad faith necessary to probe beyond the administrative record produced by the agency, Sandoz seeks permission to mount a fishing expedition for evidence that would justify its right to seek such evidence in the first place. This is bootstrapping of the worst sort. Discovery or "supplementation" of any type beyond the administrative record in this case requires a showing that Sandoz – by its own admission – has not even attempted to make. (Mot. at 4, 7 n.7.) Accordingly, its motion must be denied.

## PROCEDURAL BACKGROUND

On September 13, 2005, Sandoz filed a Complaint for Declaratory and Injunctive Relief ("Complaint"), alleging that FDA's failure to issue a final decision on either the Omnitrope NDA or Pfizer's Citizen Petition requesting that FDA reject the Omnitrope NDA (Docket No. 2004P-CP1) ("Pfizer Petition") violated the FDCA and APA. (*See* Complaint, D.I. 1, ¶¶ 165-214.) In each cause of action, Sandoz alleged that FDA had a statutory duty to act no later than August 31, 2004. (*See id.*, ¶¶ 3, 90, 165, 184, 190, & 199.) Sandoz claimed that the agency's failure to act on its NDA by that date constituted a constructive granting of the Pfizer Petition and a constructive denial of the NDA (*see id.*, ¶¶ 9, 165, 184, 190, & 199) which, in the absence of valid statutory grounds for denial, warranted injunctive and declaratory relief. (*See id.*, ¶¶ 165-219.)

3

Defendants filed their Answer to Sandoz's Complaint on November 14, 2005. (*See* Answer, D.I. 8.) Defendants asserted that review of the Omnitrope NDA and related materials provided by Sandoz, Pfizer, and other parties is currently ongoing, and that the continuation of the review process does not warrant any form of relief. (*See id.*)

The parties agreed to a briefing schedule for cross motions for summary judgment, set forth in a Meet and Confer Agreement (*see* D.I. 9), which was completed as of February 27, 2006. The parties agreed that the case is exempt from initial disclosure and pretrial conference requirements, which do not apply in "an action for review on an administrative record." Fed. R. Civ. P. 26(a)(1)(E)(1) & (f). (*See* D.I.9, ¶ A(a)(2)(g).) Under the Local Rules, there is also no requirement to file a Meet and Confer Agreement in "an action for review on an administrative record." L. Cv .R. 16.3(b)(1). Sandoz, however, believed that filing such an agreement was warranted and that discovery was potentially available. (*See* D.I. 9 at B(b).)

As set forth in the Meet and Confer Agreement, the parties disagree about the content of the administrative record. (*See id.*) FDA has identified the content of the existing administrative record to include all of the submissions and materials the agency is considering to determine whether approval of the Omnitrope NDA is warranted, and the correspondence between the parties concerning the review of the submissions.[3] (*See* Index, Ex. 1.) Pursuant to the Joint Meet and Confer Agreement (D.I. 9) and Supplement (D.I. 11), defendants provided Sandoz with the

---

[3] Sandoz asserts that the documents in the existing administrative record "are not pertinent to Sandoz' claims" and that it needs supplementation to understand FDA's "efforts to resolve any of the allegedly outstanding, but as-yet unidentified, scientific or technical issues with respect to its [Omnitrope] NDA." Mot. at 2, 4. In fact, FDA's August 31, 2004, letter to Sandoz outlined the issues FDA must resolve before rendering a final decision on the Omnitrope NDA (*see* Defs. Cross-MSJ, Ex. A), and the documents in the administrative record are materials associated with those issues.

complete administrative record in this case, as it exists to date.

Sandoz filed its original Motion to Compel on December 16, 2005.  (*See* D.I. 10)  That motion purported to seek compelled production of "the full administrative record" that would include all of FDA's internal documents.  (*See id.*)  On February 21, 2006, this Court denied Sandoz's motion without prejudice in light of the Court's Standing Order.  (*See* D.I. 25)  On March 1, 2006, pursuant to the Standing Order, the parties conferred by telephone with Chambers regarding the parties' disagreement over the administrative record.  Following that teleconference, Sandoz was granted leave of court to re-file its motion to compel, and defendants agreed to provide Sandoz with assurance regarding the government's record retention policies.  This assurance was provided to Sandoz by letter dated March 6, 2006 (attached to Sandoz's Motion to Compel as Exhibit #2).

