UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDOZ INC. )<br> )<br>　　　Plaintiff, )<br> )<br>　　v. )<br> )<br>MICHAEL O. LEAVITT, Secretary of )<br>Health and Human Services, and )<br>ANDREW C. VON ESCHENBACH, M.D., )<br>Acting Commissioner, Food and Drug )<br>Administration, )<br> )<br>　　　Defendants. )<br>_____ ) | Case No. 1:05CV01810 (RMU) |

**REPLY MEMORANDUM OF SANDOZ IN SUPPORT OF ITS
MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD
AND FOR PRESERVATION OF ALL GOVERNMENT RECORDS ON OMNITROPE**

At the heart of the government's defense – of this case and of the instant motion – is the asserted "reasonableness" of the Defendants' failure to act 19 months after a nondiscretionary statutory deadline for their action expired on August 31, 2004. However, even assuming a "reasonableness" standard applies, there is no evidence by which this Court can judge the purported "reasonableness" of the Defendants' persisting inaction. Instead, the Defendants ask this Court to rely on their counsel's assertions that FDA's review of Sandoz' Omnitrope NDA is "currently ongoing," Fed. Defs.' Opp. at 4, and has been since August 31, 2004. Notably, if this Court were to adopt that unsupported factual claim, it would contradict the report by one of the Federal Defendants, Acting Commissioner von Eschenbach, to the U.S. Congress that FDA has reviewed and acted on 100% of the Fiscal Year 2003 cohort of NDAs (which encompasses the Omnitrope NDA). This is not a reasonable proposition for the Defendants to ask this Court to

accept. Instead, Defendants' position compels the granting of Sandoz' motion and the production of the evidence Sandoz has requested in order to test the asserted "reasonableness" of the Defendants' delay, and/or an immediate granting of summary judgment to Sandoz based upon the Defendants' all-but-stipulated violation of law (i.e., the failure to act by the codified statutory deadline).

The arguments presented in Federal Defendants' Opposition effectively invite this Court to require the Defendants to supplement the record to establish the grounds for their failure to take that statutorily-mandated action. The Federal Defendants assert that there exists no such "decision" in this case, claim that their review is not complete and remains ongoing, and thus argue that only the evidence already available to Sandoz when it started this action needs to be produced. See Fed. Defs.' Opp. at 4. In fact, both Sandoz and this Court would benefit from supplementation of the currently-limited record in order to discover the actual, real, and properly-documented reasons for the Defendants' failure to act and unreasonable delay on the Omnitrope NDA.

Therefore, Sandoz respectfully urges this Court to grant its motion and to order the Defendants to supplement the record. In addition, given that Defendants and their counsel have still not provided assurances that no government records specific to the Omnitrope application have been destroyed (particularly following the initiation of this action on September 13, 2005), Defendants themselves should be directed to file such an assurance with the Court to preserve the integrity of this judicial proceeding.

**ARGUMENT**

I.    <u>The Defendants' "Reasonableness" Theory Of The Case Mandates Supplementation</u>

What is at issue in, and at the core of, this case is whether FDA ever has a statutory obligation to take final action on an NDA when the applicant has not agreed to an extension of time – which Sandoz believes Congress has unambiguously mandated in 21 U.S.C. § 355(c)(1) – and, when FDA does finally act, what that action must entail. In that latter regard, the parties have disparate views with respect to the one single FDA-Sandoz communication that the Defendants have cherry-picked (out of the 100s of FDA-Sandoz communications during the 7-year history of the Omnitrope NDA) for inclusion in the current Administrative Record – the August 31, 2004, FDA "nonaction" letter. For its part, Sandoz maintains that the non-action letter fails to satisfy *either* (1) the statutory directive that the HHS Secretary "shall either" approve or disapprove the NDA within 180 days or by such extended time as the sponsor agrees (here, August 31, 2004), *or* (2) the PDUFA performance goal arising from Sandoz' payment of over $533,000 in user fees for FDA to "review and act on" (according to the statutorily-incorporated side-letter) the Omnitrope NDA by August 31, 2004 by issuing an action letter approving the NDA or detailing the "specific deficiencies" and steps required by the applicant to place the NDA in condition for approval.