On March 7, 2006, Sandoz filed the instant motion to compel supplementation of the administrative record and for preservation of all government records related to Omnitrope.[4]  On the same day, Sandoz also filed a memorandum regarding a case currently pending in the Eastern District of New York, *Tummino v. FDA*, No. 05-CV-366 (E.D.N.Y. filed Jan. 21, 2005) (hereinafter "*Tummino* memo."),[5] in response to the Court's February 21 Order that Sandoz "brief the court as to [the] status of Tummino . . . and its applicability to this case or file [a]

_____

[4] Sandoz did not inform defendants that Sandoz deemed the March 6 letter inadequate or otherwise attempt to resolve the "spoliation" issue prior to filing the instant motion.

[5] *Tummino* involves a request for switching the status of Plan B, an emergency contraceptive drug, from prescription-only to over-the-counter.

motion to transfer, if appropriate." Sandoz has not filed a motion to transfer;[6] defendants will

therefore address Sandoz's points regarding *Tummino* and its purported applicability to the

instant case in this brief.

## ARGUMENT

I. **SANDOZ HAS FAILED TO SHOW THAT THE DOCUMENTS IT SEEKS CONSTITUTE PART OF THE ADMINISTRATIVE RECORD**

   A. **The Administrative Record Compiled by FDA Is Entitled to a Strong Presumption of Regularity**

It is well established that judicial review under the APA is ordinarily based on the

administrative record that the agency compiles and presents to the reviewing court. *See Florida*

*Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142

(1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971).[7] The record

consists of "the documents in the administrative file of a particular administrative action on

which the Commissioner [of Food and Drugs] relies to support the action." 21 C.F.R. § 10.3(a);

*see also, e.g., IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). Review is held on the

---

   [6] Despite its prior arguments that *Tummino* involves "comparable, overlapping claims" and that the reassignment of the instant case to different judges within this district might merit "a transfer of these proceedings to the Eastern District [of New York] rather than to this Court" (Unopposed Mot. for an Expedited Status Conference, D.I. 15 at 1, 5), and despite the Court's invitation to Sandoz to file a motion to transfer, Sandoz, to date, has not filed such a motion. In fact, notably absent from Sandoz's *Tummino* memorandum is any mention of a motion to transfer.

   [7] Sandoz contends that this case is not a "run-of-the-mill" APA case because APA cases typically "involve review of a concrete agency action." Mot. at 2. All cases brought pursuant to section 706(1) of the APA, 5 U.S.C. § 706(1), however, necessarily involve judicial review of something less than final agency action because the provision only applies to action "unlawfully withheld or unreasonably delayed." And as explained below, established law governing the administrative record in APA cases applies with equal force to cases brought under section 706(1) for agency delay as to cases challenging final agency action under section 706(2).

6

administrative record in actions to compel agency action wrongfully withheld or unreasonably

delayed, as well as actions challenging agency final decisions. *See Biodiversity Legal Found. v.*

*Norton*, 180 F. Supp. 2d 7, 10 (D.D.C. 2001); *see also San Francisco BayKeeper v. Whitman*,

297 F.3d 877, 886 (9th Cir. 2002); *Raymond Profitt Found. v. U.S. Army Corps of Eng'rs*, 128 F.

Supp. 2d 762, 768 n.8 (E.D. Pa. 2000); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F.

Supp. 563, 570 (N.D. Tex. 1997).

        An agency's designation of the record is entitled to a strong presumption of regularity.

*See San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1329 (D.C. Cir. 1984), *decision*

*aff'd on reh'g en banc*, 789 F.2d 26 (D.C. Cir. 1986); *Holy Land Found. v. Ashcroft,* 219 F.

Supp. 2d 57, 65 (D.D.C. 2002). "[T]he agency enjoys a presumption that it properly designated

the administrative record absent clear evidence to the contrary." *Fund for Animals v. Williams*,

245 F. Supp.2d 49, 55 (D.D.C. 2003) *aff'd in part, vacated in part on other grounds*, 428 F.3d

1059 (D.C. Cir. 2005); *see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council,*

*Inc.*, 467 U.S. 837, 844 (1984). This presumption exists because, as this Court has explained,

"[i]t is the agency that did the 'considering' and that therefore is in a position to indicate initially

which of the materials were 'before' it." *Fund for Animals*, 245 F. Supp. 2d at 57. Indeed, "[i]f

it were otherwise, non-agency parties would be free to define the administrative record based on

the materials they believe the agency must (or should) have considered, leaving the court the

unenviable task of sorting through a tangle of competing 'records' in an attempt to divine which

materials were considered." *Id.* As in other contexts where a presumption of regularity lies, such

as the operation of grand juries, an attempt to gain discovery into the confidential deliberative

process in order to attack the resulting decision must be based upon more than bare speculation.

7

*See, e.g.*, *United States v. Trie*, 23 F. Supp. 2d 55, 61 (D.D.C. 1998).