This pivotal legal dispute between the parties provides the context within which Sandoz' motion must be resolved. The applicable statutory requirements evidence FDA's lack of authority to perpetually defer a decision on the Omnitrope NDA; the law gives the Federal Defendants no authority to forestall action on any basis, including the purported need to resolve allegedly-outstanding issues, once the review period has been brought to a close as it has in this case. In respects critical to resolution of the instant Motion, the Federal Defendants seemingly

agree. The Defendants maintain throughout that "reasonableness" is the touchstone of their failure to act since August 31, 2004. See Fed. Defs.' Opp. at 18. Cf. id. at 4 n.3 (suggesting that the August 31st non-action letter "outlined the issues FDA must resolve before rendering a final decision").[1] Yet, the Defendants object to production of the very evidence – indeed, the only evidence – by which the Defendants can demonstrate, Sandoz can challenge, and this Court can judge the asserted "reasonableness" of the Federal Defendants' failure to act.

Now, some 32 months into the pendency of this application, that evidence is no longer just relevant and probative, it is now pivotal to these proceedings. Sandoz has heard nothing formally from FDA in the 19 months since August 31, 2004, regarding the Omnitrope NDA. Thus, we stand at a crossroads: either the law requires Defendants to come to a decision on the Omnitrope application as the statute requires and to communicate that decision to Sandoz, or, evidence must be produced that justifies the Defendants' position that their failure to follow the law is "reasonable." Sandoz maintains that the Defendants may not ignore the legal requirement for action and at the same time provide the Court with no evidence from which the Court can determine whether or not their failure to act is "reasonable."

To the extent the Federal Defendants would have this Court conclude that their position is "reasonable" and that in fact some legitimate question about the safety or efficacy of Omnitrope remain outstanding and under active investigation by FDA scientists, it must be based upon the production of all the evidence sought in Sandoz' motion. Specifically, that evidence should

---

[1] Assuming for the sake of argument that FDA cannot resolve these "issues," and even if such resolution should prove necessary as a precondition for approval, the law requires FDA to disapprove the Omnitrope NDA (with FDA citing the specific statutorily-cognizable "deficiencies" to be cured by Sandoz), because Sandoz has not agreed to continue the review period beyond August 31, 2004. Should FDA disapprove the NDA on such grounds, a U.S. Court of Appeals will ultimately decide if such a basis is statutorily authorized (i.e., whether the application in fact is not approvable under the FD&C Act on the grounds cited or, alternatively, that the issues cited are in fact and law not essential or germane to an approval decision on the Omnitrope NDA itself).

- 4 -

demonstrate (1) the precise actions taken prior to FDA's August 31st non-action letter stating that the Reviewing Division had "completed [its] review of this application as submitted", and (2) the subsequent actions taken since August 31st demonstrating the scope, extent, and nature of FDA's alleged ongoing active review of the NDA.  Because it is impossible to discern the reason for the Federal Defendants' failure to act without supplementation, granting Sandoz' motion is the appropriate course.  "[W]here the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice,"[2] supplementation is an appropriate remedy.  Thus, in addition to showing bad faith (addressed infra), Sandoz also has met the second of the two recognized, independently-sufficient grounds for supplementation by demonstrating that "the record is so bare that it prevents effective judicial review."  Fund for Animals v. Williams, 391 F. Supp. 2d 191, 198 (D.D.C. 2005) (RMU) (internal quotation omitted) (citations omitted).  Accordingly, granting Sandoz' motion is essential to ensure the production of evidence necessary to this Court's determination on the "reasonableness" of FDA's continuing inaction.