Sandoz contends that "courts have consistently allowed for supplementation of the existing record" in agency delay cases.   (Mot. at 5.)  None of the cases cited by Sandoz as support for this proposition, however, involved claims of unreasonable delay.  *See, e.g.*, *Cobell v. Babbitt*, 91 F. Supp. 2d 1 (D.D.C. 1999) (challenge to the government's management of the Individual Indian Money trust, where an accounting was sought); *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990) (challenge to the National Park Service's denial of plaintiff's request to include a sculpture in the 1988 Christmas Pageant of Peace); *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) (challenge to the Department of Agriculture's decision to suspend plaintiffs' participation in federal farm subsidy programs).   Contrary to Sandoz's assertion (*see* Mot. at 5, n.6 (attributing quotations to the court that are not in the opinion)), the court in *Cmty. for Creative Non-Violence* did *not* order supplementation of the administrative record.  908 F.2d at 997-98.   That court also denied plaintiff's request to depose a government official, and emphasized how rare discovery is in APA cases.  *See id.* at 998.

Moreover, in several of the cases relied upon by Sandoz, it was the *agency* that sought to supplement the record on appeal with documents that did not exist when the case was before the district court.  *See, e.g., San Francisco Baykeeper*, 297 F.3d at 886 (finding that the administrative record is not closed on any date certain in agency failure-to-act cases); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560-61 (9th Cir. 2000) (in agency delay cases, "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record").   Sandoz's assertion that these cases support its demand that this Court order FDA to produce documents is thus groundless.

8

*Compare San Francisco Baykeeper*, 297 F.3d at 886; *Friends of the Clearwater*, 222 F.3d at 561,

*with* Mot. at 7 n.7 (courts have "consistently compelled supplementation").

**B.      Sandoz Has Failed to Articulate Any Basis for Compelling Production**

**1.      Sandoz Has Failed to Make the Necessary Showing**

It is extremely unusual for the record to be supplemented or for a court to permit parties

to "look behind" the record produced in APA cases.  *See Camp v. Pitts*, 411 U.S. 138, 142-43

(1973).  A court may permit supplementation of the record only if the party challenging the

record makes a "strong showing" that one of the "narrowly defined" exceptions to the general

rule prohibiting review of extra-record material applies, such as "bad faith or improper behavior"

by the agency or "when the record is so bare that it prevents effective judicial review."  *Fund for*

*Animals*, 245 F. Supp. 2d at 57-58 (*quoting Commercial Drapery Contractors, Inc. v. United*

*States*, 133 F.3d 1, 7 (D.C. Cir. 1998)); *see also Cmty. for Creative Non-Violence*, 908 F.2d at

997.  Even the court in *Tummino*, the case on which Sandoz relies so heavily for support, made

clear that a strong showing is necessary in support of a claim of bad faith before extra-record

review by the court is appropriate.  (*See* Mot. at 4, n.3.)

Sandoz's motion falls far short of the "cogent support" required for application of any

exception.  *Sociedad Anonima Vina Santa Rita v. Dep't of Treasury*, 193 F. Supp. 2d 6, at 17

n.11 (D.D.C. 2001).  In contrast to *Tummino* and other cases where a plaintiff "sought to

supplement the record with clearly identified documents by making the requisite showing that an

exception to the general rule against extra-record review applied," *Fund for Animals*, 245 F.

Supp. 2d at 58 n.9, Sandoz's motion contains only conclusory, unsupported assertions that

FDA's review of the Omnitrope NDA "went outside the statutory drug approval process," and

surmises, without any evidence whatsoever, that the agency's delay in reaching a decision on the

Omnitrope NDA is a result of bad faith. (*See* Mot. at 2-4.) Such statements (by counsel in a

brief) manifestly do not *demonstrate* bad faith or other improper behavior. *See Amfac Resorts*

*L.L.C. v. Dep't of the Interior*, 143 F. Supp. 2d 7, 12-14 (D.D.C. 2001) (finding that a single

affidavit by one of plaintiffs' attorneys was "far short of the 'substantial showing' necessary to

gain discovery").