II.     Case Law On Administrative Records Where Agencies Have Acted Is Not Controlling; Sandoz' Motion Is Governed By The Case Law On Administrative Records Where Agencies Have Failed To Act

The instant Motion To Compel concerns a failure to act, specifically the absence of any FDA action on Omnitrope.  Therefore, the Motion should not, and cannot, be judged by the standard of discretion the Defendants might be entitled to receive in defining the Administrative Record some day in the future when (absent judicial review stemming from Sandoz' Complaint) the Defendants were to allow FDA to approve or disapprove the Omnitrope NDA.  That finalized action has not occurred, see Fed. Defs.' Opp. at 4, and is not on review before this Court.  FDA

---

[2]     Tummino v. von Eschenbach, Decision & Order Denying Def.'s Mot. for a Prot. Order and Requiring Discovery (D.I. No. 104, Feb. 24, 2006) at 28 (quoting Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997)) attached as Ex. 1 to Sandoz Mem. On Tummino (D.I. No. 32, Mar. 7, 2006).

must now provide all probative materials that are either supportive of or undermine its failure to act.  The supplementation the Federal Defendants urge this Court to allow *after* deciding against the Defendants on summary judgment is permitted, if at all, in cases distinct from this failure to act/unreasonable delay case, as in those situations the agency has already taken a concrete action where the plaintiff is seeking to alter the extant government action.

Accordingly, it is wrong for the Federal Defendants to continue insisting that the "complete" administrative record only "consists of the materials that FDA is currently considering in order to reach a decision on the Omnitrope NDA and Pfizer petition."  Fed. Defs. Opp. at 11, n.8.  What is at issue in the present case is not whether those building blocks of the Defendants' case (that they ultimately would use to justify FDA's decision) are sound *per se*, but whether they justify the Defendants' continued failure to make any decision at all.

That is why both Sandoz and this Court would properly benefit from supplementation of the record beyond those building blocks that FDA believes will be relevant subsequent to the Agency's future decision.  Accordingly, FDA's regulations on the "administrative file" for a finalized FDA action when the Agency has actually taken that action – which the Defendants have not done here – are not controlling for purposes of resolving the instant motion.  Accepting for the sake of argument the premise of the Defendants' Opposition – that FDA's administrative file is presently empty, and will spontaneously fill up with documents that are simultaneously issued on that future date when FDA is allowed to act on the Omnitrope NDA[3] – the supplementation sought in the instant Motion does indeed go beyond that file.  Cf. Fed. Defs. Opp. at 2 & n.2.  That is because, in addition to the extant documentation that one day would end up in that administrative file – e.g., the reviews that were completed prior to the August 31st

---

[3] This is a premise that Sandoz' opening memorandum demonstrated is belied by FDA's own files and standard drug review processes.  See Mot. To Compel at 3 n.1; id. at 4 n.4.

action letter's conclusion that the Reviewing Division's review of the application had been completed – supplementation is necessary and appropriate in this case in order to secure production of the relevant and probative evidence outside that administrative file delineating whether the Defendants' refusal to act on the NDA was "reasonable", and which Sandoz submits would never be placed in that administrative file whenever FDA is finally allowed to act.

Supplementation in these circumstances is governed by failure to act opinions such as Baykeeper and Dombeck and their progeny, in which courts have decided to permit supplementation to address precisely this type of situation.[4]  See San Francisco Baykeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002); Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000).  Cf. Fed. Defs.' Opp. at 8.  Contrary to the Defendants' assertion, supplementation here is not controlled by finalized agency action cases, in which the defendant agency had taken a concrete action and received deference on the Administrative Record produced for judicial review.  Cf. Fed. Defs.' Opp. at 7.  That caselaw is inapposite.

As set forth in Sandoz' opening memorandum, the D.C. Circuit established 17 years ago in Esch that supplementation is merited "(6) in cases where agencies are sued for a failure to take action," a binding precedent which the Defendants do not attempt to address.  Esch v. Yeutter, 876 F.2d 976, 991 & n.166 (D.C. Cir. 1989) (citations set forth in Mot. To Compel at 5-6 n.6). The Administrative Record on review of a failure to take action claim must explain the reason behind FDA's "failure to act" on, and "unreasonable delay" of, the Omnitrope NDA.  The Record in this case does not.  Accordingly, it must be supplemented.