   Sandoz's failure to make the requisite showing stands in stark contrast to *Tummino*,

where the court found that the plaintiffs had made "a strong preliminary showing of 'bad faith or

improper behavior'" based upon the agency's apparent consideration of policy factors outside of

its statutory mandate. Decision and Order at 30, *Tummino* (D.I. 104, Feb. 24, 2006) (attached to

Sandoz's *Tummino* memo. as Ex. 1); *see also id.* at 34 ("the conclusions of the GAO Report that

the FDA's decisionmaking processes were unusual in four significant respects satisfies the court

that the necessary showing of bad faith or improper behavior has been made by the plaintiffs

here"). Unlike the *Tummino* plaintiffs, Sandoz here has made *no* showing of bad faith. Indeed,

Sandoz admits as much, asserting that it needs supplementation of the record in order to

"understand" whether FDA has engaged in "legitimate efforts" to resolve scientific issues

surrounding Sandoz's Omnitrope NDA "or whether the delay is premised instead upon the bad

faith of the Defendants." (Mot. at 4.) Sandoz thus seeks "supplementation" of the record in

order to obtain "much-needed evidence of the reasons for FDA's delay." (*Id.*; *see also* Mot. at 7

n.7.) Such reasoning, however, puts the cart before the horse. Indeed, Sandoz has got its burden

completely backwards. Sandoz must adduce evidence of bad faith *before* it is entitled to conduct

extra-record discovery – not the other way around. Unless and until Sandoz can demonstrate bad

faith on the part of FDA, there is simply no factual or legal basis for going beyond the administrative record in this case.[8]

Rather than attempt to make a showing supporting its claim of bad faith, Sandoz suggests that merely alleging bad faith is sufficient to justify compelled production. (*See* Mot. at 7, n.7.) Such is not the law, however. Indeed, administrative record review would be meaningless if a party need only *allege* bad faith on the part of the agency in order to go beyond the record in search of evidence to support its allegations. Yet that is precisely what Sandoz seeks to do here. Without even a shred of evidence that FDA has acted in bad faith, Sandoz requests unfettered access to the agency's internal files in the hope that such a fishing expedition will turn up some evidence that would justify the expedition in the first place. Such bootstrapping is totally contrary to the law and should not be countenanced by the Court. Because Sandoz has proffered no evidence to support its general allegations of bad faith, its motion to compel "fall[s] far short of the 'strong showing'" necessary for supplementation of the record. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (finding that conclusory statements unsupported by

---

[8] Sandoz complains that it is the lack of a "complete" administrative record that prevents it from providing detail in support of its claim of bad faith: "Sandoz' Complaint, which alleges everything that Sandoz knows or reasonably could have known in the absence of the complete Administrative Record, reflects just how unusual and extra-ordinary the NDA review process has been in going outside the normal scientific review channels in the case of Omnitrope." (*Id.* at 2-3.) Contrary to Sandoz's assertions, however, FDA has produced the entire administrative record as it exists to date. Because of the nature of the case (*i.e.*, an agency inaction/delay case), the record necessarily will not be complete until a final agency decision has been reached on the Omnitrope NDA and Pfizer Petition. For purposes of the instant motion, however, the "complete" administrative record consists of the materials that FDA is currently considering in order to reach a decision on the Omnitrope NDA and Pfizer Petition, all of which have been provided to Sandoz.

other evidence did not justify supplementing the record).[9]

### a.    Sandoz Has Failed to Show That Defendants' Internal Documents Are Part of the Administrative Record in this Case

Notwithstanding Sandoz's failure to make the requisite showing to support extra-record production, Sandoz has failed to provide support for its conclusion that FDA's internal documents properly should form part of the administrative record in this case. Indeed, none of the cases relied upon by Sandoz require that deliberative documents internal to an agency are presumed to be part of the administrative record, especially where the agency decision has not even been made. *See* Mot. at 11-13 (citing cases that merely define the deliberative process privilege and describe the showing a plaintiff must make in order to obtain otherwise-privileged materials).

This Court has found that an agency "generally may exclude material that reflects internal deliberations" in constructing the administrative record. *Fund for Animals*, 245 F. Supp. 2d at 55; *see also Amfac Resorts*, 143 F. Supp. 2d at 13 (noting that deliberative intra-agency records ordinarily are privileged); *Seabulk Transmarine I, Inc. v. Dole*, 645 F. Supp. 196, 201 (D.D.C. 1986) (same). As this Court has noted, such information is "routinely excluded from the record." *Amfac Resorts*, 143 F. Supp. 2d at 13; *see also Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 143 (D.D.C. 2002) ("To require the inclusion in an agency record of documents reflecting internal agency deliberations could hinder candid and creative exchanges regarding proposed decisions and alternatives, which might, because of the chilling effect on open

_____

[9] Sandoz's motion also fails to identify specific documents with which the administrative record must be "supplemented," further demonstrating that this purported motion for "supplementation of the administrative record" is nothing more than a demand for discovery.

discussion within agencies, lead to an overall decrease in the quality of decisions."). This is

because documents internal to the agency are immaterial for judicial review as a matter of law

unless there is a showing of bad faith or improper behavior. *In re Subpoena Duces Tecum*

*Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998).