---

[4]   As indicated in the Federal Defendants' Opposition, a citation to one of two Lujan cases decided in 1990 was transposed during preparation of Sandoz' pleadings.  See Fed. Defs.' Opp. at 8 (citing Mot. at 5, n.6).  The quotation appearing in Sandoz' memorandum was accurate and does appear in its entirety in Lujan.  Specifically, it appears in Allick v. Lujan, Case No. 89-2269, 1990 U.S. Dist. LEXIS 9101, *3, *4 (D.D.C. July 17, 1990), rather than in Cmty. for Creative Non-Violence v. Lujan, 908 F.2d 992, 997 (D.C. Cir. 1990).  Counsel for Sandoz acknowledges and regrets the inadvertent transposition of these citations.

III. Sandoz' Motion Demonstrates Bad Faith To The Extent It Is Necessary, Which FDA's Voluminous Voluntary Production In *Tummino* Prior To Allegations Of Bad Faith Suggests It Is Not

The Defendants contend that, regardless of the case law on supplementation, Sandoz is only entitled to supplementation of the Administrative Record based upon a showing of bad faith. See Fed. Defs.' Opp. at 9 (citing Fund for Animals). Curiously, the Defendants attempt to defend against supplementation in this regard based upon the decision to grant discovery against FDA in Tummino: "Even the court in *Tummino*, the case on which Sandoz relies so heavily for support, made clear that a strong showing is necessary in support of a claim of bad faith before extra-record review by the court is appropriate." Fed. Defs. Opp. at 9 (citing Mot. To Compel at 4, n.3).

As Sandoz documented in its opening memorandum and its concurrent Tummino brief, Chief Judge Korman has permitted *discovery* against FDA – including interrogatories and depositions – based upon the Plaintiffs' "strong showing" in that case of bad faith. Moreover, what the Defendants' Opposition overlooks is that, before Judge Korman allowed that discovery to proceed earlier this year, FDA voluntarily produced a "record to date" – deemed by FDA to be "the administrative record" – consisting of over 100,000 pages of NDA documentation and agency pre-decisional records comparable to those Sandoz is seeking here (as FDA itself highlighted for the Court in Tummino and as Sandoz pointed out in its Mem. On Tummino (D.I. No. 32, Mar. 7, 2006) at 2).[5] In sum, Tummino provides no support for Defendants' position and actually supports Sandoz' motion.

---

[5] See Mem. on Tummino at 8 (quoting Tummino, Mem. Of Law In Supp. Of Def.'s Mot. For Partial Recon. Of And Relief From The Court's Dec. 22, 2005, Order (D.I. 82, Jan. 9, 2006) at 18). At that same point in the Defendants' brief in Tummino, the government makes clear that the 100,000-page record in that case is *the* Administrative Record rather than a supplemented record: "Further, plaintiffs cannot contend that the agency has acted in bad faith in compiling the record to date. The agency has provided the plaintiffs with over one hundred thousand pages of documents it has considered in

Moreover, to the extent required by Fund for Animals and other precedents, Sandoz has made the requisite showing of bad faith, and demonstrated all that it can establish on the existing record.  First, the unexplained failure to act by the statutory deadline in this case is itself indicative of bad faith, particularly given that, as essentially conceded by Federal Defendants, unreasonable delay cases such as this are extremely rare.  See Fed. Defs.' Opp. at 17 n.14.  Second, a reasonable reading of Sandoz' claims in its Complaint raises the specter of potential bad faith on the part of the Defendants.  Cf. Tummino, Dec. & Order (D.I. 104, Feb. 24, 2006) at 33 ("Certainly, a plausible interpretation of the e-mail correspondence by the author of the not-approvable letter just before and after he issued the letter in May 2004 is that senior management of the FDA had long since decided not to approve the application but needed to find acceptable rationales for the decision") quoted in Mot. To Compel at 4.  Third, as discussed on the parties' March 1st teleconference with Chambers and as set forth in its Motion, Sandoz has viewed with growing unease the Federal Defendants' failure to provide an appropriate assurance addressing the preservation of government records specific to the Omnitrope application some six months after the Complaint was filed.  The persistence of that failure (briefly addressed below) bolsters Sandoz' claim of bad faith, which further justifies supplementation of the Record in this case.