The production of internal agency documents is also protected by the deliberative process

privilege, which shields documents such as "recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer

rather than the policy of the agency" from disclosure. *Coastal States Gas Corp. v. Dep't of*

*Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also Kansas State Network, Inc. v. FCC*, 720

F.2d 185, 191 (D.C. Cir. 1983) ("intra-agency memoranda and documents recording the

deliberative process leading to an agency decision are privileged from discovery"). The purpose

of this privilege is to protect the "quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*,

421 U.S. 132, 151 (1975). The privilege is intended to encourage open, frank discussions of

policy matters between subordinates and supervisors, to protect against premature disclosure of

proposed policies before they become final, and to protect against public confusion that could

result from disclosing reasons and rationales that were not the ultimate grounds for the agency's

action. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States*,

617 F.2d at 866.

The deliberative process privilege applies to agency materials that are deliberative and

predecisional. *EPA v. Mink*, 410 U.S. 73, 86-89 (1973). A document is predecisional if "it was

generated before the adoption of an agency policy," and is deliberative if "it reflects the give-and-

take of the consultative process." *Coastal States*, 617 F.2d at 866. Sandoz's motion to compel

seeks all documents that defendants have prepared in reviewing the Omnitrope NDA and the

Pfizer Petition. Because there has been no final decision made to date on either the Omnitrope

NDA or the Pfizer Petition, all such documents are predecisional. The documents are also

deliberative because they do not represent the agency decision-makers' final position. One of the

purposes of the deliberative process privilege is to protect "subordinates' willingness to provide

decision-makers with frank opinions and recommendations." *Wolfe v. HHS*, 839 F.2d 768, 775

(D.C. Cir. 1988). Documents that "discuss the wisdom or merits of a particular agency policy, or

recommend new agency policy" are protected by the deliberative process privilege. *Coastal*

*States Gas Corp.*, 617 F.2d at 869; *see also Fund for Animals*, 245 F. Supp. 2d at 55.

Sandoz's argument that the stipulated protective order in this case prohibits the

government from asserting the deliberative process privilege is unavailing. The deliberative

process privilege protects certain documents from disclosure in the first instance. *See, e.g., EPA*

*v. Mink*, 410 U.S. at 86. The fact that such documents as are disclosed may be subject to a

protective order does not in any way limit the privilege's applicability. The protective order

serves only to prescribe what Sandoz may do with any documents it receives; it does not purport

to prescribe, and indeed has no bearing upon, what documents Sandoz is entitled to receive in the

first place.

Nor is it relevant that the government may have chosen to waive the deliberative process

privilege in another case. Thus, the fact that the government may have agreed to produce certain

privileged documents relating to FDA's review of Plan B in the course of the *Tummino* litigation

does not mean that FDA must similarly waive its privilege in this or any other case. *See, e.g., In*

*re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("courts have said that release of a

document only waives these [executive] privileges [including the deliberative process privilege] for the document or information specifically released").[10]  Moreover, the materials that constitute the administrative record must be determined on a case-by-case basis, because the documents "on which the Commissioner relies to support the [particular administrative] action," 21 C.F.R. § 10.3(a), will necessarily vary with each administrative action taken.[11]  Accordingly, FDA has not treated "two similarly-situated cases disparately" for "unexplained reasons," Mot. at 15, and Sandoz's repeated reliance on the documents produced in *Tummino* is misplaced.  (*See id.* at 3-4, 14-15.)

In sum, the deliberative process privilege is intended to encourage frank, open discussions of policy matters among agency employees.  *NLRB v. Sears*, 421 U.S. at 151; *see also Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.").  Because most of the documents sought in Sandoz's motion to compel fall within that privilege (and Sandoz has offered no valid basis for overriding the privilege here), production of such documents would not be appropriate even if Sandoz had met

---

[10] Instead of citing any authority, Sandoz merely states, without any support, that "at least the same quantum of NDA-review-related documentation that has been product in *Tummino* . . . should be available for production in this case," and that "Sandoz is entitled to those [NDA-review-related, internal agency] documents." *Tummino* memo. at 7-8, 9.