IV.   The Defendants' Continuing Failure To Provide An Assurance That All Omnitrope Records Have Been Preserved Necessitates Judicial Intervention

As with the March 6th letter from FDA's Assistant Chief Counsel for Enforcement that preceded it, the Federal Defendants' Opposition noticeably fails to provide adequate assurance that pertinent Omnitrope records have been, are being, and will be protected and preserved.  Both the government's pleading and the letter that preceded it present rote citations to statutory and

---

connection with the administrative proceedings surrounding the proposals to make Plan B available OTC.  There is no basis for a claim that the agency has acted in an evasive or obfuscatory manner in assembling and serving the administrative record."  Id. at 18.

regulatory provisions intended generally to preserve government records. What they fail to present is any assurance that at least these provisions actually are being followed to preserve all such records in this case. Thus, in this one crucial respect, both the letter and Opposition fail to provide Sandoz and this Court any assurance whatsoever with respect to destruction of evidence.

Although discussed at length during the parties' March 1st teleconference with the Court,[6] neither counsel for the Defendants, nor the Defendants themselves, has provided a signed, written assurance that no government records relating to Omnitrope have been destroyed. This persisting omission is now glaring. The adverse inferences that the Federal Defendants invite this Court to draw are disconcerting, and seem to have been accepted as a "cost of doing business" in this matter. While such adverse inferences may prove to be necessary and appropriate in this case, the current extent of those inferences can only be delineated by preserving the evidence through an appropriate Order from this Court directing the Defendants to file an assurance on preservation with the Court.

## CONCLUSION

In the absence of having to produce evidence within the Administrative Record to justify its delay to date, it is not clear that FDA will ever make a decision on the Omnitrope application. If at some time in the future an action is taken by the Agency that comports with the statutory requirements, then the reasons for that decision – but not necessarily the reasons for the current

---

[6] The Defendants take issue with Sandoz' decision to raise document preservation and spoliation directly with the Court. See Fed. Defs.' Opp. at 20-22. However, Sandoz proceeded as its counsel understood the direction at the end of the parties' March 1st teleconference with Chambers. Having carefully examined and considered the FDA counsel's letter (which Sandoz correctly concluded was transmitted in lieu of Defendants' counsel's commitment to file a much more specific letter with the Court), and noted the omissions from its generalized restatement of FDA's regulations, Sandoz added the issue to its Motion To Compel as directed. Moreover, the Opposition overlooks the fact that this issue and scope of the requisite assurance were addressed in five separate written requests before being raised with counsel for the Defendants at the outset of the March 1st teleconference. Mot. to Compel at 8-9 & nn.9, 10.

and ongoing delay – would become subject to review.  As such, in the absence of supplementation in this case, FDA could conclude that it does not need to anticipate ever having to provide a justification for its delays.  Consequently, in the absence of judicial intervention, the Defendants may never be required to justify the 'reasonableness' of their delay, or to take an action, and thus Sandoz essentially must rely upon this Court to compel production and thereby ensure accountability of the Agency both in terms of its substantive statutory mandates as well as the integrity of its drug review process.

The FD&C Act statutory deadline, the PDUFA performance requirements, and the right of judicial review under the APA thus compel this Court to grant the instant Motion.

Date:   March 28, 2006                              Respectfully submitted,


                                                                /s/
JOHN M. ENGEL (DCBN 443628)
Engel & Novitt, LLP
Market Square
Suite 620
801 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 207-3303
Fax: (202) 207-3318
E-Mail: jengel@engelnovitt.com
Attorneys for Plaintiff Sandoz Inc.