[11] Sandoz is thus mistaken that "the scope of the Administrative Records' content [in this case and in *Tummino*] should be at least similar in terms of producing allegedly 'pre-decisional' Agency records." *Tummino* memo. at 4, n.3.

its burden of establishing an entitlement to extra-record supplementation or discovery.[12]

> **b.**    **Sandoz Has Failed to Show That Other Parties' NDAs Are Part of the Administrative Record in this Case**

Sandoz's request for the production of documents relating to the review and approval of other previously approved biologic drug products is also unfounded.  First, Sandoz's proposed order mentions only "non-proprietary portions of FDA's review and approval" of certain drugs (Proposed Order at 2), which defendants assume means that Sandoz is not seeking other sponsors' trade secrets or confidential commercial information.[13]  However, even non-confidential information relating to the review of these applications has no proper place in the administrative record of this case.  Indeed, Sandoz's proposed order only refers to "relevant" portions of FDA's review of other NDAs.  (*Id.*)  But none of the documents from FDA's review and approval of other NDAs are in any sense relevant to the issues in *this* case, which solely concerns FDA's alleged inaction or delay with respect to Sandoz's Omnitrope NDA and Pfizer's Citizen Petition.  The requested NDA documents concern different drugs and different parties that are not before this Court.  Thus, FDA properly did not include such documents in the

---

[12] Sandoz's motion purports to identify various types of documents that "can be generated within FDA during an NDA review" and which Sandoz argues FDA must provide here.  (Mot. at 3, n.1.)  Aside from the fact that the listed documents are internal agency documents protected by the deliberative process privilege, however, even Sandoz acknowledges that the such documents are available to the public "for FDA-approved products."  (*Id.*)  Any such documents relating to Omnitrope will thus be available to the public upon approval of Sandoz's Omnitrope NDA; not releasing such documents prior to reaching a final decision is consistent with FDA's standard NDA review process and does not, as Sandoz contends, involve "departures" from that process. (*Id.*)

[13] FDA is required by law to withhold trade secret and confidential commercial information, *see* 18 U.S.C. § 1905; 21 U.S.C. § 331(j); 21 C.F.R. § 20.61, and to specifically protect such information contained in NDAs, *see* 21 C.F.R. § 314.430.

existing administrative record and there is no basis for supplementing the record with such

extraneous materials. *See Novartis Pharm. Corp. v. Shalala*, 2000 U.S. Dist. LEXIS 6152, at

\*10-\*11 (D.D.C. Apr. 28, 2000) ( "In compiling the administrative record, the agency should not

include materials that were not considered by agency decisionmakers."), *aff'd* 435 F.3d 344

(D.C. Cir. 2006).

Not only are the requested records irrelevant to the issues before the Court, they are also

voluminous. The Sandoz-generated materials submitted in support of the Omnitrope NDA alone

consist of approximately 90 volumes, with each volume approximately 2 inches thick. No useful

purpose would be served by clogging this Court's files and wasting scarce administrative and

judicial resources to indulge what amounts to an ill-disguised discovery demand for records

relating to drug applications and products that are not at issue in the litigation at hand.[14]

## II.    EVEN IF SUPPLEMENTATION OF THE RECORD WERE NECESSARY, THE RELIEF SANDOZ SEEKS IS PREMATURE AND UNWARRANTED

### A.    Examination of the Parties' Dispositive Arguments Is Required Before Determining Whether the Record Is Sufficient for Judicial Review

Sandoz makes some attempt to bring this case within an exception to the rule limiting the

record to the one compiled by the agency by claiming that supplementation of the record is

necessary to allow for judicial review. (*See* Mot. at 2, 4, 7 n.7, 15.) But Sandoz's own

statements are to the contrary. Sandoz has alleged in every cause of action that it is entitled to

---

[14] Sandoz contends that producing all of the documents it is seeking would not place an undue burden on the government because suits alleging unreasonable delay in the drug review process have only been instituted three times prior to the instant case. (*See* Mot. at 5, n.5.) This argument, however, completely ignores FDA's ever-increasing workload apart from suits alleging agency delay, and producing voluminous documents that are not relevant to the issues in this case would only unnecessarily add to that burden.

injunctive and declaratory relief from this Court because FDA has violated a statutory duty to act on its Omnitrope NDA.  (*See* Complaint, D.I. 1, ¶¶ 3, 90, 165, 184, 190 & 199.)  Similarly, Sandoz argues in the instant motion that FDA has failed to take final action on the Omnitrope NDA "despite a plain-language statutory mandate" and "in the face of a statutory deadline."  (*See* Mot. at 2.)  Sandoz has asserted that immediate agency action is required by law and the failure to act warrants the relief it seeks.  (*See* Complaint, D.I. 1; Pls. MSJ at 21-30.)  Assuming *arguendo* that Sandoz's legal assertions are correct, an assessment of the reasons for FDA's delay in taking final action is irrelevant because the agency has a statutory duty to act on the application.  On the other hand, if defendants' legal arguments are correct, the time FDA has spent considering the Omnitrope NDA, Pfizer Petition, and other relevant materials is reasonable, and Sandoz is not entitled to any relief on its complaint.  (*See generally* Defs. Cross-MSJ.)

In either event, supplementation of the record at this stage of the proceedings is unwarranted.  Sandoz and Pfizer have each presented extensive arguments and data to the agency concerning why the Omnitrope NDA should be expeditiously approved (or rejected), and this Court has the opportunity to determine whether the agency's continued deliberation concerning this material is reasonable, given the nature of the problem presented, the agency's overall obligations, and the time involved thus far for the review of these materials.  Only if the Court were to reach this issue and determine the record to be insufficient would supplementation of the record be warranted.  Accordingly, at a minimum, Sandoz's motion is premature.

**B.    Should the Court Find the Record Insufficient for Judicial Review, It Must Afford FDA an Opportunity to Explain and/or Supplement the Record**

Even if this Court were to find the administrative record here inadequate to exercise meaningful review, the remedy is not to compel production of a laundry-list of documents drawn up by the party challenging the agency's conduct or to permit discovery, but rather to provide the agency the opportunity to supplement its explanation and then, if necessary, remand the case to the agency for additional supplementation.  As the D.C. Circuit has held:

> When the record is inadequate, a court may "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary."  The new materials should be merely explanatory of the original record . . . If the agency action, once explained by the proper agency official, is not sustainable on the record itself, the proper judicial approach has been to vacate the action and to remand the matter back to the agency for further consideration. . . . Consideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted, even when the court has also examined the administrative record.  If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits.

*Envtl. Defense Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (citations omitted).

Accordingly, even if Sandoz were to make a showing that the record is inadequate, the law requires that the Court provide FDA with an opportunity to supplement the record and, if necessary, remand the case to the agency for further supplementation.  *See, e.g., Cmty. for Creative Non-Violence*, 908 F.2d at 998; *Guy v. Glickman*, 945 F. Supp. 324, 329 (D.D.C. 1996).

Sandoz has presented no authority to support its contention that compulsory supplementation is the appropriate relief here.  Indeed, even a cursory examination of cases where supplementation has been permitted demonstrates that supplementation in APA cases

19

consists of an agency providing further explanation of the challenged decision, beyond that already contained in the administrative record, to facilitate judicial review.  To permit a party challenging administrative action to "supplement" the record by compelling production of the kind of extraneous material Sandoz seeks to include would invite litigants to troll through agency records looking for evidence to bolster their claims.  Such "fishing expeditions" are not to be countenanced in APA litigation, where discovery is permitted only on very rare occasions.[15]  The so-called "supplementation" that Sandoz is seeking, compelled production of various categories of records that Sandoz alleges are relevant to its claims, is merely a transparent request for discovery, and Sandoz's attempt to avoid the established rule disfavoring discovery in APA cases by calling its motion one to compel "supplementation" rather than discovery must fail.

## III.    SANDOZ IS NOT ENTITLED TO A SPOLIATION AND DOCUMENT PRESERVATION ORDER

Sandoz has also failed to cite any authority to support its claim that it is entitled to a spoliation and document preservation order, as well as personal, written assurances from HHS Secretary Leavitt and Acting FDA Commissioner Von Eschenbach concerning document retention.[16]  FDA's letter of March 6, 2006 (Pl.'s Ex. 2), provided Sandoz with precisely the

---

[15] Notably, Sandoz fails to address the case law severely limiting the use of discovery in APA cases.  *See, e.g., Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998); *Texas Rural Legal Aid, Inc. v. Legal Services Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991).  Instead, Sandoz merely relies on the general proposition that Fed. R. Civ. P. 26(b) governing discovery "is given a liberal construction."  (Mot. at 14.)  Much of the law governing discovery in civil litigation, however, is simply inapplicable to APA cases, and Sandoz's reliance on that body of law is misplaced.

[16] The "spoliation" doctrine provides that if a party in litigation destroys, or fails to preserve, relevant evidence, the fact-finder may draw an adverse inference.  *See Rice v. United States*, 917 F. Supp. 17, 19-21 (D.D.C. 1996) (applying District of Columbia law, *Battocchi v. Washington Hosp. Ctr.*, 581 A.2d 759, 765-66 (D.C. 1990), in the absence of case law on the

assurance contemplated during the March 1 teleconference with Chambers, and Sandoz's request for further assurances is inappropriate and unwarranted.

As explained in FDA's March 6 letter, an administrative file is defined as "the file or files containing all documents pertaining to a particular administrative action, including internal working memoranda, and recommendations." 21 C.F.R. § 10.3(a). Thus the administrative file for Omnitrope contains all of the documents that relate to the Omnitrope NDA, and the same is true for the Pfizer Petition. Sandoz contends that the March 6 letter "does not cover categories of probative evidence . . . relevant to resolution of this case" (Mot. at 9), but the letter in fact encompasses *all* documents in defendants' possession concerning the Omnitrope NDA and/or the Pfizer Petition, which are the subjects of the underlying litigation. There are, for instance, no "other records of the Federal Defendants' agencies (FDA and HHS) outside of the 'administrative file' relating to Sandoz' Omnitrope application or the Pfizer petition" (Mot. at 11); Sandoz's request for an order that defendants retain non-existent documents is absurd.

Sandoz's claim that FDA's letter contains "perplexing omissions" is also unfounded. (Mot. at 11.) As the letter explains, "the disposal of federal agency records must be done in accordance with schedules approved by the Archivist of the United States. 21 U.S.C. §§ 3303, 3303a," and "'[a]pplication of the disposition instructions in these schedules is mandatory.' 36 C.F.R. § 1228.40." (Pl.'s Ex. 2 at 2.) These mandatory record retention schedules apply to all federal agency documents, regardless of any ongoing litigation, and therefore do govern, contrary to Sandoz's contentions, the preservation of documents "between the filing of this case on

---

issue in the D.C. Circuit); *see also Hartman v. Duffey*, 973 F. Supp. 189, 196 (D.D.C. 1997). Sandoz has not alleged that defendants have destroyed relevant documents in this case, and the spoliation doctrine is thus not applicable here.

September 13, 2005 and March 6, 2006," assuring that "records relating or referring to

Omnitrope have not been destroyed." (Mot. at 11.) Sandoz is thus mistaken in referring to these

two items as "omissions" from FDA's March 6 letter.

Sandoz's claim that the March 6 letter does not address "communications of HHS,"

"inter-governmental communications with other Executive Branch Departments, Agencies,

offices, and officials," and "communications with Sandoz' competitors and other non-

governmental third parties" is also mistaken. (Mot. at 10.) Any and all of these

"communications" that are contained in federal agency records are governed by the same

statutory provisions that govern all other federal records. *See* 21 U.S.C. §§ 3303, 3303a. It is

unclear what further assurances Sandoz hopes to receive, if a letter from FDA, FDA regulations,

and other statutory and regulatory provisions do not suffice to ease Sandoz's concerns.[17]

---

[17] The defendants in this case, like the parties in all cases before the Court, have an obligation to preserve relevant evidence, and the failure to abide by this obligation may lead to sanctions. *See Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). Thus, it is not necessary to enter anti-spoliation orders to control misconduct or negligence. Nonetheless, FDA agreed to provide its document retention policy to Sandoz and directed its employees to retain all relevant documents. Again, Sandoz relies on bare speculation to justify extraordinary measures of its own choosing without even bothering to advise the defendants of the inadequacies it purports to perceive in the agency's response.

## CONCLUSION

For the foregoing reasons, Sandoz's motion to compel should be denied or, at a

minimum, deferred until the parties' dispositive motions have been reviewed by the Court, at

which time the Court can determine for itself whether additional explanation or supplementation

from the agency is necessary for review of Sandoz's claims.

Of Counsel:                                  Respectfully submitted,

PAULA M. STANNARD                            PETER D. KEISLER
Acting General Counsel                       Assistant Attorney General

SHELDON T. BRADSHAW                          EUGENE M. THIROLF
Associate General Counsel                    Director
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation                      _____/s/_____
                                             ANDREW E. CLARK
SHOSHANA HUTCHINSON                          Attorney
Assistant Chief Counsel for Enforcement      Office of Consumer Litigation
U.S. Dept. of Health & Human Services        U.S. Department of Justice
Office of the General Counsel                P.O. Box 386
5600 Fishers Lane                            Washington, D.C. 20044
Rockville, MD  20857                         Telephone: (202) 307-0067
(301) 827-8579                               Facsimile:  (202) 514-8742
                                             E-mail: andrew.clark@usdoj.gov

March 21, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Opposition to Plaintiff's Motion to Compel Supplementation of the Administrative Record to be served via the District Court's electronic filing (ECF) system upon:

John M. Engel
ENGEL & NOVITT, LLP
Market Square
Suite 620
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
*Counsel for Plaintiff Sandoz Inc.*

this 21st day of March, 2006.

_____/s/_____
Andrew E. Clark